**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

MDL No. 2841
Master File No. 18-MD-02841-GAYLES

IN RE:

**MONAT HAIR CARE PRODUCTS MARKETING,**
**SALES PRACTICES, AND PRODUCTS LIABILITY**
**LITIGATION,**
_____

THIS DOCUMENT RELATES TO ALL CASES

_____/

**MOTION TO APPOINT**
**THE KANE-KELLER-SLEATER SLATE FOR PLAINTIFFS' MDL COUNSEL**

A slate of attorneys formed through the private ordering process (the "Kane-Keller-Sleater Slate" or "KKS Slate") respectfully moves this Court for an Order appointing as Co-Lead Counsel: Julie Braman Kane, Amy Keller, and Jessica Sleater and as the Plaintiffs' Steering Committee: Yvonne Flaherty, Gwendolyn Giblin, June P. Hoidal, Carin Marcussen, and Amanda Williams, and in further support states:

The Kane-Keller-Sleater Slate ("KKS Slate"), which respectfully seeks appointment to lead this multidistrict litigation against Monat,[1] is a strong leadership team of attorneys with diversified talents that: (1) includes experienced leadership from some of the country's most complex multidistrict cases; (2) brought the first case against Monat concerning misrepresentations related to its haircare products; (3) engaged Monat's counsel and other plaintiffs' counsel to reach consensus on mostly all early case management issues; and (4) is supported by counsel in at least

_____
[1] As used throughout this brief, "Monat" refers to, collectively, Monat Global Corp., Alcora Corporation, and other defendants as they may be named in the to-be filed Consolidated Amended Complaint.

seven out of the ten cases filed against Monat, as a result of the private ordering process, which is encouraged by best practices in multidistrict litigation.

The KKS Slate proposes appointment of the following individuals to a leadership team that designates particular responsibilities to individuals, ensuring efficiency and that the litigation is well-supported and financed by their firms.

> ***Proposed Co-Lead and Liaison Counsel***: **Julie Braman Kane** of Colson Hicks Eidson
>
> ***Proposed Co-Lead Counsel***: **Amy E. Keller** of DiCello Levitt & Casey LLC and **Jessica Sleater** of Andersen Sleater Sianni LLC; and
>
> ***Plaintiffs' Steering Committee***: **Yvonne Flaherty** of Lockridge Grindal Nauen P.L.L.P.; **Gwendolyn Giblin** of Audet & Partners, LLP; **June P. Hoidal** of Zimmerman Reed LLP; **Carin Marcussen** of Federman & Sherwood; and **Amanda Williams** of Gustafson Gluek PLLC.

The slate formed after discussions among several, independent groups that did not initially join in filing the same complaint but came together because of their desire to assemble the team "best suited," pursuant to Rule 23(g) and the Manual for Complex Litigation (4th Ed.) ("Manual") § 14.211, to represent the class while ensuring the case is zealously, cooperatively, efficiently, and successfully litigated.  A rarity for leadership in multidistrict litigation, the slate also reflects the individual class members who are the primary users of Monat's haircare products: women. Following guidance from the Duke Law Center for Judicial Studies *Standards and Best Practices for Large and Mass-Tort MDLs* ("Duke Standards"), which encourage "appointment of an experienced slate of attorneys" who will "fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds," the KKS Slate is in the best position to ensure the efficient and fair litigation of this matter.

The slate was joined not through repaying favors, but came together "as a cohesive group that is committed to the team rather than individual play." *See In re: Syngenta AG MIR162 Corn Litig.*, No. 14-MD-2591, 2015 WL 13679782, at *2 (D. Kan. Feb. 13, 2015).  It was crafted for

the purpose of assembling the right combination of talent, personalities, and experience to best and most efficiently prosecute *this* case, in *this* Court, against *these* defendants. Accordingly, the KKS Slate seeks appointment of this balanced team, in its entirety.  *See id.* (declining suggestion to pick and choose a slate from competing lead counsel applications in favor of a single slate "that has the distinct advantage of having committed itself in advance to solving this problem together").[2]

Given the depth of experience, diversity, and cooperative nature of the substantial work already undertaken in this action, the KKS Slate is the right choice to lead the consumer track.

## BACKGROUND

As of the date of this application, ten consumer class action cases have been filed against Monat that have been transferred to this Court for coordinated or consolidated pretrial treatment. Significantly, the proposed leadership structure here is represented and supported by plaintiffs and counsel from **seven of these ten cases**, including *Sohovich*, *McWhortors*, *Alabaster*, *Merritt*, *Hoffpauir*, *Row*, and *Stefforia*.  Members of the KKS Slate have collaborated to actively investigate the claims here for many months.  This is prominently demonstrated by the fact that Dana Sohovich, represented by proposed co-lead counsel Jessica Sleater, was the first, brave plaintiff in this MDL to initiate her case on February 16, 2018—several days prior to other follow-on lawsuits being filed.[3]

Sohovich's case, as well as the other seven cases represented by this brief, was a result of a thorough investigation of the facts, including consumer complaints and Monat's representations, and legal claims asserted on behalf of the proposed nationwide class.  Since the filing of their

---

[2] The KKS Slate recognizes that other attorneys add value to this litigation and would welcome the addition of any of them to their Slate should the Court deem it appropriate.

[3] *Sohovich*, Case No. 18-cv-20624, was filed on Feb. 16, 2016. The second filed case *Whitmire*, Case No. 18-cv-20636, was filed on Feb. 20, 2018.

complaints, proposed co-lead counsel have coordinated their ongoing investigation relating to the claims in this MDL by participating in several meetings to discuss experts, strategy, and potential issues and defenses.  They have catalogued Monat's representations, complaints, made public records requests, and spoken to potential class members about their experiences.  Proposed co-lead counsel also coordinated their efforts with respect to the JPML hearing, and Ms. Sleater argued on their behalf before the Panel for centralization and consolidation in this District so as to not to burden the Panel with unnecessary and repetitive arguments.

The proposed private ordering structure will provide the most efficient and effective means of coordinating and negotiating among the KKS Slate's attorneys based on cooperative delegation and use of their many talents.

### ARGUMENT

"Federal Rule of Civil Procedure 23(g)(1) outlines the considerations pertinent to the appointment of lead counsel at the time a class is certified and applies equally to the appointment of interim lead counsel before certification."  *In re: Disposable Contact Lens Antitrust Litig.*, No. 3:15-MD-2626-J-20JRK, 2015 WL 10818781, at *1 (M.D. Fla. Oct. 7, 2015) (collecting cases); *see also* Manual § 21.11.  Under that Rule, courts must consider four factors in appointing lead counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

The "designation of interim [class] counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement."  *Id.* at § 21.11.  Because lead counsel is charged with the ultimate responsibility of

acting on behalf of the class throughout the entire litigation, this Court must appoint lead counsel who are fully capable and qualified to fairly and adequately represent the interests of the class, including through trial if necessary.  *Id.* at §§ 21.271–72.

**A.**    **The members of the KKS Slate have already done substantial work on the litigation in a cooperative and efficient manner.**

As explained above, members of the KKS Slate have been actively litigating this matter from its inception, and prior to consolidation by the JPML.  Ms. Kane, Ms. Keller, and Ms. Sleater, along with their team, have provided plaintiffs-side leadership from the outset.  While other cases in this MDL were stayed pending an order from the Panel, Judge Cooke declined to stay *Sohovich* (*see* ECF No. 22), and Ms. Sleater and her team effectively and cooperatively negotiated with Monat's counsel to submit a joint scheduling report pursuant to Rule 16.1 (ECF No. 24) that Judge Cooke entered (ECF No. 27).  Ms. Sleater and her team also conducted thorough research and submitted their opposition to Monat's motion to dismiss (ECF No. 26) and discussed discovery issues including preservation of Monat's Market Partners' representations and communications.  The parties also exchanged initial disclosures on May 14, 2018, and tentatively agreed on a mediator as required by the Court (ECF No. 30).

Through the motion to dismiss briefing, proposed co-lead counsel, with the assistance of other counsel listed herein, learned and researched Monat's potential defenses, including standing for identified products involved in the litigation and injunctive relief, limits on damages beyond economic loss, and issues relating to class certification.  The parties' discussions on discovery, and in particular preservation, also revealed Monat's likely position on liability for its "Market Partners'" communications and representations.[4]

---

[4] Proposed co-lead counsel researched this issue and brought it to this Court's attention at the first status hearing held on July 16, 2018.

Attorneys on the KKS Slate led a streamlined effort to involve counsel for all of plaintiffs' counsel who wanted to participate from the outset.  For example, Ms. Kane coordinated all plaintiffs' counsel with filed cases to participate in telephonic meetings and an in-person meeting prior to the initial Status Conference.  She also prepared the initial draft of the Preliminary Report requested by the Court, coordinated input from Plaintiffs' counsel for all filed cases, and made efforts to agree on language with counsel for Monat.  The KKS Slate again took the lead by preparing the Case Management Order and other documents requested by the Court subsequent to the Status Conference, and Ms. Kane specifically, incorporated input from plaintiffs' counsel received prior to the evening of Thursday, July 26, reaching a consensus with Monat on most of the issues.[5]  As a result of the KKS Slate's efforts and negotiations with Monat, Monat has agreed to produce its insurance policy by August 1, 2018.  Proposed co-lead counsel have met and conferred with counsel for Monat and reached agreement when feasible.  Their collaboration with counsel in this litigation—both plaintiffs' counsel and counsel for Monat—is unparalleled by other attorneys, and they will continue that level of coordination whenever appropriate for the efficient management of this litigation as it progresses.

With respect to Defendants' potential positions in this litigation, the KKS Slate has already discussed testing and experts needed for liability and damages and possible remediation as well as efforts to draft a consolidated class action complaint.  As part of this effort, the KKS Slate has already organized itself to most effectively use its members' collective talents to enhance and facilitate the most efficient prosecution and management of this litigation.  The Slate, comprised of two co-leads, a co-lead and liaison counsel, and five Plaintiffs' Steering Committee members,

---

[5] Unfortunately, the KKS Slate discovered the afternoon of Thursday, July 26, that some plaintiffs' counsel who elected not to participate in the meet and confer process with the KKS Slate and Monat disagree with some of the provisions negotiated in the draft Case Management Order.

designates one attorney to lead efforts related to specific tasks in the litigation to avoid duplication

of effort.

### Proposed Leadership Structure

**Julie Kane**
*Co-Lead and Liaison Counsel*

*Ensure that time and expenses are reported accurately and that work is performed in an efficient manner.*
*Manage communications with the Court and take part in settlement discussions.*

**Amy Keller**
*Co-Lead Counsel*

*Direct strategy related to law and briefing and damages analysis. Engage with Monat in any discussions regarding settlement.*

**Jessica Sleater**
*Co-Lead Counsel*

*Direct strategy related to discovery and expert witnesses. Engage with Monat in any discussions regarding settlement.*

### Plaintiffs' Steering Committee

**Amanda Williams**
*Plaintiffs' Steering Committee*

*Assist in matters concerning offensive discovery and vetting of Plaintiffs.*

**Gwendolyn Giblin**
*Plaintiffs' Steering Committee*

*Assist in matters concerning law and briefing.*

**Carin Marcussen**
*Plaintiffs' Steering Committee*

*Assist in matters concerning insurance coverage, damages, and expert witnesses regarding same.*

**Yvonne Flaherty**
*Plaintiffs' Steering Committee*

*Assist in management and analysis of the scientific evidence both Plaintiff and Defense, including scientific expert coordination.*

**June P. Hoidal**
*Plaintiffs' Steering Committee*

*Assist in obtaining third-party discovery and document preservation issues, as well as interface with state attorneys general and other regulatory agencies.*

The KKS Slate has prepared protocols to ensure that litigation is pursued efficiently,

without unnecessary effort and duplication, and in a manner that can be best supervised by the

Court, including protocols to govern timekeeping, monthly submission of time reports, quarterly

reports to the Court, and other administrative tasks.[6]  These protocols are based, in part, upon other protocols used within this Circuit (although adapted for the needs of this specific case), including a recently-adopted time and expense protocol developed for the *In re: Equifax, Inc. Customer Data Security Breach Litigation*, No. 17-md-2800-TWT (N.D. Ga.)—a closely-watched case necessarily requiring efficiency and careful organization of counsel.  The KKS Slate is particularly mindful of the size and scope of this litigation and has tailored their proposed protocols appropriately for this case.

**B.      The members of the KKS Slate have significant experience in successfully litigating complex cases and have superior knowledge of the applicable law.  The slate is comprised of attorneys from diverse backgrounds with complementary skill sets.**

As demonstrated below and in the attached firm resumes (Exhibits A–H), the KKS Slate includes some of the nation's most respected attorneys and firms representing plaintiffs in class actions.  Of particular relevance here, the slate brings together attorneys from firms willing to dedicate the time and resources necessary for this litigation, who have led the largest and most complex multidistrict cases in history, including those cases alleging that defendants' misrepresentations in connection with the sale of a consumer product caused personal injuries to individuals who used those products.

**1.      Julie Kane, Proposed Interim Liaison and Co-Lead Counsel**

Julie Braman Kane, a partner at Colson Hicks Eidson since 1999, has obtained multimillion-dollar verdicts and settlements in a variety of cases representing those harmed by the negligence of others.  Her depth of experience in class and multidistrict litigation is broad.  As early as 2001, she represented the class for the Menorah Gardens class action, a litigation

---

[6] The undersigned propose that these protocols can be submitted for review *in camera*, a practice that has been adopted by other judges in multidistrict cases as of late.  *See, e.g., In re: Intel Corp. CPU Mktg., Sales Prac. and Prod. Liab. Litig.*, No. 18-md-2828 (D. Or.).

recovering $100 million for thousands whose deceased family members' remains were potentially compromised.  Beginning in 2005, she served as Counsel to the Receiver in the Mutual Benefits Receivership which recovered over $120 million for defrauded investors, the largest SEC enforcement action in the Southern District of Florida.  Ms. Kane serves on the Plaintiffs' Steering Committee for the 21st Century Oncology data breach litigation, which involves a significant breach including identity theft, medical identity theft, and loss of privacy in patients' personal and health information.  Her practice also includes significant personal injury and wrongful death litigation, and she notably obtained a verdict in excess of $38 million in a pharmaceutical and medical negligence case.

Ms. Kane is a *Chambers USA* Recognized Practitioner and has received a number of honors and awards including Best Lawyers in America, Florida Super Lawyers, Florida Legal Elite, the *Daily Business Review*'s Most Effective Lawyers and Top Twenty Women in the Law, and National Trial Lawyers' Top 100 Trial Lawyers.  She is the immediate Past-President of the American Association for Justice, the world's largest trial bar, and as such has extraordinary relationships with plaintiffs' lawyers across the United States.  She has served as a Commissioner on the Florida Elections Commission, as President of the Miami-Dade Chapter of the Florida Association for Women Lawyers, and initiated and shared the Voter Protection Action Committee, an election protection program that coordinated lawyers in all 50 states to protect the voting rights of American citizens in the past three election cycles.

Ms. Kane has published and has lectured to lawyers in over 40 venues about litigation and trial skills.  Her demonstrated leadership and ability to work collaboratively with other counsel on both sides of the aisle will be an asset to this litigation.[7]

---

[7] An abbreviated version of Ms. Kane's CV is attached hereto as Exhibit A.  A complete curriculum vitae can be found at https://www.colson.com.

2.      **Amy E. Keller, Proposed Interim Co-Lead Counsel**

Amy Keller is a partner of the law firm of DiCello Levitt & Casey LLC—one of the fastest-growing boutique complex litigation firms in the country, with offices in Chicago and Cleveland. As a younger attorney with 10 years' of experience exclusively litigating class action cases, Ms. Keller has already demonstrated a high-level of competence in litigating—and leading—multidistrict cases.  Serving as co-lead counsel in one of the largest pending cases in the country—*Equifax*—Ms. Keller has worked with attorneys across the country to thoroughly investigate some of the most complex factual and legal issues, culminating in a 50-state complaint carefully detailing defendants' alleged wrongdoing.  *Equifax*, No. 18-md-2800-TWT (N.D. Ga.) (ECF No. 374).  Coordinating with counsel who filed hundreds of cases throughout the country, Ms. Keller and her team vetted thousands of plaintiffs for inclusion in the Consolidated Amended Complaint in *Equifax*, and that team is now engaged in the process of drafting initial disclosures and ESI disclosures.  Ms. Keller's commitment to thorough investigation, experience with streamlined vetting and document collection, and ability to work with attorneys across the country will be an asset in this litigation.

Ms. Keller also serves on the Executive Committee and as Co-Chair of Law and Briefing in *In re Apple Inc. Device Performance Litigation*, No. 18-md-2827 (N.D. Cal.), where she researched and briefed plaintiffs' allegations of violations consumer protection laws in each state, territory, and even certain foreign countries.  Ms. Keller has also served in leadership positions in other nationwide class actions, with recoveries in the hundreds of millions of dollars.  *See, e.g.,* *Catalano v. BMW of North America, LLC*, No. 15-cv-04889 (S.D.N.Y.); *Roberts v. Electrolux Home Prods., Inc.*, No. 12-cv-01644 (C.D. Cal.).  Similarly, the experienced roster of attorneys at DiCello Levitt & Casey have recovered billions for their clients, and have the resources necessary to ensure the competent litigation of this case.

As the chair for several years of the Chicago Bar Association Class Action Committee, Ms. Keller has led symposia and presented on a broad range of topics affecting large-scale class actions. She is a board member of Public Justice, a national not-for-profit organization protecting consumers. Her rapidly-developing expertise and leadership in the field of consumer class actions is routinely recognized, having been named an Illinois Super Lawyers Rising Star, a *National Law Journal* Plaintiff Trailblazer, and a one of the "Top 40 Under 40" trial lawyers in Illinois by National Trial Lawyers.

Additionally, and also important to this litigation (as Monat has brought defamation lawsuits against some of the putative class members), Ms. Keller has experience defending consumer advocates against defamation claims from large corporations facing class action lawsuits. *See, e.g., Evanger's Cat and Dog Food Company, Inc. v. Thixton*, No. 17-cv-9229 (N.D. Ill.) (defending a Florida consumer advocate). Her experience in leading complex class actions, and familiarity with the legal issues impacting this case, will help advance this litigation to a favorable result for those individuals harmed by Monat's misrepresentations and omissions.[8]

### 3.    Jessica J. Sleater, Proposed Interim Co-Lead Counsel

Jessica J. Sleater is a founder and named partner of the firm Andersen Sleater Sianni LLC, a national complex litigation firm with offices in New York and Delaware. Prior to forming her own firm—one of only a few women plaintiff's attorneys to do so—Ms. Sleater practiced for many years at one of the largest plaintiff's class action law firms in the country (as did her partners, Eric Andersen and Ralph Sianni). She has experience spearheading national class actions that have resulted in significant recoveries for class members, including a recent consumer class action, *Cohen v. F/ETCA, et al.*, No. SACV 15-01698 (C.D. Cal.), that received final approval of a

---

[8] Ms. Keller's CV is attached hereto as Exhibit B.

settlement that provides California toll road customers with direct payments of over $20 each for improper disclosure of their credit and debit card numbers.  She is currently leading proposed national consumer class actions in *Cisneros v. Petland, Inc., et al.*, No. 17-cv-02828 (N.D. Ga.), involving federal and state civil racketeering claims against a national retail pet store chain, and *Mael, et al. v. Evanger's Dog and Cat Food Co., Inc., et al.*, No. 17-cv-05469 (W.D. Wash.), alleging that a purportedly high-end pet food was falsely advertised and led to the sickness of pets and death of one.  Her efforts have earned her national attention including profiles in the *New York Times* and *Wall Street Journal* for her representation of bondholders of Argentina. She has been recognized as a New York metro area Super Lawyer and Rising Star for several years.

In addition to her extensive class action experience, Ms. Sleater has done significant work in this case, as demonstrated herein.  She has collaborated with the other women attorneys in the KKS Slate to coordinate their efforts in this litigation including identifying potential issues and planning going forward in the MDL.

Ms. Sleater has helped to promote diversity in the profession by championing women's issues and her female colleagues.  Her efforts have included forming a networking group exclusively for women in the plaintiffs' bar, authoring an article highlighting some of the issues that women plaintiffs' attorneys face, and speaking about issues unique to female attorneys.  She also dedicates her time to helping survivors of sexual assault, partners with non-profits to advocate for consumers and animals, and has mentored young women, who are homeless.[9]

### 4.    Yvonne Flaherty, Proposed Plaintiffs' Steering Committee Member

Yvonne M. Flaherty, a partner at Lockridge Grindal Nauen PLLP, has extensive experience

---

[9] Ms. Sleater's CV is attached hereto as Exhibit C.

in complex litigation and chairs the firm's mass action litigation department.  Ms. Flaherty's experience includes serving as Plaintiffs' Co-Lead Counsel in the consolidated Minnesota State Court Litigation, *In Re American Medical Systems, Inc., Litig.*, Case No. 27-CV-11-3933 (Hennepin County District Court, Minnesota).  In her role as Co-Lead Counsel, Ms. Flaherty managed the coordination, discovery, trial selection, and resolution of thousands of individual cases pending before the Honorable Ronald L. Abrams.  The Honorable James V. Selna, in the Central District of California, also appointed Ms. Flaherty to serve as Plaintiffs' Co-Lead Counsel in the consolidated Riata heart device litigation, captioned *In Re St. Jude Devices Litigation*, Case No. SACV 13-00383.  Numerous courts have also appointed Ms. Flaherty to plaintiffs' executive and steering committees throughout the United States.

Ms. Flaherty has devoted the majority of her career representing individual claimants, particularly women, and has served on trial teams in two national class actions, both of which were tried to verdict. In *Peterson v. BASF Corp., Civil No.* C2-97-295 (Norman County District Court, Minnesota), Lockridge Grindal Nauen P.L.L.P. secured a jury verdict for a nation-wide class seeking redress for defendants' marketing of its herbicide products.  Additionally, Ms. Flaherty was a member of the trial team representing a certified sub-class as part of a nationwide antitrust trial in *In re Laminates* that was tried to verdict in the United States District Court for the Southern District of New York.  With her breadth of experience representing individuals who have experienced personal injury related to defective products, as well as her trial experience, Ms. Flaherty is a valuable asset to the KKS Slate.[10]

### 5.    Gwendolyn Giblin, Proposed Plaintiffs' Steering Committee Member

Gwendolyn ("Wendy") Giblin is Counsel with Audet & Partners, LLP, whose attorneys

---

[10] Ms. Flaherty's CV is attached hereto as Exhibit D.

focus their practices on complex individual cases and class and mass actions. Ms. Giblin has recovered multiple significant recoveries on behalf of individuals in class and complex litigation. With more than 20 years' experience litigating cases involving consumer rights, unfair business practices, privacy rights, investors' rights, corporate governance, and antitrust matters, Ms. Giblin has broad experience in cases involving sophisticated frauds. Some representative cases include recovering $117 million for investors in a software manufacturing company; recovering $85 million for investors in an action alleging improper accounting practices; recovering $40 million for investors in a fraud action arising from false statements in publicly-issued financial statements; recovering $107 million for commodity purchasers in an antitrust class action alleging price-fixing and international market allocation; recovering $30 million for investors in a company that understated its expenses and engaged in other accounting manipulations; recovering substantial percentage of losses claimed by limited partners in a now dissolved partnership which invested in steel intermodal shipping containers; and obtaining a recovery for shareholders in a bankrupt company by alleging deficient internal controls and failure to properly integrate the accounting systems of newly acquired companies.

Ms. Giblin's experience in cases involving complex financial frauds makes her well-suited to advance this litigation. Her previous experience in briefing complex issues before courts across the country, combined with her educational background—holding both an MBA and Doctorate in Business Administration—will be an asset to this case, especially considering the company's sales structure. Ms. Giblin has been honored as Alumni Volunteer of the Year by Golden Gate University and is active in Toastmasters International, where she serves as an area director and mentors San Francisco-based clubs.[11]

---

[11] Ms. Giblin's CV is attached hereto as Exhibit E.

6.      **June P. Hoidal, Proposed Plaintiffs' Steering Committee Member**

June P. Hoidal is a partner at Zimmerman Reed ("ZR"), a nationally-recognized leader in complex and class action litigation, whose attorneys have been appointed as lead counsel in some of the largest and most complex cases in federal and state courts across the country. ZR has successfully represented thousands of consumers and injured individuals nationwide in significant and demanding cases since its founding in 1983.  The firm's practice includes a wide range of legal issues involving consumer fraud, dangerous or defective products, pharmaceuticals, shareholder protection, ERISA, environmental torts, human rights violations, and privacy litigation.  ZR is well-staffed, has the resources necessary to handle complex litigation, and has lead attorneys who are experienced and well-qualified, with more than half of the firm's resources and professional staff devoted to cases involving consumer fraud.

June Hoidal has been recognized as a Super Lawyers Rising Star in 2007 and again from 2015 to 2018.  She is the Co-Chair of the firm's Public Client & Attorney General practice, and also has substantial experience in representing individuals and businesses who experience losses as a result of consumer protection, antitrust, and securities violations.  Most recently, June secured preliminary approval of a $22.6 million settlement for a national class of consumers against Papa Murphy's for alleged violations of the Telephone Consumer Protection Act.  *Lennartson v. Papa Murphy's Int'l LLC*, No. 15-cv-5307, Dkt. No. 214 (W.D. Wash. May 16, 2018).  Previously, her work has included briefing before the U.S. Supreme Court on behalf of the State of Mississippi, which resulted in a unanimous decision in favor of the State finding its *parens patriae* action was not removable to federal court.  *Mississippi ex rel. Hood v. AU Optronics*, 134 S. Ct. 736 (2014).  Ms. Hoidal also represented investors alleging losses due to Wells Fargo's securities lending program, which resulted in a $62 million settlement just two days before trial was set to commence.

Her experience working with state attorneys general, combined with her expertise in navigating complex litigation, makes her well-suited for this litigation.[12]

### 7.     Carin L. Marcussen, Proposed Plaintiffs' Steering Committee Member

Carin L. Marcussen, an attorney at Federman & Sherwood, has more than fifteen years' experience litigating complex cases, generally, on behalf of individuals who have been injured by the wrongful conduct of others.  Specifically, Ms. Marcussen litigates cases involving consumer rights, unfair business practices, personal injury, wrongful death, insurance bad faith, breach of contract, privacy rights, and professional negligence.  Her skills include deciphering often complex insurance coverage claims, screening potential clients and assisting clients through the litigation process, obtaining critical discovery, and working with expert witnesses to develop damage models for unique and complex cases.

Ms. Marcussen has been instrumental in multidistrict and complex cases, organizing and selecting class representatives; examining and strategically managing litigation to obtain maximum insurance coverage for plaintiffs; and in recently obtaining discovery sanctions against a recalcitrant counsel and defendant, which lead to beneficial settlement negotiations.  She has also served critical roles in obtaining multimillion-dollar recoveries, through verdict or settlement, for injured parties.

Ms. Marcussen has been recognized as a Rising Star by Oklahoma Super Lawyers in 2008, 2009, 2011, 2013 through 2015, and 2017.  Ms. Marcussen serves on the Oklahoma Bar Association's Civil Procedure and Evidence Code Committee as well as the Disaster Relief Committee.  Ms. Marcussen received the Oklahoma Association for Justice's President's Award

---

[12] Ms. Hoidal's CV is attached hereto as Exhibit F.

in 2013 for her *pro bono* work assisting tornado victims.  She received the Oklahoma County Bar Association *Pro Bono* Award in 2010 for her work with Oklahoma Lawyers for Children.

Ms. Marcussen has a degree in Finance and International Business from Oklahoma State University and a law degree, with honors, from the University of Oklahoma.  Her breadth of experience in insurance coverage and damages will ensure that the putative class members are well represented.[13]

###    8.    Amanda Williams, Proposed Plaintiffs' Steering Committee Member

Amanda Williams is a partner of Gustafson Gluek, PLLC, located in Minneapolis, Minnesota.  Ms. Williams has a broad range of plaintiffs' consumer and antitrust class-action experience as well as mass action experience throughout the nation.  For example, just within the last few years, Ms. Williams has served on the PSC for the *In Re: American Medical Systems, Inc. Litigation*, No. 27-CV-11-3933, in Minnesota State Court, as well as being an integral member of the Minnesota Leadership and Trial Team in the *In re Syngenta Class Action Litigation*, No. 27-CV-15-12625 and 27-cv-15-3785 (4th Jud. Dist. Ct. Minn.) ("MN MDL"), litigation in which Federal MDL and state court venues worked in coordination to handle a complex class action and mass action hybrid consumer claim against an international bioengineering company.

Indeed, the *Syngenta* litigation recently settled for an impressive $1.51 billion on behalf of a national class of corn farmers and grain handlers.  In connection with that litigation, Ms. Williams and her co-counsel were named Minnesota Attorney of the Year in 2017.  Additionally, Ms. Williams has been named a Minnesota Super Lawyers Rising Star every year from 2013 to 2017. In 2013, the United States District Court for the District of Minnesota recognized Ms. Williams for her commitment to her ongoing *pro bono* representation of individuals through the Federal Bar

---

[13] Ms. Marcussen's CV is attached hereto as Exhibit G.

Associations *Pro Se* Project. Ms. Williams has served on the board of the Hennepin County Bar Association as the liaison from the Minnesota Women Lawyers and continues to be active in both.

In her 14 years of experience, Ms. Williams has handled all aspects of complex litigation, from drafting consolidated master complaints through discovery and trial, managing dispositive and non-dispositive motion practice in between.   Ms. Williams is committed to pursuing this litigation on behalf of her client and the scores of individuals who have had similar, negative experiences with Monat's products [14]

### C.   The KKS Slate will commit the resources necessary to represent the putative class members, coordinate efforts among counsel, and ensure the effective and efficient resolution of this litigation.

The KKS Slate has the resources necessary to finance a case of this magnitude, as they have shown by prosecuting similar cases in the past.   The slate's law firms are responsible for achieving some of the largest class action recoveries in some of the most complex, document-intensive, and high-profile class actions ever, including—as mentioned above—consumer product cases involving both economic losses and personal injuries.   Moreover, the proposed structure—involving multiple firms—*ensures* that the case will be well-financed, and provided with the adequate resources necessary for litigation, while at the same time ensuring efficiency through delegating specific work.   *See, e.g., In re: Disposable Contact Lens Antitrust Litig.*, No. 15-md-2626, 2015 WL 10818781, at *2 (M.D. Fla. Oct. 7, 2015) (appointing a structure with "three-firm co-leadership," the same structure accepted in other MDLs, with additional liaison counsel as well as a separate local counsel); *Equifax*, 17-md-2800-TWT (N.D. Ga.), ECF No. 232 (three-attorney co-lead structure, with co-liaison counsel, seven-person steering committee, and state coordinating liaison counsel).

---

[14] Ms. Williams' CV is attached hereto as Exhibit H.

In a case involving hundreds of millions of dollars of sales of Monat products each year[15]—a structure ensuring that the litigation is well-supported, well-financed, and efficient is necessary. While each firm is committed to expending whatever resources are necessary to achieve a favorable result, all counsel are extremely cognizant of the need to control costs, have diligently done so in the other complex litigation they have led, and will do so here.

### D.   The KKS Slate's structure recognizes the importance of ensuring that the class members are represented by individuals who understand their circumstances.

The Duke Standards recognize the importance of inclusion, and—while noting that the Court's first priority is ensuring that the lawyers "appointed to leadership positions are capable and experienced and that they will responsibly and fairly represent all plaintiffs"—the Duke Standards also note that Courts should "keep[] in mind the benefits of diversity, experience, skills and backgrounds."   Duke standards Best Practice 3(c).   The women proposed for this slate encompass all of the above.

More recently, judges have also been encouraged to "assess the unique dynamics of a case in putting together the leadership structure."  Duke Law Guidelines and Best Practices Addressing Chronic Failure to Diversity Leadership Positions in the Practice of Law, First Draft Pending Revision (May 1, 2018).[16]  Specifically, "[i]n a litigation that is gender specific and affects women

---

[15] Monat's sales were $41 million in 2016, and expected to be $300 million in 2017.  *See* Ted Nuyten, *Monat Global Expects $300 Million Revenue for 2017*, Business for Home (Oct. 26, 2017); *Monat Global Sales Up from $19 Million to $41 Million in 2016*, Business for Home (Mar. 23, 2017).

[16] *Available at* https://bit.ly/2Ohxk3X.

directly, the judge should prioritize the inclusion of female attorneys in leadership roles." *Id.*[17] The National Association of Women Judges also recently adopted a resolution, attached hereto as Exhibit I, recognizing that trial courts have not appointed women and minority lawyers to leadership positions, and taking the position that "our trial courts, both federal and state, should be mindful of the importance of diversity and should make appointments that are consistent with the diversity of our society and the justice system."

The team assembled here is not only capable and experienced—comprised of partners from some of the top law firms in the country—but was also designed, specifically, to address the fact that the vast majority of users of Monat's hair care products are women, who were attracted to the products because of the promise of fuller, thicker hair. Monat's advertising scheme was specifically targeted to women,[18] and the majority of Monat's Market Partners are women. Appointing an all-female leadership team to this case—indeed, maybe the first all-female leadership team in a class action consumer product MDL—is the right call.

---

[17] For example, in a multidistrict case involving allegations that a medical device caused women to develop an aggressive form of cancer, Judge Kathryn H. Vratil of the District of Kansas appointed eleven female lawyers to a 20-lawyer Plaintiff's Steering Committee in the *In re Ethicon Inc. Power Morcellator Product Liability Litigation*. This was the first time that women were the majority in a leadership committee in a consolidated MDL proceeding. *See also* Elizabeth A. Fegan, *An Opportunity or Landmine: Promoting Gender Diversity from the Bench*, 63 May Fed. Law. 38 (2016) (quoting co-lead counsel in *Ethicon* Aimee Wagstaff, that "having women involved in a tort that is specific to the female body is very crucial in litigation—not only for the viewpoints that women bring but also for talking about and understanding their clients' injuries." *See also* Diane M. Zhang, *A Milestone in Gender Equality*, TRIAL 45, 46 (Am. Ass'n Justice 2016), *available at* https://bit.ly/2LCVuY8. Similarly, in the Mirena IUD litigation, where plaintiffs alleged they were injured by the defendant's birth-control device, plaintiffs' counsel urged Judge Cathy Seibel of the Southern District of New York, to appoint female lawyers to the leadership team because it would benefit the female plaintiffs to have qualified female attorneys, who could relate to their struggle as well as promote empathy to the jury, particularly because the lead lawyer for the defendant was a woman. *See Judge Calls for More Female Lawyers for Mirena IUD Litigation,* Pintas & Mullins Law Firm (May 23, 2013), https://bit.ly/2NLpwWY.

[18] *See Hoffpauir v. Monat*, No. 18-cv-21606-JEM (S.D. Fla.), ECF No. 1 at ¶¶ 2-5 (describing Monat's exploitation of women's insecurities through aggressive marketing campaigns).

## CONCLUSION

For the foregoing reasons, the Court should appoint the KKS Slate as interim counsel for

the putative class. A proposed order is attached.

Date: July 27, 2018                              Respectfully submitted,

**COLSON HICKS EIDSON**
255 Alhambra Circle,
Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444

**/s/ Julie Braman Kane**
JULIE BRAMAN KANE
Florida Bar No.: 980277
julie@colson.com
Latoya Brown
Florida Bar No.: 91792
latoya@colson.com
Secondary email:
b.cancela@colson.com
eservice@colson.com

**LOCKRIDGE GRINDAL NAUEN
P.L.L.P.**
100 Washington Avenue South
Suite 2200
Minneapolis, Minnesota 55401
Tel: (612) 339-6900

**/s/ Yvonne M. Flaherty**
Yvonne M. Flaherty (#267600)
ymflaherty@locklaw.com

**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560
Fax: (405) 239-2112

**/s/Carin Marcussen**
clm@federmanlaw.com

**DiCELLO LEVITT & CASEY LLC**
Ten North Dearborn Street
Eleventh Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900

**/s/ Amy E. Keller**
AMY E. KELLER
Admitted *Pro Hac Vice*
akeller@dlcfirm.com
Secondary email:
alebdjiri@dlcfirm.com
rleason@dlcfirm.com

**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Suite 500
San Francisco, California 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

**s/ Gwendolyn R. Giblin**
Gwendolyn R. Giblin
ggiblin@audetlaw.com
Secondary email:
hdarling@audetlaw.com

**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Tel: (612) 333-8844
Fax: (612) 339-6622

**/s/ Amanda M.Williams**
Amanda M. Williams
Raina C. Borrelli (#392127)

**ANDERSEN SLEATER SIANNI LLC**
1250 Broadway, 27th Floor
New York, NY 10001
Tel:  (302) 595-9102
Fax:  (302) 595-9321

**/s/ Jessica Sleater**
jessica@andersensleater.com

**ZIMMERMAN REED LLP**
14646 N. Kierland Blvd., Suite
145 Scottsdale, AZ 85254
Tel: (480) 348-6400
Fax: (480) 348-6415

**/s/June Hoidal**
june.hoidal@zimmreed.com

awilliams@gustafsongluek.com
rborrelli@gustafsongluek.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document filed through the

CM/ECF system on July 27, 2018, which will electronically notify all counsel of record.

By: <u>/s/ *Julie Braman Kane*</u>
Julie Braman Kane
Florida Bar No.:  980277