**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

MDL No. 2841
Master File No. 18-MD-02841-GAYLES
S.D. Fla. Case No. 1:18-cv-20624-DPG

| | |
|---|---|
| **IN RE:**<br><br>**MONAT HAIR CARE PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION**<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>DANA SOHOVICH, et. al., individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>MONAT GLOBAL CORP.,<br>ALCORA CORPORATION, and<br>B & R PRODUCTS, INC.,<br><br>   Defendants. | **JURY TRIAL DEMANDED** |

**MASTER CONSOLIDATED AMENDED COMPLAINT**

## TABLE OF CONTENTS

NATURE OF CLAIMS ................................................................................................ 1

JURISDICTION AND VENUE ................................................................................... 5

THE PARTIES ............................................................................................................. 6

    I.    Defendants ........................................................................................................ 6

    II.    Products............................................................................................................ 8

    III.    Plaintiffs ......................................................................................................... 9

COMMON FACTUAL ALLEGATIONS .................................................................... 16

    I.    Defendants Misleadingly Market Monat Products As FDA Approved,
        Curative for Certain Health Problems, Safe, Non-Toxic, Suitable For All
        Hair and Clinically Proven To Promote Hair Growth ................................. 16

    II.    Defendants Use Sales and Marketing Channels To Spread
        Misrepresentations About Monat Products.................................................... 29

    III.    Defendants Knew That Monat Products Were Defective During the
        Class Period ................................................................................................... 34

    IV.    Defendants Fail to Take Remedial Action.................................................... 41

TOLLING OF THE STATUTE OF LIMITATIONS................................................. 47

CLASS ACTION ALLEGATIONS ........................................................................... 49

    I.    Nationwide Classes........................................................................................ 50

    II.    State Classes................................................................................................... 50

    III.    Numerosity..................................................................................................... 50

    IV.    Predominance of Common Issues.................................................................. 51

    V.    Typicality....................................................................................................... 53

    VI.    Adequate Representation ............................................................................... 53

    VII.    Superiority...................................................................................................... 53

REALLEGATION AND INCORPORATION BY REFERENCE ............................................ 55

CLAIMS FOR RELIEF .............................................................................................................. 55

I.   Nationwide Claims ........................................................................................................ 55

    1.  Violation of Florida Deceptive and Unfair Trade
       Practices Act, Fla. Stat. § 501.201 ................................................................. 55

    2.  Violation of the Magnuson-Moss Warranty Act,
       15 U.S.C. § 2301 ............................................................................................ 59

    3.  Breach of Implied Warranty of Merchantability,
       Fla. Stat. § 672.314, et seq. ........................................................................... 63

    4.  Violation of Express Warranty ...................................................................... 64

    5.  Negligence - Failure to Warn ......................................................................... 65

    6.  Strict Liability – Design Defect ..................................................................... 66

    7.  Strict Liability – Failure To Warn ................................................................. 67

    8.  Unjust Enrichment ......................................................................................... 68

II.  State Claims ................................................................................................................... 69

    A.  Alaska
    9.  Alaska Consumer Protection Act,
       Alaska Stat. §§ 45.50.471, et seq. ................................................................. 69

    B.  Arizona
    10. Arizona Consumer Fraud Act
       A.R.S. §§ 44-1521, et seq. ............................................................................. 72

    C.  California
    11. Violations of the Consumer Legal Remedies Act,
       Cal. Civ. Code §§ 1750, et seq ...................................................................... 73

    12. Violations of the California Unfair Competition Law,
       Cal. Bus. & Prof. Code §§ 17200, et seq. ..................................................... 76

    13. Violations of California's False and Misleading Advertising
       Law, Cal. Bus. & Prof. Code §§ 17500, et seq ............................................. 79

D. Illinois

14. Illinois Consumer Fraud And Deceptive Business Practices
Act, 815 ILCS §§ 505, *et seq.* .......................................................... 81

15. Illinois Uniform Deceptive Trade Practices Act,
815 ILCS §§ 510/2, *et seq*................................................................. 82

E. Iowa
16. Iowa Private Right Of Action For Consumer Frauds Act,
Iowa Code § 714H ............................................................................. 83

F. Louisiana
17. Louisiana Unfair Trade Practices and Consumer Protection
Law, La. Rev. Stat. Ann. §§ 51:1401, *et seq.* .................................... 85

G. Maryland
18. Maryland Consumer Protection Act,
Md. Comm. Code §§ 13-301, *et seq.* ................................................ 87

H. Michigan
19. Michigan Consumer Protection Act,
Mich. Comp. Laws Ann. §§ 445.903, *et seq*...................................... 89

I. Minnesota
20. Minnesota Consumer Fraud Act,
Minn. Stat. §§ 325F.68, et seq. and Minn. Stat. §§ 8.31, *et seq.* ....................... 90

21. Minnesota Uniform Deceptive Trade
Practices Act, Minn. Stat. §§ 325D.43, *et seq.* .................................. 92

J. Missouri
22. Missouri Merchandise Practices Act,
Mo. Rev. Stat. §§ 407.010, *et seq.* ................................................... 93

K. New York
23. New York General Business Law,
N.Y. Gen. Bus. Law §§ 349, *et seq*.................................................... 94

L. Ohio
24. Ohio Consumer Sales Practices Act,
Ohio Rev. Code §§ 1345.01, *et seq.* ................................................. 95

25. Ohio Deceptive Trade Practices Act,
Ohio Rev. Code §§ 4165.01, et seq. ................................................... 97

M. Oklahoma
26. OKLAHOMA CONSUMER PROTECTION ACT
Okla. Stat. Tit. 15, §§ 751, *et seq*......................................................................... 98

N. Texas
27. Texas Deceptive Trade Practices—Consumer Protection Act,
Texas Bus. & Com. Code §§ 17.41, et seq. ........................................................ 100

REQUEST FOR RELIEF ...................................................................................... 103

DEMAND FOR JURY TRIAL .............................................................................. 104

Plaintiffs, based on personal knowledge as to themselves, and upon information and belief as to all other matters, allege as follows:

## NATURE OF CLAIMS

1.      Defendants, Alcora Corporation ("Alcora"), Monat Global Corp. ("Monat") and B&R Products, Inc. ("B&R"), composing a family-run beauty conglomerate, have bilked consumers of millions of dollars by selling to consumers defective Monat hair care products ("Monat Products" or "Products" defined herein) with "treatment systems" touted as a way to regrow hair but which cause many to lose their hair and suffer other adverse reactions.

2.      Monat Products are branded through national marketing and advertising campaigns as the first revolutionary, anti-aging hair care product line.  Defendants go so far as to say that their Products provide curative health benefits, with the ability to grow hair and impact hormonal levels to prevent hair loss—equating Monat Products to dermatologist prescribed medications used to treat diagnosed medical conditions including alopecia and psoriasis.  In 2015, for instance, a current Director of Monat represented that Monat is an anti-aging company whose Products stimulate hair growth and transformed her alopecia.  She further represented that the Products could correct psoriasis and dry scalps.

3.      Defendants unambiguously claim that Monat Products are "safe," "naturally based," "clinically tested, proven and [g]uaranteed to deliver 'Longer, Fuller, Stronger, Younger-Looking Hair in Just 90 Days'" and that the Products are "suitable for all hair and skin types."

4.      Defendants further promise that Monat Products are made in the United States in a facility approved by the U.S. Food and Drug Administration (FDA), that the Products are "FDA approved," and that Defendants meet their "responsibility to offer Products that meet only the highest quality standards and [which] are made only with safe ingredients."

1

5.      From inception, Defendants have built the Monat brand on these misleading marketing themes.  In fact, when Defendants first launched Monat in 2014, their officers hosted a conference call and, during that call, emphasized these claims in an effort to recruit people to sell Monat Products.  As early as 2015, Defendants represented incorrectly that Princeton University had done two years-worth of clinical trials, after which Defendants guaranteed consumers using Monat Products 46% hair growth, with a 46% decrease in DHT (which contributes to hair loss).  Defendants further guaranteed a 35% increase in follicle strength and a 70% repair of hair anchoring.

6.      Customers and users of Monat Products pay a premium for the Products based on Defendants' misrepresentation that the Products are "FDA approved" with curative benefits such as the ability to treat medically diagnosed hair and scalp conditions.  However, unlike medications prescribed by dermatologists to treat head, scalp and hair conditions which are approved by the FDA, the FDA does ***not*** "approve" hair products that are intended for purely cosmetic purposes.  The FDA does approve products "for use in the cure, mitigation, treatment, or prevention of disease and/or [as] intended to affect the structure or function of the human body."  The FDA defines such products as drugs under the Federal Food, Drug, and Cosmetic Act.

7.      Despite marketing the Products as FDA-approved, Defendants never sought nor received any such approval from the FDA.  As recently as this year, Defendants even declined to register for the FDA's voluntary program.

8.      Above all, far from the panacea promised by Defendants, Monat Products can cause embarrassing and extreme hair loss, hair breakage, head sores, infections requiring antibiotic treatment and other severe skin reactions.  The hair loss is not *de minimus*—consumers, who suffer

hair loss often lose significant amounts of hair—and once it begins it can often continue for weeks or months before abating, even if the consumer immediately discontinues use of the Products.

9.      It is telling that Monat, which has only been in existence for four years, is reported to have the *second largest* number of complaints about a single hair care brand in the history of the 112-year old FDA.  In roughly a two-year timespan, certain users of Monat Products have taken the time to make nearly 1000 adverse reports to the FDA and the Better Business Bureau, combined.  Additionally, the internet is replete with heartbreaking stories of many others who have been harmed by Monat Products.

10.      The overwhelming number of consumer complaints prompted the FDA in March 2018 to send inspectors to B&R, Alcora's Florida facility where Monat Products are made.  After the inspection but before the FDA released its report, Luis Urdaneta, Chairman of Monat and Founder and Director of Alcora, posted a Facebook live video about the inspection stating, "And the report that we have from them [i.e., the FDA] that they are leaving the office now is that everything is fine . . . . It warranties that we are doing the things as things need to be done."  To the contrary, the FDA report found several violations of the Food, Drug, and Cosmetics Safety Act and stated that the inspection revealed "insanitary conditions," including the possibility that Products "may have become contaminated with filth."

11.      Disturbingly, when customers complain about adverse effects of Monat Products, Defendants actively conceal the danger, encouraging customers to continue using the Products, characterizing the adverse reaction as a natural "detox" period to be expected as the Products clean and treat the hair and scalp.  However, the appropriate response to adverse reaction should be cessation of use of the Products and medical treatment.

12.     Even worse, despite Monat's CEO's admission in a recent television interview that Defendants' representations about the detoxification process are "misleading" and that there is no scientific validity to Defendants' claim that customers suffering adverse reactions are "detoxing," Defendants have not issued any formal retraction to the public to correct its misleading marketing campaign.  In fact, Defendants continue to make the same misleading and/or false claims to this day.

13.     Every consumer who purchased Monat Products—including shampoo and conditioner for as much as $99—without the true facts about the Products and disclosure of the inherent health and safety risks prior to purchase was injured at the point of sale when, instead of obtaining safe, natural, FDA-approved hair Products, proven and guaranteed to promote hair growth and strengthening, consumers obtained Defendants' unreasonably dangerous and defective Product.  Consumers have been further injured by way of requiring expensive professional hair treatment and medical treatment as a result of injuries caused by Monat Products.

14.     By marketing, selling and distributing Monat Products from Florida to purchasers throughout the United States, Defendants made actionable statements that Monat Products were free of defects and safe and fit for their ordinary intended use and purpose.

15.      By marketing, advertising, selling and distributing Monat Products from Florida to purchasers throughout the United States, Defendants made actionable statements that the ordinary use of Monat Products would not involve undisclosed safety risks.  Further, Defendants concealed what they knew or should have known about the safety risks resulting from the material defects in Monat Products.

16.     Defendants engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading and likely to

mislead reasonable consumers.  Alternatively, Defendants were reckless in not knowing that these representations were false and misleading at the time they were made.  Defendants had and have exclusive access to data pertaining to the Product defect that Plaintiffs and members of the proposed Classes could not and did not have.

17.     Therefore, Plaintiffs, on behalf of themselves, the Nationwide Class, and the respective State Classes, hereby bring this action for violations of various state and federal laws.

## JURISDICTION AND VENUE

18.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.  Also, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, because Plaintiffs' Magnuson-Moss Act claim arises under federal law.  This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

19.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction.  Further, this Court has pendant or supplemental personal jurisdiction over the claims of non-Florida Plaintiffs.

20.     This Court has personal jurisdiction over Defendants, pursuant to Florida Statutes § 48.193(1)(a)(1), (2), and (6), because they are incorporated and headquartered in the State of Florida and have purposefully availed themselves of the privilege of conducting business in the state of Florida; some, if not most, of the actions giving rise to the Complaint took place in this District, including but not limited to Defendants manufacturing, advertising and representations regarding Monat's Products; and most if not all of Plaintiffs' claims arise out of Defendants operating, conducting, engaging in, or carrying on a business or business venture in this state or

having an office or agency in this state, committing a tortious act in this state, and causing injury to property in this state arising out of Defendants' acts and omissions outside this state; and at or about the time of such injuries Defendants were engaged in solicitation or service activities within this state, or products, materials, or things processed, serviced, or manufactured by Defendants anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events or omissions giving rise to these claims occurred in this District, Defendants have caused harm to Class members residing in this District, and Defendants are residents of this District under 28 U.S.C. § 1391(c)(2), because they are subject to personal jurisdiction in this District.  Also, venue is proper in this District pursuant to 28 U.S.C. § 1407.

22.     Moreover, Monat's website's Terms of Use, provide, in pertinent part, that venue is proper in Miami-Dade County, Florida, and that Florida law is applicable:

> The laws of the State of Florida govern these Terms of Use, without giving effect to any principles of conflicts of laws. You agree that any action at law or in equity arising out of or relating to these Terms of Use or the Site shall be filed, and that venue properly lies, only in the State or Federal courts located in Miami-Dade County, State of Florida, and you hereby consent and submit to the personal jurisdiction of such courts for the purposes of litigating any such action.

## THE PARTIES

### I.  Defendants

23.     Defendant Monat Global Corp. is a Florida Corporation with its principal place of business in Miami, Florida.  Monat is a multinational company in the business of designing, developing, manufacturing, distributing, and selling hair care products including all of the Products at issue in this litigation.  Founded in 2014, Monat boasts that it has hundreds of thousands of

customers, and has sold over 14 million units of product, in the United States alone.[1]  Indeed, in just three years, Monat sold over 20 million units in the United States and Canada, with about $300 million in total revenue in 2017 alone.  Monat is a wholly owned subsidiary of Alcora Corporation.

24.     Defendant Alcora Corporation is a Florida Corporation with its principal place of business in Miami, Florida.  Alcora designs, develops, manufactures, and distributes hair care and beauty products, including all of the Products at issue in this litigation.  Alcora is the umbrella organization for Monat, L'eudine Global, Project Beauty, and B&R Products.

25.     Defendant B&R Products, Inc. is a Florida Corporation with its principal place of business in Miami, Florida.  It designs, develops, manufactures, distributes, and warehouses Defendants' hair care products.  B&R is the sole manufacturer for Monat Products; Monat Products are manufactured and packaged at B&R facilities in Miami, Florida, and shipped directly to Monat.  Alcora acquired B&R in 2013, making it a subsidiary, in order to develop and produce Defendants' Products.[2]

26.     Defendants are each owned and controlled by the Urdaneta family, with co-founders Luis Urdaneta and Rayner Urdaneta at the helm.  Additional common leadership stretches across the organizations, and with Thomas Hoolihan as an officer of each of the three Defendant corporations.  Others serve in overlapping officer and leadership roles in the Defendant corporations including but not limited to, Marjorie Munoz, Maria Castellon, Jamie Ross, and Francisco Urdaneta.

---

[1] https://truthaboutmonat.com/monat-fact-sheet/ (last visited Sept. 23, 2018).

[2] https://www.alcoracorp.com/ (last visited Oct. 1, 2018); https://monatglobal.com/algora/ (last visited Oct. 1, 2018).

27.     Alcora and Monat share the exact same corporate address—3470 NW 82 Avenue, Miami, Florida—including the same suite, Suite 901.

28.     Defendants have common directors and officers and control over each other without respect of corporate formalities of separate existences.  Monat and B&R are mere instrumentalities of Alcora, used by Alcora to engage in improper conduct under state and federal law as alleged in this Complaint.  This is not a situation where a huge corporate parent owns entirely separate and distinct subsidiary companies.  To the contrary, Alcora is a family-owned umbrella organization for Monat and B&R.  The Urdaneta family members and overlapping officers run all three Defendant companies.

## II.     **Products**

29.     Defendants sell Monat Products in small bundles called "treatment systems."  Each bundle will typically include a shampoo, a conditioner and sometimes leave-in product. While the proportions and combinations may vary, critically, all of the treatment systems contain the same suspect ingredients.  Although the names given to the treatment systems change from time to time, the current nomenclature used by Defendants for systems used by Plaintiffs are: (1) Magnify System (Revitalize Conditioner, Renew Shampoo, Moxie Magnifying Mousse); (2) R3 System (Renew Shampoo, Restore Leave-In Conditioner and Rejuvabeads); (3) Monat Black System (Monat Black Cream Shave, Monat Black Shampoo+ Conditioner, Monat Black Groom Styling Clay and Black Aftershave+Moisturizer); (4) Densify Duo System (includes Intense Repair Shampoo and Treatment);  (5) Effortless Style System (includes Smoothing Shampoo, Smoothing Deep Conditioner and Blow Out Cream); (6) Hydration System (includes Renew Shampoo, Restore Leave-In Conditioner and Replenish Masque); (7) Volume System (includes Revitalize Conditioner, Revive Shampoo and Reshape Root Lifter); and (8) Stylized (Refinish Control

Hairspray, Tousled Texturizing Mist and Restyle Instant Sculpting Taffy).  In addition to those systems, Monat sells Rejuveniqe Oil, Rejuvabeads and some individual products that may be purchased separately.

30.     According to Monat's website, each of those eight treatment systems include the same four "Key Ingredients:"

- PROCATALINE™

- REJUVENIQE®

- CAPIXYL™

- CRODASORB™

31.     Each of these "Key Ingredients" is a proprietary mix of several ingredients not listed with specificity on the label. While Rejuveniqe® is a blend of oils specifically proprietary to Defendants, the other three Key Ingredients are proprietary to other companies such as Capixyl™ which is described by its chemical manufacturer International Flavors and Fragrances as a hair fertilizer.

32.     All Plaintiffs and members of the proposed Classes who purchased and used Monat Products were exposed to the same four Key Ingredients regardless of which treatment system they used.

33.     Each Monat Product in each system alleged herein was used by at least one Plaintiff in this matter.

**III.**   **Plaintiffs**

34.     Unless otherwise indicated, all Plaintiffs identified below purchased or used Monat Products for personal, family, and household purposes.  All Plaintiffs identified below and the proposed Classes were harmed and suffered actual damages.

35.     During the relevant period, Plaintiffs were exposed to and saw Monat's deceptive marketing claims that the Products were FDA approved, safe, non-toxic, suitable for all hair types, and clinically proven to strengthen hair, prevent hair from aging and promote hair growth.  These advertisements failed to disclose the health and safety risk of hair thinning, hair breakage,  hair loss and scalp irritation.

36.     Based on these deceptive, misleading and, in some cases, objectively false marketing clams, Plaintiffs and putative class members purchased and paid inflated prices for Monat Products.  Monat Products in fact cause significant hair loss, hair breakage, scalp sores, infection, and severe skin reactions.  Had Defendants disclosed the risks associated with the Products, Plaintiffs would have been aware of these risks and would not have purchased Monat Products, or would not have paid the price they paid for the Products.  In the future, if Defendants were to disclose these risks, Plaintiffs and other consumers would be in a position to make an informed decision as to whether to purchase Monat Products at the prices offered.

37.     Plaintiffs and the proposed Classes did not receive the benefit of their bargain.  Rather, they purchased Monat Products that are of a lesser standard, grade, and quality than represented, with undisclosed health and safety risks or a lack warning of the same.  Plaintiffs and the proposed Classes did not receive hair care Products that met ordinary and reasonable consumer expectations regarding safety and efficacy.

38.     For ease of reference, the following chart identifies and organizes the individual and representative Plaintiffs by the state in which they purchased or used Monat Products:

| Class Representative | State |
| --- | --- |
| Don Winter | Alaska |
| Jennifer Colvin | Arizona |
| Dana Sohovich | California |

| Class Representative | State |
|---|---|
| Kelley Botallico | California |
| Emily Yanes de Flores | California |
| Trisha Whitmire | Florida |
| Jennifer Shaw | Illinois |
| Deborah McWhortor | Iowa |
| Andrew McWhortor | Iowa |
| Sue Hoffpauir | Louisiana |
| Julie Klinger-Luht | Maryland |
| Donna Stefforia | Michigan |
| Jessica Row | Minnesota |
| Jessica Slover-Dorsey | Missouri |
| Tanya D'Alessandro | New York |
| Heather Maur | Ohio |
| Amber Alabaster | Oklahoma |
| Elizabeth Johnston | Texas |

39.    The Plaintiffs collectively used each of the Monat hair care systems and Products identified above and each was exposed to the four "Key Ingredients."

40.    Each Monat Product in each Treatment System was used by a Plaintiff in this matter.  Each of the following products were used by one or more Plaintiffs in this matter:  Air Dry Cream, Black Aftershave + Moisturizer, Black Cream Shave, Black Groom Styling Clay, Black Shampoo+ Conditioner, Blow Out Cream, Clarifying Shampoo, Curl Cream, Dry Shampoo, Eyelash Serum, Intense Repair Conditioner, Intense Repair Shampoo, Intense Repair Treatment, Junior Gentle Detangler, Junior Gentle Shampoo, Moxie Magnifying Mousse, OFY Super Moisture Masque, Only for You Curl Cream, Refinish Control Hairspray, Restyle Instant Sculpting Taffy, Rejuvabeads, Rejuveniqe Oil Intensive, Renew Shampoo, Replenish Masque, Reshape Root Lifter, Restore Conditioner, Restore Leave-In Conditioner, Revitalize Conditioner,

11

Revive Shampoo, S3 Supplement Support System, Smoothing Deep Conditioner, Smoothing Shampoo, Super Moisture Mask, The Champ Conditioning Dry Shampoo, Thickening Spray, and Tousled Texturizing Mist.

Don Winter – Alaska

41.     Plaintiff Don Winter resides in Wasilla, Alaska. On November 17, 2017, January 25, 2018, February 4, 2018, February 26, 2018 and March 4, 2018, he purchased Monat Products. He began experiencing effects within four months of usage and had to seek the assistance of his hairdresser and an esthetician for the injuries he sustained. Mr. Winter stopped using the Products on May 7, 2018. Mr. Winter suffered economic loss and personal injury as a result of the defective Monat Products.

A.   Jennifer Colvin – Arizona

42.     Plaintiff Jennifer Colvin resides in Chandler, Arizona.  On July 19, 2018, she purchased Monat Products.  Ms. Colvin purchased these Products online and began using them on July 25, 2018.  Ms. Colvin began experiencing side effects within a month of using Monat Products, and had to seek medical treatment for the injuries she sustained.  Ms. Colvin suffered economic loss and personal injury as a result of the defective Monat Products.

C.   Dana Sohovich, Kelley Botallico, Emily Yanes de Flores - California

43.     Plaintiff Dana Sohovich resides in San Diego, California.  On September 17, 2017 and October 9, 2017, she purchased Monat Products.  Ms. Sohovich began experiencing effects within one and half to two months after usage, and had to seek medical treatment for the injuries she sustained.  Ms. Sohovich suffered economic loss and personal injury as a result of the defective Monat Products.

44.     Plaintiff Kelley Botallico resides in San Diego, California.  In February 2018, she purchased Monat Products.  Ms. Botallico began experiencing effects within one and half to two months after usage, and had to seek medical treatment for the injuries she sustained.  Ms. Botallico suffered economic loss and personal injury as a result of the defective Monat Products.

45.     Plaintiff Emily Yanes de Flores resides in Alhambra, California.  On August 18, 2017, November 15, 2017 and January 4, 2018, she purchased Monat Products.  Ms. Flores began experiencing effects within four to six months after usage, and had to seek assistance from her hair stylist for the hair loss she sustained.  Ms. Flores suffered economic loss and personal injury as a result of the defective Monat Products.

D.     Trisha Whitmire - Florida

46.      Plaintiff Trisha Whitmire resides in Oviedo, Florida. On January 19, 2017, January 24, 2017, March 26, 2017, April 3, 2017, June 11, 2017 and October 5, 2017 she purchased Monat Products.  Ms. Whitmire began experiencing effects within six months after usage, and had to seek medical treatment for the injuries she sustained.   Ms. Whitmire suffered economic loss and personal injury as a result of the defective Monat Products.

E.     Jennifer Shaw - Illinois

47.      Plaintiff Jennifer Shaw resides in Dixon, Illinois.  On March 29, 2017, June 9, 2017, and August 9, 2017, she purchased Monat Products.  She began experiencing effects within three weeks of usage.  Ms. Shaw stopped using the Products September 1, 2017.  Ms. Shaw suffered economic loss and personal injury as a result of the defective Monat Products.

F.     Deborah and Andrew McWhortor - Iowa

48.      Plaintiffs Deborah McWhorter and Andrew McWhortor reside in Fort Madison, Iowa. On July 14, 2017 and October 14, 2017, Mrs. McWhortor purchased Monat Products for

both her and her husband's use.  Mr. and Mrs. McWhortor began experiencing effects within several months after usage, and Mr. McWhortor had to seek medical treatment for the injuries he sustained.  Mr. and Mrs. McWhortor suffered economic loss and personal injury as a result of the defective Monat Products.

G.      Sue Hoffpauir - Louisiana

49.      Plaintiff Sue Hoffpauir resides in Louisiana.  In May, 2017, she purchased Monat Products. She began experiencing effects within several months after usage.  Ms. Hoffpauir stopped using the Products in February, 2018.  Ms. Hoffpauir suffered economic loss and personal injury as a result of the defective Monat Products.

H.      Julie Klinger-Luht - Maryland

50.      Plaintiff Julie Klinger-Luht resides in Baltimore, Maryland. In December, 2016, she received Monat Products and began using them in January, 2017.  She began experiencing effects within several months of usage and had to seek medical assistance for the injuries she sustained. Ms. Klinger-Luht stopped using the Products on January 18, 2018. Ms. Klinger-Luht suffered economic loss and personal injury as a result of the defective Monat Products.

I.      Donna Stefforia - Michigan

51.      Plaintiff Donna Stefforia resides in Marysville, Michigan. In October, 2017, and again in December, 2017, she purchased Monat Products.  She began experiencing effects within two months after usage and had to seek assistance from her hair stylist for the hair loss she suffered. Ms. Stefforia stopped using the Products in early 2018.  Ms. Stefforia suffered economic loss and personal injury as a result of the defective Monat Products.

J.      Jessica Row - Minnesota

52.     Plaintiff Jessica Row resides in Circle Pines, Minnesota. On November 18, 2017 and December 25, 2017, she purchased Monat Products.  She began experiencing effects within days after usage and had to seek medical assistance for the problems she suffered. Ms. Row stopped using the Products in January, 2018. Ms. Row suffered economic loss and personal injury as a result of the defective Monat Products.

K.      Jessica Slover-Dorsey - Missouri

53.      Plaintiff Jessica Slover-Dorsey resides in Kansas City, Missouri. On December 2, 2017, she purchased Monat Products.  She began experiencing effects within the first month of usage and had to seek the assistance of her hairdresser for the injuries she sustained. Ms. Slover-Dorsey stopped using the Products before June 29, 2018. Ms. Slover-Dorsey suffered economic loss and personal injury as a result of the defective Monat Products.

L.      Tanya D'Alessandro – New York

54.      Plaintiff Tanya D'Alessandro resides in Marlboro, New York. In September, 2017, she purchased Monat Products.  She began experiencing effects within one month of usage and had to seek the assistance of her hairdresser for the problems she suffered. Ms. D'Alessandro stopped using the Products in November, 2017. Ms. D'Alessandro suffered economic loss and personal injury as a result of the defective Monat Products.

M.      Heather Maur - Ohio

55.     Plaintiff Heather Maur resides in Reynoldsburg, Ohio. On February 2, 2017, she purchased Monat Products and continued to purchase them over the next year.  She began experiencing effects within six months after usage.  Ms. Maur stopped using the Products in

February, 2018.  Ms. Maur suffered economic loss and personal injury as a result of the defective Monat Products.

N.      Amber Alabaster - Oklahoma

56.      Plaintiff Amber Alabaster resides in Oklahoma City, Oklahoma. On August 8, 2017 and September 8, 2017, she purchased Monat Products.  She began experiencing effects within three weeks after usage and had to seek medical assistance for the effects she suffered. Ms. Alabaster stopped using the Products October 12, 2017.  Ms. Alabaster suffered economic loss and personal injury as a result of the defective Monat Products.

O.      Elizabeth Johnston - Texas

57.      Plaintiff Elizabeth Johnston resides in Manvel, Texas. On March 25, 2017 and continuing through 2018, she purchased Monat Products.  After experiencing side effects in connection with her use of the Products, she had to seek medical assistance for the problems she suffered.  Ms. Johnston stopped using the Products in April, 2018.  Ms. Johnston suffered economic loss and personal injury as a result of the defective Monat Products.

**COMMON FACTUAL ALLEGATIONS**

I.      **Defendants Misleadingly Market Monat Products As FDA Approved, Curative for Certain Health Problems, Safe, Non-Toxic, Suitable For All Hair and Clinically Proven To Promote Hair Growth.**

58.      Defendants' central marketing theme surrounds the curative health benefits of Monat Products and that these Products are safe and "FDA-approved."  According to Defendants, Monat Products are "clinically tested and proven" and guaranteed to grow hair and to prevent aging—like a prescription and to treat a medical condition such as alopecia and psoriasis.  In emphasizing these health benefits from the use of their Products, Defendants further tout that Monat Products are "safe," non-toxic, "high-quality," "naturally based," "pure and sustainable"

16

and suitable for all hair and skin types.  Defendants have used product labelling and packaging, the web, print, and live media advertising and messaging to promote these Product claims.

59.     So well-crafted is Defendants' misleading branding campaign that even Monat's name was strategically chosen to promote the idea that Defendants' Products are a natural and safe means of growing and strengthening hair and preventing aging.  As a Senior Director of Marketing explained in an interview, "Monat" is a compound name derived from the words Modern and Nature.   "[Monat] is modern nature. . . and [its] products are naturally based,"[3] he boasted.

60.     In promotional videos published to the public in July 2014 by the Defendants as they prepared to launch Monat,[4] Defendants continued to falsely promote the idea that Monat Products are "powerfully natural" by stating, among other things:

> Nature has given us life; technology has given us the opportunity to thrive; there is a beautiful connection that exists between nature, science, ourselves; we are nature; this perfect balance allows us to discover and create products that are unique and powerfully natural; we use only the finest ingredients from all over the world.

> Nature has given us life; technology has given us an opportunity to maximize our natural resources; we are nature; this is the perfect balance that allows us to create products that are advanced and unique; thanks to the power of nature we are known for using only the best ingredients from different parts of the world.

61.     In another ad, Defendants proclaim:

> Naturally based products, without harmful chemicals; products for all types of people, women, men and even children; products backed by science, not hype; products that work.  . . . Our name, MONAT, which stands for modern nature.  . . . Every product is tested, proven, safe, and recommended by leading dermatologists,

---

[3]     https://www.directsellingnews.com/monat-modern-nature-finds-natural-fit-in-direct-selling/; http://www.marketwired.com/press-release/the-alcora-group-launches-monatr-global-1951697.htm (last visited Sept. 23, 2018).

[4] https://vimeo.com/100248113; https://vimeo.com/100829517 (published in English and Spanish) (last viewed Sept. 29, 2018).

and doctors alike. . . . Monat is a world-class company, with cutting edge products, manufacturing, and a proven track record . . . .[5]

62.     In fact, when Monat first launched in 2014, it hosted an online meeting on August 18, 2014 with Defendants' officers, including, but not limited to, the Vice President of Marketing, Chairman and CEO (Luis and Rayner Urdaneta), and President (Stuart MacMillan), to recruit sales agents. From the outset of this conference, Defendants proclaimed the curative benefits of their Products, including statements that Monat Products are FDA approved and clinically tested, proven and guaranteed to prevent aging and to grow and strengthen hair.[6]

63.     This is by no means a unique occurrence; Monat's website is replete with representations about the safety and efficacy of Monat Products. For instance, one webpage states:

> MONAT's ingredients are naturally-based, safe, pure and sustainable. But with other brands recognizing the power of botanical oils, how is MONAT any different? The answer lies in our rich formulations that make these naturally-based ingredients work in harmony with each other, combining and reacting to pump up their natural properties to take MONAT to the next level.[7]

64.     Monat Products, the website continues, are clinically proven to promote natural hair growth, combat thinning, and are compatible with all skin and hair types:

> **REJUVENIQE™ Oil Intensive** is MONAT's invigorating proprietary blend of 13+ unique molecular ingredients, which includes vitamins, minerals, antioxidants, beta-carotene, omega-6 fatty acids, nutrients and amino acids, suitable for all skin and hair types. These ingredients have been proven to mimic the body's own natural oils to reduce hair thinning, prevent oxidative stress, and add volume and shine. REJUVENIQE's special properties energize and rehabilitate the scalp to visibly repair hair with instant and long-term Age Prevention benefits. **Capixyl™** powered with Red Clover Extract, a gentle emollient that hydrates the scalp to stimulate natural, noticeable hair growth. *Benefits:* Outstanding clinical results prove significant decrease in hair loss effect and

---

[5] https://business.facebook.com/pg/monatofficial/videos/?ref=page_internal (last viewed Sept. 29, 2018).

[6] https://soundcloud.com/monat-global/monat-conference-call-1 (last visited Sept. 25, 2018).

[7] https://monatglobal.com/the-science-of-monat/ (last visited Sept. 23, 2018).

increase in hair regrowth.  Higher proven results than the other leading hair rejuvenation brands.[8]

65.    In one diagram, Defendants supposedly illustrate how the Products' efficacy is

achieved[9]:



66.    Defendants claim that Monat Products offer effective solutions to various health

issues, including representations that Monat Products "reduce[] hair thinning and prevent oxidative

stress and adds incredible volume, repairing the hair . . . without the damaging effects of silicone"

and that the Products "provide[] a holistic hair regrowth treatment that works to promote enhanced

hair regrowth treatment that works to promote enhanced hair growth from the inside out."[10]

67.    "You'll notice a reduction in hair thinning due to increased follicle strength; that's

collagen at work, folks!  Best of all - it's safe for extensions and processed hair," another page

---

[8] https://monatglobal.com/science-of-monat/ (last visited Sept. 29, 2018).

[9] https://monatglobal.com/science-of-monat/ (last visited Sept. 29, 2018).

[10] https://monatglobal.com/slide/ (last visited Sept. 26, 2018); https://monatglobal.com/s3-by-monat/ (last visited Sept. 26, 2018).

prominently notes.[11]

68.     Advertisement after advertisement, unsuspecting consumers are sold on the safety

and health benefits of Monat Products, including the following representations:

- "MONAT attracts people for numerous reasons, but one that can't be overlooked is quality.  Formulated with powerful active botanicals our products are designed to work together to give consumers their best hair day ever.  Whether you're looking to bring an end to thinning hair or turn frizzy, fried strands into smooth, supple locks - MONAT has the solution you are looking for."[12]

- "Our products are vegan."[13]

- "NO Glutens - can cause allergic reactions to sensitive individuals."[14]

- "Delivers body; Promotes natural hair growth & reduces hair thinning."[15]

- "Our clinically proven ingredients also provide added protection from sun exposure and help to support the natural regrowth of your hair.  When your hair is looking and feeling this great, you might even find yourself hitting the snooze button one less time because you know that means nine more minutes of compliments."[16]

- "To grow, first you must repair.  Our Intense Repair shampoo offers an intense clean you'll feel.  Formulated with an invigorating blend of rosemary oil and mint, it'll perk you up and provide the clean slate you need for regrowth."[17]

---

[11] https://monatglobal.com/renew-shampoo/ (last visited Sept. 26, 2018).

[12] https://monatglobal.com/what-makes-us-different/ (last visited Sept. 26, 2018).

[13] https://monatglobal.com/effortless-style-system/ (last visited Sept. 26, 2018).

[14] This statement is no longer visible on Monat's website but, on information, was advertised at least as late as September 11, 2018, and possibly later.  Defendants now acknowledge that their Products may in fact not be gluten-free (see link at note 24 below).

[15] https://monatglobal.com/revive-shampoo/ (last visited Sept. 26, 2018).

[16] https://monatglobal.com/irt-shampoo/ (last visited Sept. 26, 2018).

[17] https://monatglobal.com/irt-shampoo/ (last visited Sept. 26, 2018).

- ▪ "Soothes & stimulates the scalp; Promotes hair growth."[18]

- ▪ "An intense, daily leave-in treatment for thinning hair that helps stimulate the scalp and boost the natural growth of thicker and fuller-looking hair. Its high intense blend of Red Clover Flower Extract, essential vitamins and active nutrients helps counteract the formation of DHT factors that may contribute to hair thinning."[19]

- ▪ "A blend of Red Clover Flower Extract, essential vitamins, and active nutrients help counteract the formation of DHT among other factors associated with thinning hair."[20]

- ▪ "Why S3?  MONAT has raised the bar in hair nutrition with the supreme proprietary blend of S3. Each of the clinically proven ingredients work together synergistically to replenish the system of possible nutrient deficiencies that could be contributing to hair loss. S3 provides a holistic hair regrowth treatment that works to promote enhanced hair growth from the inside out."[21]

- ▪ "A complete 2-in-1 system that cleanses and conditions while maintaining essential moisture balance for youthful, healthy hair. Penetrates and nurtures the scalp while helping boost natural hair growth and improving follicle strength to reduce hair thinning."[22]

69.      Defendants distinguish Monat Products from competitor products by alluding to the supposed purity of ingredients in Monat Products. On its website, Monat disavows the use of toxic ingredients and harmful chemicals in Monat Products.  In their own words, "Our revolutionary line of naturally based solutions addresses the effects of environmental pollution, harsh chemicals, product overuse and even aging. And we do it all while saying no to questionable

---

[18] https://monatglobal.com/intense-repair-treatment-conditioner/ (last visited Sept. 26, 2018).

[19] https://monatglobal.com/intense-repair-treatment-2/ (last visited Sept. 26, 2018).

[20] https://monatglobal.com/intense-repair-treatment-2/ (last visited Sept. 26, 2018).

[21] https://monatglobal.com/s3-by-monat/ (last visited Sept. 26, 2018).

[22]  https://monatglobal.com/monat-black-shampoo-conditioner/ (last visited Sept. 26, 2018).

ingredients and animal testing!"[23]

70.    Defendants even provide a list "of what you won't – and will never find in any

MONAT product":

> MONAT products do NOT contain:
>
> - *NO Parabens*
> - *NO Sulfates*
> - *NO Cyclic Silicones*
> - *NO BHT*
> - *NO DEA/MEA*
> - *NO Polyethylene Glycol*
> - *NO Phthalates*
> - *NO Phenoxyethanol*
> - *NO Petrolatum, Mineral Oil, or Paraffin Wax*
> - *NO Triclosan*
> - *NO Plastic Microbeads*
> - *NO Formaldehyde Releasers*
> - *NO Gluten -* We do not add gluten to our formulas and to the best of our knowledge there is no gluten in any of MONAT's ingredients.
> - *NO Harmful Colors -* We use safe colorants approved by the FDA, Health Canada and the European Commission.
> - *NO Harmful Fragrances -* We use fragrances with ingredients approved as safe by the Research Institute for the Fragrance Material (RIFM) and the International Fragrance Association (IFRA). RIFM is the scientific authority for the safe use of fragrance materials.[24]

71.    This message is repeated on other web pages[25]:



---

[23] https://monatglobal.com/ca/be-part-of-something-special/ (last viewed Sept. 29, 2018).

[24] https://monatglobal.com/the-science-of-monat/ (last visited Sept. 23, 2018).

[25] https://monatglobal.com/monat-junior-line/ (last viewed Sept. 29, 2018).

- Polyethylene Glycol
- Phthalates
- Phenoxyethanol
- Petrolatum
- Mineral Oil
- Paraffin Wax
- Triclosan
- Plastic Microbeads
- Formaldehyde Releasers
- Harmful Colors
- Harmful Fragrances

72.     Company executives play a crucial role in promoting these unsubstantiated claims that Monat Products are curative, safe, natural, high-quality, and clinically proven anti-aging Products.  For instance, in an interview, Monat's Senior VP of Research and Development expressed that, "Through extensive clinical research [Monat has] combined ultra-progressive active botanical ingredients with state-of-the-art scientific technologies to create safe, high-quality, naturally based, age-prevention products."[26]

73.     Without qualification, Luis Urdaneta, the Chairman of Monat and B&R and Founder and Director of Alcora, explained to the press that, "As a company and as a family that honors integrity, we feel it is our responsibility to offer products that meet only the highest quality standards and are made only with safe ingredients."[27]

74.     In a video published to the web on August 13, 2014, promoting the launch of Monat, the Chairman further explained that, "We have worked in our lab with our chemists to introduce a high-quality product in the U.S."[28]

---

[26] https://finance.yahoo.com/news/alcora-group-launches-monat-r-205832904.html.

[27] *Id.*

[28] https://www.youtube.com/watch?v=P_4flO-PsKM (last viewed Sept. 29, 2018).

75.     In another video published on January 2, 2015, the Chairman and Monat's CEO, (Rayner Urdaneta, also an officer of both co-Defendants), President (Stuart MacMillan), Chief of Staff (Javier Urdaneta) and other employees celebrate Monat and the supposed guaranteed high quality and safety of the Products, *inter alia*, describing Monat's standards and Products as:

> "To support the products, made in America, which are backed by scientific studies and manufactured in their own manufacturing plant; thus, guaranteeing the supervision of the entire production; ensuring that they meet the highest quality standards."

> "To represent the most advanced and highest quality hair and skin care products in the market, with the assurance that they are made with natural, active, safe, healthy and sustainable ingredients."[29]

76.     Then, on October 3, 2016, Defendants published through Monat's official Facebook account a Q&A session with Monat's Scientific Advisory Board.[30]  This video features Scientific Advisory Board members Dr. Amy Ross (Dermatologist), Dr. Brent Agin (Anti-Aging Physician and Author), and Dr. Jamie Ross (Senior Vice President of Technical Services and Head of R&D for Monat and Senior Vice President for B&R).  Also featured are Monat's President (MacMillan) and Manager of Product Marketing and Education (Cynthia Todd).

77.     During the Q&A, Defendants, at great lengths, mislead consumers to believe that Monat Products are natural as well as curative and medicinal, indicating, for example, that the Products are "nutritional" (e.g., containing vitamins such as B1, B2, B3, B5, B6, B7, B9, B12), "great antioxidant[s] and daily supplement[s]," and effective for the skin as they are for hair.  They also try to normalize adverse reactions consumers have experienced, referring to these reactions

---

[29] https://www.youtube.com/watch?v=0ofN2VL7-jA  (Spanish language promotional video.  Last viewed on Sept. 29, 2018).

[30] https://business.facebook.com/monatofficial/videos/1806770826202193/ (last viewed Sept. 29, 2018).

here as "a sort of transition period when people start to use our Product" (and elsewhere as the

"detox" period).  A brief excerpt of the discussion is below:

> Stuart MacMillan:  Okay, we talked actually, the three of you [i.e., members of he Scientific Board] in particular were talking this morning a lot.  We hear about a sort of transition period when people start to use our Product.  What can you owe that to, Dr. Ross, Dr. Agin?  What can you owe that transition to?

> Dr. Amy Ross:  I think that any time you change a regimen that you use with hair or skin, you can expect to notice a difference.  It might be that you are paying a little bit more attention to what you are feeling with your hair, but it might actually be a difference in the Products that you are using.  So, if you change from a Product that perhaps had more preservatives or wasn't as naturally-based as the Monat Products are, you might notice a transition in your hair.  So, I think, really, we recommend that as you transition with the shampoo and conditioner and the Products, that you incorporate the supplement into the, the S3 supplement, that Brent can speak to, a little bit more to, that can cut down our anti-inflammatory performance to that; so if there is some transition that your scalp or hair is undergoing that S3 really will be instrumental in helping ease that transition to the new Products.  . . .

> Stuart MacMillan:  Excellent.  So Brent, tell us about S3?  What differentiates it?  Some people have heard this already, but there's a lot of people on here who haven't.  What is the difference between S3 and some of the other nutritional supplements that are out there right now? And, you see a lot of them.  So. . . .

> Dr. Brent Agin:  Yeah, I think, I think the best thing about it, is that it does compliment the Monat Products that everyone is already accustomed to using.  Ummm, we talk a lot about, previously, about how we have we really have to treat the inside of the body as well as cosmetically on the outside and this Product takes away some of the guess work.  I mean, it is loaded with nutrients., but it is also a great antioxidant and daily supplement that you can take for your hair, skin and nails, but like I said, it also complements hair and takes away some of the guess work of some of the things happening inside the body that can relate to hair loss and more healthy hair.  We have all the B vitamins in it: B1, B2, B3, B5, B6, B7, B9, B12.  Ummm, but it is a great antioxidant and it also has the three proprietary blends that I mean really makes it that great of a product.  It has the ACTIVAloe the optiMSM, and EVNol and those are three researched ingredients and I mean, I think that is what really makes it stand out completely to other products, but when you are looking for something, just as a daily vitamin that compliments hair.  Ummm, and you have three researched proprietary blends, it is just, it really is an outstanding Product. . . .

> Stuart MacMillan:  It should be in your resource library, if you are looking for that [i.e., a webinar by the Defendants that discussed ACTIVAloe the optiMSM, and

EVNol].  You did mention skin and, you know, we are a hair care company, but you know our Products, ummm, like Rejuveniqe is used more and more on skin. Umm, Dr. Ross, I ask you, why would someone want something like Rejuveniqe? Is it safe for their skin?  Why would they want it on their skin?  Umm, tell us a little about that.

Dr. Amy Ross:  So, it sounds like a lot of people do want it on their skin.  So, it is a Product that is composed of natural oils and as we age our skin oils diminish, so we think the Rejuveniqe is a nice compliment to your skin care regimen.  I think for any skin care Product, we always recommend, you kind of want to be cautious when you first apply it.  So, it can absolutely replenish some of the oils that we lose as we get older, but you want to test it first.  So, particularly when you use Products on your face.  So, take a little test spot, check behind your ears, see if it causes any irritation, but it really can be a nice compliment to your skin care regimen and replenish a lot of those oils that we lose as we get older. . . .

Stuart MacMillan:  Oh, great.  You know, it is interesting that while you are talking it is one of the things that excites me and excites our distributors, our market partners about this company.   And that is, you know we own our own manufacturing plant.  We have the opportunity not only to control, umm, what goes into our Products, but we have the opportunity to continually, I love what you said, and I'm going to use it on a marketing basis.   . . . Umm, I'm super proud of the fact that we went to great lengths to find two ingredients . . .[that] are good.  And the two, I'm talking about in particular are the sugar cane alcohol and the rice starch.  Maybe talk to us a little about those two Products, our ingredients and why you put them in there.

Jamie Ross:  Well, there again the sugar cane alcohol is first and foremost plant-based and, it is green.  It comes from renewable resources.  So, it is recyclable and umm, it is GMO free, there's no corn, gluten, no wheat gluten.  So, it fit perfectly with the kind of Monat aesthetic we had from day one.  And, the rice starch, the most important thing about it, is that there's a very small particle size, but more importantly, the particle size distribution is so small.  So, it gives better coverage and also important, it helps to prevent the clog you sometimes see in dry shampoos around the market.  So, the first thing is the particle size, the particle size distribution, which again helps with the application, it helps with giving out a fine pattern on the hair.  Umm, so again, it fits perfectly with the naturally-based concept.  It fits perfectly with the philosophy.

78.     In a marketing video published during National Hair Loss Awareness Month 2017,

Scientific Advisory Board member, Dr. Amy Ross, continued to promote these misleading

characterizations of the Products.[31]  She explained that:

> So, the Monat idea is to produce Products that can give you the results that you want, but do it in a natural way.  So, they incorporate anti-oxidants, which are good for your hair.  So, essentially you can use the Products, achieve the treatment results that you want or the look that you want, but you are still adding things to your scalp that are healthy.  . . . Again, as we age, we lose the ability to produce oil in our scalp.  So, Rejuveniqe replaces that oil naturally as well as moisturizes the scalp. So, what I really like about Rejuveniqe Oil compared to all the other oils that are available in the market, is they are natural oils.  They are free from chemicals and are able to replace the oil that we tend to lose as we age.  Replace the oil in our scalp for moisture and in our hair follicle as well.

79.    Summarized by Monat's President, Monat Products allegedly give consumers "the opportunity to buy a much better Product [i.e., compared to competitor Products].  One that is healthier and better for them."[32]

80.    Misleading messages of safety, efficacy, and high-quality were disseminated to the public by Alcora before Monat Products even hit the market.  In one press release, which was picked up by different media outlets, Alcora explained in pertinent part:

**The Alcora Group Launches MONAT® Global**

MIAMI, FL--(Marketwired - September 29, 2014) - Mr. Luis Urdaneta, Chairman of the Board of the ALCORA Group is delighted, after much anticipation, to announce the launch of brand new Direct Selling Company, MONAT Global. . . .

MONAT Global is the newest organization for, and a wholly owned subsidiary of, Alcora Corp. . . .

The Products

"Through extensive clinical research we have combined ultra-progressive active botanical ingredients with state-of-the-art scientific technologies to create *safe, high-quality, naturally based, age-prevention products*", says Jamie Ross, Senior VP of Research and Development of MONAT Global. This was precisely the inspiration behind the compound name MONAT, derived from the words Modern and Nature.

---

[31] https://business.facebook.com/monatofficial/videos/1953576778188263/ (published Aug. 22, 2017, and last visited Sept. 29, 2018).

[32] https://vimeo.com/101358304 (last viewed Sept. 29, 2018).

"As a company and as a family that honors integrity, we feel *it is our responsibility to offer products that meet only the highest quality standards and are made only with safe ingredients*", stated Mr. Urdaneta. . . .

MONAT holds its own signature formula, Rejuveniqe™ Oil Intensive. . . . This carefully crafted collaboration of science and nature allows MONAT to offer an unparalleled and unique age prevention hair and skin care experience, providing vitamins, minerals, antioxidants, beta-carotene, omega 3 fatty acids, nutrients, and amino acids.

All products from the three MONAT Treatment Systems -Balance, Volume, and Men's 2+1- are infused with Rejuveniqe™ and key ingredients Capixyl™ (Red Clover Extract), Procataline™ (Pea Extact), and Crodasorb™ (a UV absorber). *Guaranteed to deliver "Longer, Fuller, Stronger, Younger-Looking Hair in Just 90 Days"*.[33] Emphasis supplied.

81.     In a video on Alcora's website, titled, "WE ARE MODERN NATURE," the speaker can be heard saying, "At Monat we provide all the best that nature has to offer in our exceptional, naturally-based haircare Products."[34]

82.     Moreover, Alcora also touts high quality standards as its philosophy, explaining that it "only selects the best natural ingredients from all over the planet to formulate high-quality products that focus on the overall wellbeing of our consumers."[35]

83.     As Alcora and its officers' statements demonstrate, they do not operate Defendants as separate entities.  Instead, the Urdaneta family, as well as other officers, serve in overlapping top-level positions at Alcora, Monat and B&R, including but not limited to Luis,

---

[33]        http://www.marketwired.com/press-release/the-alcora-group-launches-monatr-global-1951697.htm (last visited Sept. 23, 2018); https://finance.yahoo.com/news/alcora-group-launches-monat-r-205832904.html (last visited Sept. 23, 2018); https://monatglobal.com/algora/ (last visited Oct. 1, 2018).

[34] https://www.alcoracorp.com/monat (last visited Sept. 26, 2018).

[35] https://www.alcoracorp.com/new-page/ (last visited Sept. 26, 2018).

Rayner, Javier and Francisco Urdaneta, Jamie Ross, Marjorie Munoz, and Thomas Hoolihan.[36]

84.     Upon information and belief, Monat Products made at B&R and each of the aforementioned manufacturing and marketing actions and/or decisions were made and effectuated in Miami-Dade County, Florida.  As alleged below, the foregoing representations are unsupported, false and/or misleading.

## II.     Defendants Use Sales and Marketing Channels To Spread Misrepresentations About Monat Products.

85.     In addition to direct marketing, Defendants propagate their misleading messages through their sales agents, called "Market Partners."

86.     According to Alcora's Founder and Director, Luis Urdaneta, "MONAT is the fulfillment of a lifelong dream to create an unparalleled business opportunity that would give both seasoned business professionals and young aspiring entrepreneurs a vehicle to achieve financial freedom and ongoing professional and personal growth."[37]  Alcora's press release further states that Monat "provides ground-breaking opportunities through a novel Social Marketing approach to Direct Sales."[38]

87.     Monat has no brick-and-mortar store and does not sell its Products in traditional stores such as Walmart or Target.  Instead, it sells Monat Products using a direct sales model through its network of Market Partners that market and distribute Monat Products utilizing standard terms and language directly obtained from Defendants' Miami-Dade County, Florida,

---

[36] https://monatglobal.com/history/ (last visited Sept. 23, 2018).  Florida corporation records and Defendants' websites reveal Luis and Rayner Urdaneta as Directors and Officers of each of Defendants; Thomas Hoolihan as Director, Senior Vice President and Chief Legal Officer of each of Defendants; and Jamie Ross as Senior Vice President and Head of R&D at B&R and Monat.
[37] https://monatglobal.com/tag/empowering/ (last visited Sept. 27, 2018).

[38] https://monatglobal.com/tag/empowering/ (last visited Sept. 27, 2018).

offices.     Products     may     also     be     ordered     through     Monat's     website     at

https://corp.mymonat.com/shop/.

88.     A typical Market Partner offers potential customers several options for

purchasing Monat Products.  The most expensive option is for the customer to pay a "retail" price,

an option that the Market Partner is likely to discourage because it means less commission for the

Market Partner.  A second option is for the customer to join a "VIP program," which provides the

customer with certain benefits, such as coupon discounts or free shipping.  Customers who select

this option are typically required to pay some type of enrollment fee, but receive additional

discounts on Monat Products if they recruit a certain number of friends who agree to become VIP

customers as well.  The third purchase option is for the potential customer to become a full-fledged

Marketing Partner like the person who is procuring the sale.  Customers, who select this option,

typically pay a higher fee and are given greater discounts on future purchases.  These customers

are provided with sample Product, and are typically paid a commission based on the sales they

make to others.

89.     Companies that utilize this type of sales structure are sometimes referred to as

"multi-level marketers" or "MLMs."  In January, 2018, the Federal Trade Commission issued a

document of non-binding guidance entitled "Business Guidance Concerning Multi-Level

Marketing."[39]  In this document, the FTC described the prototype MLM structure by explaining

that "[g]enerally, a multi-level marketer (MLM) distributes products or services through a network

of salespeople who are not employees of the company and do not receive a salary or wage."

Moreover, an MLM typically "does not directly recruit its salesforce, but relies upon its existing

---

[39]     https://www.ftc.gov/tips-advice/business-center/guidance/business-guidance-concerning-multi-level-marketing (last visited Sept. 24, 2018).

salespeople to recruit additional salespeople, which creates multiple levels of "distributors" or "participants" organized in "downlines."   In its guidance, the FTC states that "[a]n MLM compensation structure that incentivizes participants to buy product and to recruit additional participants to buy product . . . poses particular risks of injury" because "a substantial percentage of participants will lose money."

90.      With respect to Monat's Market Partners in its MLM structure, Defendants instituted policies to govern and control where and how these sales agents advertise Monat Products, which are part of the agreements between Defendants and their Market Partners (the "Market Partner Agreement").

91.      Under the Market Partner Agreement, Market Partners must only use marketing materials and content provided by Monat:

> To promote both the products and tremendous opportunity MONAT offers, ***Market Partners must use the sales aids and support materials produced by MONAT***. The rationale behind this requirement is simple. MONAT has carefully designed its products, product labels, Compensation Plan, and promotional materials to ensure that each aspect of MONAT is fair, truthful, substantiated, and complies with the vast and complex legal requirements of federal and state laws. If MONAT Market Partners were allowed to develop their own sales aids and promotional materials, notwithstanding their integrity and good intentions, the likelihood that they would unintentionally violate any number of statutes or regulations affecting a MONAT business is almost certain. These violations, although they may be relatively few in number, would jeopardize the MONAT opportunity for all Market Partners.
>
> ***Accordingly, Market Partners must not produce their own literature, advertisements, sales aids, business tools, promotional materials, or Internet web pages. Nor may Market Partners use any literature, advertisements, sales aids, business tools, promotional materials, or Internet web pages obtained from any source other than the Company. Market Partners may download and obtain approved promotional materials through the Back Office***.[40]  Emphasis supplied.

---

[40] MONAT Global United States, Policies and Procedures (2017), https://monatglobal.com/wp-content/uploads/2017/06/Monat_Policies_and_Procedures_USA 062017-1.pdf (last visited Sept. 23, 2018).  According to the Market Partner Agreement "Back Offices provide Market Partners access to confidential and proprietary information that may be used solely and exclusively to

92.     Defendants' stringent policies governing Market Partners also restrict their online conduct.  For example, Market Partners may not "*independently* design a website that uses the names, logos, or product descriptions of MONAT or otherwise promotes (directly or indirectly) MONAT products or the MONAT opportunity."[41]

93.     If Market Partners wish to utilize an Internet web page to promote Defendants' Products, "he or she may do so through the Company's replicated website program *only*."[42]

94.     Even within Defendants' own replicated website program, Market Partners are still heavily regulated by Defendants because they "may not alter the branding, artwork, look, or feel of their Replicated Websites."[43]

95.     Additionally, Defendants' strict policies and procedures do not allow Market Partners to "use online classified (including Craigslist) to list, sell or retail specific MONAT products or product bundles."[44]

96.     In order for Market Partners to "generate sales, a social media site must link only to the Market Partner's MONAT Replicated Website."[45]

97.     Market Partners are limited as to what photographs of Defendants' Products they may post on a social media site.  They are restricted to *only* use "photos that are provided by

---

promote the development of a Market Partner's MONAT business and to increase sales of MONAT products."

[41] *Id.* at 4.  (Emphasis added).

[42] *Id*. at 5 (Emphasis added).

[43] *Id.*

[44] *Id.* at 6.

[45] *Id.*

MONAT and downloaded from the Market Partner's Back-Office."[46]

98.      Defendants even control what banner advertisements Market Partners may utilize on a website as any such advertisements must be "approved templates and images."[47]

99.      Furthermore, Defendants control the manner in which Market Partners may list themselves in telephone directory listings and how they answer the telephone.  For example, "[n]o Market Partner may place telephone or online directory display ads using MONAT's name or logo;" "Market Partners may not answer the telephone by saying 'MONAT', 'MONAT Incorporated.'"[48]

100.      Market Partners are prohibited from utilizing "radio or television media for the advertising, distribution or promotion of MONAT products or opportunity *without the express written consent* of MONAT" and, even when consent is provided by Defendants, "MONAT must have final authority on every stage of the productions process. . . ."[49] Emphasis supplied.

101.      Defendants specifically outline in their policies what Market Partners must and must not say about the MONAT Compensation Plan to prospective Market Partners.[50]

102.      Defendants also specifically outline in their policies *how* Market Partners may sell "MONAT products from a commercial outlet" and/or "sell or display MONAT products or literature in a retail or service establishment."[51]

---

[46] *Id.* at 7.

[47] *Id*. at 6.

[48] *Id*. at 7.

[49] *Id*. at 8.

[50] *Id*. at 11.

[51] *Id.*

103.     Before Market Partners may "display and/or sell MONAT products at trade shows and professional expositions," Market Partners "must contact the MONAT Home Office and obtain permission in writing for conditional approval, as MONAT's policy is to authorize only one MONAT business per event."[52]

104.     Defendants outline a series of six rules that Market Partners must adhere to before sending an email that "promotes MONAT, the MONAT opportunity, or MONAT products."[53]

105.     Defendants specifically describe what Product claims Market Partners should make about Monat Products.  For example, "MONAT strongly encourages all of its Market Partners to promote the benefits of MONAT's revolutionary products and its cutting edge Market Opportunity."[54]

106.     The effect of Defendants' control of Market Partners' marketing of the Monat brand is apparent:  across the web, Market Partners parrot Defendants' precise and uniform messages of safety, quality, and efficacy.

107.     Upon information and belief, each of the aforementioned actions and decisions both in regard to marketing and control of Market Partners were made and effectuated in Miami-Dade County, Florida.

**III.     Defendants Knew That Monat Products Were Defective During the Class Period.**

108.     By  2016,  consumer  complaints  regarding  Monat  Products  became

---

[52] *Id*. at 12.

[53] *Id*. at 8.

[54] *Id*. at 10.

overwhelming, including complaints of hair loss and skin irritation.  Consequently, on September 26, 2016 the Better Business Bureau (BBB) sent correspondence to Monat requesting Monat's voluntary cooperation in taking steps to eliminate the pattern of customer complaints.[55]

109.    Efforts by the BBB were futile.  As recently as March 23, 2018, the BBB expressed that the complaints it had previously identified had continued, indicating that Monat failed to eliminate the underlying issues within the consumer complaints.

110.    More importantly, on March 23, 2018, the "BBB noted additional patterns of complaints that have been reported.  Several consumers have alleged in complaints to BBB that the products they bought from Monat Global have caused issues with their scalp and/or hair."[56]

111.    Over the last two years, the BBB has received over 744 complaints from consumers regarding Monat, over 575 of which pertain to "Problems with Product & Services."[57]

112.    The stories are consistent:  Monat Products cause hair loss, sores, and severe skin reaction.  To illustrate, on July 15, 2016, a customer complained that, "[t]he product which claims to increase hair growth, actually made my hair fall out."

113.    On July 20, 2017, another customer complained that, "I used Monat hair products and now have less hair.  . . .  After air drying, I went to bed.  I woke up to hair on my pillow.  I skipped 1 day and did the process again not thinking.  I woke to even more hair on my pillow and my scalp itching like crazy.  Then I noticed the thinness of my hair."

---

[55]    https://www.bbb.org/us/fl/doral/profile/hair-products/monat-global-corp-0633-90137286/details#Additional-Complaint-Information (last visited Sept. 29, 2018).

[56] *Id.*

[57]    https://www.bbb.org/us/fl/doral/profile/hair-products/monat-global-corp-0633-90137286/complaints (last visited Oct. 1, 2018).  The number of complaints apparently increases daily.  The numbers in paragraph 108 above are as of September 29, 2018.

114.     Then, on October 2, 2017, one customer wrote that, "Monat Global hair product causes hair loss and balding. . . .  I was told this product would make my hair grow faster, thicker, and look better.  After 2 weeks using the product I started noticing extreme hair loss with every shower.  It would cover the drain and come out in clumps.  I contacted the rep and she told me that my hair was detoxing.  I continued to use another week and my hair still was falling out in clumps after washing. . . .  I am filing this complaint in hopes that this company will be shut down or at least required to make the risks of hair loss public on their site. . . ."

115.     On November 24, 2017, another customer explained that, "Use of the Monat Volume system has caused burns to my scalp along with hair loss. . . .  I have developed scabby sores and small boils on my scalp from chemical burns.  My hair is thinning and breaks off frequently, leaving small hairs 3-4 inches long poling sporadically from my scalp.  I am getting married next August and have yet to schedule engagement pictures or any kind of photos because I am so embarrassed about the state of my hair.  I was warned that I may experience a 'detox period' as my hair and scalp adjusted tonthe [sic] nex [sic] product but this is insane.  I have been using this product for nearly 3 months now and still the same."

116.     Similarly, on January 3, 2018, one customer complained that, "After I started using the product I received- [sic] my hair has been falling out by the handfuls- [sic] enough to completely clog my shower & definitely NOT normal for me- [sic] I contacted the representative several times about this & she directed me to keep using it- [sic] that it is 'normal' & would go away- [sic] well over 3 months now I've had zero improvement. . . ."

117.     On January 10, 2018, another customer wrote, "Major Hair Loss [sic] These products caused major hair loss.  When I complained, I was told for a month and a half that it was normal 'detox' and to just keep using it.  With every complaint I would get a recommendation for

a different product but was always told it was normal detox.  It's a 90 day system and I was urged to stick with it for 90 days, which I did.  At the end of 90 days, I have half the hair I did when I started using the products as well as a bald patch.  I was told to keep using it."

118.     In the same vein, on February 7, 2018, a customer complained that, "hair lost half the thickness, tons of breakage, looks so dry and damaged that when I hold it in my hand, it breaks off.  And when you reach out to the company, they delete any negative reviews, the MPs [Market Partners] block you and delete all comments, tell you your [sic] going through detox (hair does not detox).  . . .  Monat needs to quit telling people they are 'shampooing wrong'.  The business practices are showing people only the positives and will not allow the negatives."

119.     On February 15, 2018, a customer noted that, "Monat made my hair fall out in clumps. . . .  I used the product regularly and used it as instructed.  I noticed after awhile [sic] my hair was not in the same condition it used to be in.  It was frizzy and dry, I couldn't run my fingers through it and when I brushed or washed it was falling out in larger amount [sic] than usual, and there was more breakage than I had ever experienced in my life."

120.     Then, on February 19, 2018, another customer stated that, "Product causes major hair loss in my husband he has a bald spot on the side of his head.  I also had hair loss and extreme damage to my hair."

121.     On February 21, 2018 one customer complained that, "I had been using their products for 6 weeks when I developed a reaction on my scalp. Open soars [sic]. I called the company to return products. Not only will they not return the products but in addition charged me $65 to cancel my subscription."

122.     In like manner, on February 26, 2018, another customer complained that they were charged $57.98 for cancellation after "[t]he product... caused a reaction to my hair/scalp and

hair loss."

123.     Hurt by the defective Product and frustrated by Defendants' continued failure to warn consumers of risks associated with Monat Products, on February 28, 2018, a customer complained that, "Product made my hair break off, bad sores on my scalp and instructions printed on products are misrepresenting. . . . [S]calp is itching and has blistering sores. . . . . . The claim is it takes 90 days to see results (I'd be bald if I had continued). . . . . . I just want Monat to put on THEIR Website the possibilities that could go wrong. . . . This company needs to be HONEST and forthcoming with the potential dangers. . . . [T]hey need to stop telling people the bleeding sores and oozing blisters on their heads and chunks of hair falling out is a good thing. . . ."

124.     On March 5, 2018, another customer wrote that, "Used for 4 months, caused hair to fall out in chunks, dry itchy scalp, hair was Very [sic] dry and brittle."

125.     Likewise, on April 13, 2018, a customer complained that, "I purchased hair treatment that was supposed to thicken my hair.  Instead, it has made my hair fall out.  I am now going bald."

126.     On May 7, 2018, another customer stated that, "I've been using the products for 5 months.  My scalp was itchy but I was told that was 'detox.'  Now my hair is extremely dry and is falling out!!!  When I rinse the conditioner out, my hair is no longer super soft like it has been the last 5 months.  It is now very dry and falling out by the handfuls!"

127.     On May 14, 2018, another customer reported, "Started use of Monat 09/2017.  By 12/2017 I had a bad rash/lesions & my hair was damaged beyond repair.  02/18 I had 5.5" cut off.  Company promised refund due to the irreversible damage their product caused. . . .  The process of refunding the money started on February 26 and I have STILL not gotten my money back despite my weekly calls and promises that it would be there by every end of the week."

128.     Again, on May 25, 2017, a customer complained that, "I have experienced extreme hair loss using these products.  I was told that these products would do wonders for my hair, that after each month that passed * [sic] was concerned about how much hair I was losing, tried to contact the company several times to no avail, no response, contacted another person who said to keep going, that this was the detox, month after month the same response, with what I was losing in hair and breakage I was afraid to continue to keep using these products, one last e mail to the company with the words 'DONE' in the subject box. . . ."

129.     On June 1, 2018, another customer expressed that, "Product caused my hair to fall out in clumps and was causing sores on my scalp.  I first purchased the product in October 2017 and was told that some hair may fall out due to 'detox.'  I received my second shipment in December and my hair was continuing to fall.  . . .  Monat promotes that they help hair growth so I continued using the products hoping the Monat products would actually help me.  . . .  After finding huge bald spots on the sides of my head I stopped using the product and contacted customer service.  Since discontinuing the product, the sores are healing and minimal if any hair has been falling out with each wash."

130.     In the same way, on June 18, 2018, a customer complained that, "Products damaged scalp and hair. I started using Monat hair products in January 2018 and by March, my scalp had sores, was irritated and dry/flaky.  Also my hair began falling out in huge clumps and even after stopping using it on March 15th.  Today is May 3rd and it continues falling out.  My hair is so thin, and I just wish it was back to normal."

131.     Then, on July 27, 2018, a customer complained that, "Hair products purchased made my hair fall out[.]  Purchased in fall of 2017.  Used Monat Shampoo, Conditioner and styling products.  My hair fell out in clumps."

132.    On September 4, 2018, another customer stated that, "The product cause [sic] my hair to break up to 2 inches in length and they refuse to acknowledge this and refund me[.]  I used this product for 5 months and 4 to 6 inches of my previously thick and healthy hair broke off over this time.  I was told to continue using it as it is 'detox.'  For some reason I did continue and more hair broke off, I lost some hair from my scalp and in this bare spot I had an open sore.  I stopped the product, and have been off of it for 4 months and it is healing.  NOTHING else changed during the time I was using this shampoo and other products by Monat, so I can say with certainty that it was Monat that caused this."

133.    Simultaneously, several consumers made adverse incident reports pertaining to their use of Monat Products to the FDA.  These reports too have a common thread; Monat Products caused the user extreme hair loss, head sores, and severe skin reaction.

134.    Between August 29, 2017 and March 27, 2018, a seven-month period, the FDA received 237 adverse event reports related to injury caused by Monat Products.

135.    In over 114 years, no other hair care brand (except one) has had as many FDA-reported complaints as Monat—a fact that clearly establishes that Monat Products are anything but safe, high-quality, reliable, and/or beneficial to health.

136.    Furthermore, far from pure, Monat Products do contain harsh chemicals, known allergens, irritants, or ingredients otherwise harmful to humans, including Cocamidopropyl Betaine, Benzyl Alcohol, Red Clover Leaf Extract, and Trideceth-6 C11-15 Pareth-7.  In 2004, for instance, the American Contact Dermatitis Society named Cocamidopropyl Betaine the allergen of the year.  Similarly, while Defendants represent in no uncertain terms that Monat Products do not contain petrochemicals, among others, Monat Products do contain Butylene Glycol—a known petrochemical and an allergen.

137.     Above all, these Products are not made under the "highest quality standards," as Defendants represent to the public.  Indeed, Defendants proudly proclaim:

> "All MONAT products are made in facilities that are cosmetic GMP (ISO 22716) compliant, registered with the FDA, operated in accordance with FDA regulations and that are subject to FDA audit and inspection. . . ."[58]

138.     But as recently as March 2018, the FDA issued a report about the unsanitary conditions under which B&R prepare Defendants' Products, including, on information, Monat Products.

139.     In the report, the FDA observed, among other things, that, "Your cosmetic was prepared, packed, or held under insanitary conditions whereby it *may have become contaminated with filth*." (Emphasis added).[59]   Additionally, according to the FDA report, B&R "does not sample and test raw materials for conformance with specifications to ensure the absence of filth, microorganisms, and or other adulterants prior to processing or usage."

140.     Products prepared, packed, held and/or potentially contaminated with filth are not made under the highest quality standards as represented by Defendants.

**IV.    Defendants Fail to Take Remedial Action.**

141.     Despite knowing that their Products are defective, Defendants have failed to recall any Monat Products, offer customers adequate compensation for their damages, or even provide any warning of health risks from their Products.

142.     Defendants try to profit from the misfortune of the Plaintiffs and members of the proposed Classes by claiming that the various adverse reactions are part of a "detox process" that

---

[58] https://truthaboutmonat.com/monat-fact-sheet/ (last visited Sept. 27, 2018).

[59] The U.S. Food and Drug Administration, Establishment Inspection Report for B&R Products, Inc., FEI NUMBER 3003505078.

organically occurs over a 90-day period and supposedly culminates in longer, fuller, stronger hair.

143.     More specifically, Defendants have deflected concerns expressed by consumers by stating that initial hair loss during the first month of use is part of a "detox" period before which the regenerative properties of Monat Products become apparent in the following two months. Defendants then suggest that consumers purchase even more Products to carry them through the detox period.  This so-called detoxification process is summarized in following marketing image:



42

144.     As illustrated above, during the detoxifying phase, Defendants represent that most consumers experience positive effects, including better overall texture, less tangling, and "[s]ome baby hair growth."  However, the detoxifying process, Defendants continue, potentially has some negative effects, such as "Refined oil production… Some flaking… Some itching… Some dryness or stickiness… Some shedding from hair follicles that are enlarging and getting rid of old cells and dormant hair."

145.     In month two, the recovering phase, Defendants represent that most consumers experience increased volume, increased control, balanced oils, increased hydration, and a reduction of frizz.  In addition, Defendants represent that, during this phase:

- The flaking has probably all but stopped

- The itching should have calmed down

- The sticky feeling has almost all gone away as the buildup is disappearing

- Hair is becoming shinier, livelier and healthier feeling

- New hair growth is stronger and more mature

- Less shedding

146.     In the last phase—the stabilizing phase in month three—Defendants represent to consumers that, "[y]our hair and scalp are returning to a more natural state as most detox and recovering issues have all but vanished."

147.     According to Defendants, by that time, most consumers could expect improved overall volume, improved manageability, reduced frizz and hydrated ends, shinier hair, and "[n]oticeably greater hair growth."

148.     In truth, the concept of detoxification promoted by Defendants appears to be nothing but a ploy to get consumers to purchase more of the defective Products month after month.

43

149.     Sores on the scalp, extreme hair loss, and severe scalp irritation are ***not*** natural processes and consumers continued to suffer as Defendants continued to conceal the true risks associated with Monat Products.

150.     As incontrovertible proof of Defendants' knowledge that their advertisements are misleading, in a recent interview, Monat's President, Stuart MacMillan, admitted that the company's representations about the detoxification process are not scientifically supported and are misleading.[60]  Speaking with ABC affiliate, 7 On Your Side Investigates, MacMillan explained that Monat no longer uses ads regarding detoxification, such as the marketing image depicted above, because those messages may have been misleading and "might have caused some issues." Monat, he says, has now cleaned up its marketing to clarify that if consumers have negative reactions they should stop using the Monat Products.

151.     Sadly, despite this admission by Defendants, they fail to acknowledge a defect and continue to represent that Monat Products are safe without warning of their potential health risks.

152.     Instead of recalling the defective Monat Products and taking other necessary steps to protect consumers from these unsafe Products, such as providing a warning of their health and safety risks, Monat has resorted to attacking customers who vocalize discontent with Monat Products.

153.     Almost as a deterrent to other consumers, who would otherwise openly express their negative experiences, Defendants prominently broadcast their aggressive strategy, dedicating entire webpages to this issue.   In part, one of Defendants' websites created following many

---

[60]    https://abc7ny.com/business/exclusive-execs-behind-company-accused-of-causing-hair-loss-speak-out/3574402/ (June 12, 2018) (Reporter Danielle Leigh has the exclusive extended interview with Monat President Stuart MacMillan). (Last viewed Sept. 29, 2018)

complaints about their Products prominently displays and provides information about these suits:

> COURT RULING IN FAVOR OF MONAT AGAINST ONLINE ATTACKERS
>
> MONAT'S RESPONSE TO TRO
>
> MONAT GLOBAL COMPLAINT AGAINST KAYLA BAKER
>
> MONAT GLOBAL COMPLAINT AGAINST VICKIE HARRINGTON
>
> MONAT GLOBAL COMPLAINT AGAINST TONI MILLER [61]

154.     Additionally, despite hundreds of consumers that have now reported adverse experiences with Monat Products, Defendants defiantly dismiss these experiences and continue to tout their "FDA approved" "clinically tested and proven" Products that grow and strengthen hair and prevent aging, explaining that, "Millions of customers know from their own experience that MONAT's products are safe." [62]

155.     In one web post only a few months ago, Monat claims—while still failing to disclose possible health risks from their Products and the fact that the FDA does not approve hair Products—that "MONAT is committed to compliance with FDA requirements for all our products, and we are confident that they are safe, effective and highly beneficial to our consumers." [63]

156.     However, an FDA Establishment Inspection Report issued in March 2018 following a comprehensive inspection of B&R's facility (that is, Alcora's facility that makes Monat Products) indicates that not only are Monat Products not FDA approved but Defendants

---

[61]  https://truthaboutmonat.com/science-litigation/ (last visited Sept. 23, 2018) (Defendants misleadingly describe this Court's decision in Plaintiff Whitmire and Yanes motion for temporary restraining order and protective order).

[62] https://truthaboutmonat.com/monat-fact-sheet/ (last visited Sept. 23, 2018).

[63] https://truthaboutmonat.com/monat-facilities-pass-fda-inspections/ (last visited Oct. 1, 2018).

have not registered in the FDA's voluntary program either.  Furthermore, the report noted unsanitary conditions at the factory and that Defendants did not test the ingredients received from suppliers used in Monat Products.  The FDA warned Defendants that they are still obligated to comply with the Food, Drug, and Cosmetics Act, which prohibits the false and misleading representations and omissions alleged herein, including representations that Monat Products like medications provide curative health benefits such as the guarantee to grow and strengthen hair and prevent aging.

157.    As recently as March, 2018 Monat's spokesperson Gene Grabowski communicated the Defendants' position that no harm would come from their products, going so far as to suggest consumers could drink their products, apparently without support for the same:  "Any reputable lab will tell you there's nothing in the products that would cause this kind of reaction in a large population – there just isn't. You can rub it in your skin, you can drink it if you like, within reason. It's not going to cause this kind of reaction."[64]

158.    As a result of Defendants' failure to recall defective Monat Products, fully disclose risks associated with these Products, and continued misrepresentations about the safety and efficacy of the Products, consumers continue to suffer from damages caused by Monat Products.

159.    Upon information and belief, each of the aforementioned decisions referenced in this section were made and effectuated in and from Miami-Dade County, Florida.

160.    Plaintiffs and members of the proposed Classes have suffered injury as a result of Defendants' concealment, misrepresentations and/or deceptive and unfair trade practices, and

---

[64]        https://www.abcactionnews.com/news/national/complaints-class-action-lawsuits-pile-up-against-hair-care-company-monat (last viewed October 1, 2018).

are entitled to relief.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment

161.     All applicable statutes of limitation have been tolled by Defendants' knowing, active and ongoing fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action.

162.     At latest, Defendants knew of the product defect by 2016 by which time numerous consumers had directly and/or indirectly reported to Defendants their unusual adverse reactions to Monat Products.  Since then, hundreds—if not thousands—of similar complaints have been filed alleging hair loss, hair breakage, skin reaction, and sores as a result of using the defective Products.

163.     Despite knowing about the product defect, Defendants concealed—and continue to conceal—the nature of the defect.  Defendants seek to downplay the severity of the problem; mislead consumers by representing that adverse physical reactions are related to a "detox period;" have not notified or warned Plaintiffs, Class members, and the public of the full and complete nature of the defect; and have not issued a recall for the Products

164.     Any applicable statute of limitations has therefore been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

### Discovery Rule

165.     Plaintiffs and Class members did not discover, and could not have discovered through the exercise of reasonable diligence, the full and complete nature of the defect.

166.     Within the period of any applicable statutes of limitation, Plaintiffs and the other Class members could not have discovered through the exercise of reasonable diligence that

Defendants were—and still are—concealing the product defect and misrepresenting product safety issues.

167.    Plaintiffs and Class members had no realistic ability to discern the defect in Monat Products until—at the earliest—after they suffered severe, adverse reactions to the Products. And even then, Plaintiffs and Class members had no basis to discover their causes of action because of Defendants' misleading statements and active concealment of the true nature of the defect.

168.    Any applicable statute of limitations has therefore been tolled by operation of the discovery rule.

## Estoppel

169.    Defendants were under a continuous duty to disclose to Plaintiffs and Class members the true character, quality, and nature of the defects plaguing Monat Products.

170.    Defendants actively concealed the true character, quality, and nature of the Products and knowingly made misrepresentations about the safety, quality, reliability, characteristics, and performance of the Products.

171.    Plaintiffs and Class members reasonably relied upon Defendants' misrepresentations and/or active concealment of these facts.

172.    Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

## *American Pipe* Tolling

173.    A putative class action suit on behalf of a nationwide class of consumers was brought against Defendants Monat and Alcora on February 16, 2018. *See Sohovich v. Monat Global Corp., et al.*, No. 1:18-cv-20624.

174.     At the time it was brought, Plaintiffs and the other Class members in this case were part of the classes alleged in the *Sohovich* action.

175.     Accordingly, pursuant to *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974), the claims of Plaintiffs and other Class members were tolled from at least February 16, 2018.  Additional class actions filed by Plaintiffs following the *Sohovich* action provide additional bases for *American Pipe* tolling.

## CLASS ACTION ALLEGATIONS

176.     The Classes' claims all derive directly from a common and uniform course of conduct by Defendants.  This case is about the responsibility of Defendants, at law and in equity, for their knowledge, their conduct, and their Products.  Defendants have engaged in uniform and standardized conduct toward the Classes.  They did not differentiate, in degree of care or candor, in their actions or inactions, or in the content of their statements or omissions, among individual Class members.  The objective facts on these subjects are the same for all Class members.  Within each Claim for Relief asserted by the respective Classes, the same legal standards govern.  Additionally, many states (and for some claims all states) share the same legal standards and elements of proof, facilitating the certification of multistate or nationwide classes for some or all claims.  Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4).

177.     For any determined subclass with physical injury, subsequent to determination of the common class issues, Plaintiffs seek an analysis pursuant to Federal Rule of Civil Procedure 23(c)(4).

178.     This action satisfies all requirements of those provisions, including numerosity,

commonality, typicality, adequacy, predominance, and superiority.

## I.   <u>The Nationwide Classes</u>

179.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(2); and/or (b)(3); and/or c(4) of the Federal Rules of Civil Procedure on behalf of themselves and a Nationwide Class defined as follows:

> **All purchasers or users of Monat Products residing in the United States or its territories between October 1, 2014 and the present.**

## II.   <u>The State Classes</u>

180.     Plaintiffs allege statewide class action claims on behalf of classes in the following states: Alaska, Arizona, California, Florida, Illinois, Iowa, Louisiana, Maryland, Michigan, Minnesota, Missouri, New York, Ohio, Oklahoma and Texas.  Each of these State Classes is initially defined as follows:

> **All purchasers or users of Monat Products in Plaintiff's respective state between October 1, 2014 and the present.**

181.     Excluded from the Classes are: (a) any person who purchased Monat Products for resale and not for personal or household use, (b) any person who signed a release of any Defendant in exchange for consideration in excess of the cost of Monat Products, (c) Defendants, including any entity or division in which Defendants have a controlling interest, as well as their agents, representatives, officers, directors, employees, trustees, parents, children, heirs, assigns, and successors, and other persons or entities related to, or affiliated with Defendants, and (d) the Judges to whom this case or its predecessor cases were assigned before consolidation, their staffs, and their immediate families.

## III.   <u>Numerosity</u>

182.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1).  By Defendants'

own admission, there are hundreds of thousands of customers—and putative class members—and over 14 million units of product sold in the United States.  These individuals are dispersed geographically throughout the United States.  Hence, while Plaintiffs do not know the exact size of the proposed Classes, that information being within Defendants' sole possession and available only through discovery, each of the proposed Classes is still plainly so numerous that joinder of all members is impracticable.

183.     Each of the Classes is ascertainable because its members can be readily identified using purchase records, sales records, production records, and other information kept by Defendants.  Plaintiffs anticipate providing appropriate notice to each certified Class, once certified, in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

## IV.   **Predominance of Common Issues**

184.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because questions of law and fact that have common answers predominate over questions affecting only individual Class members.  These include, without limitation, the following:

    a.   Whether Monat Products suffer from a design defect;

    b.   Whether Defendants knew or should have known about the product defect, and, if so, how long Defendants have known of the defect;

    c.   Whether the defective nature of Monat Products constitutes a material fact reasonable consumers would have considered in deciding whether to purchase the Product;

    d.   Whether Defendants had a duty to disclose the defective nature of Monat Products to Plaintiffs and Class members;

    e.   Whether Defendants omitted and failed to disclose material facts about

Monat Products;

f.   Whether Defendants' conduct toll any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppel;

g.   Whether Defendants negligently misrepresented that Monat Products were safe;

h.   Whether Defendants engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by objectively misleading Plaintiffs and putative Class Members;

i.   Whether Defendants' conduct, as alleged herein, was likely to mislead a reasonable consumer;

j.   Whether Defendants violated each of the States' consumer protection statutes, and if so, what remedies are available under those statutes;

k.   Whether Defendants' statements, concealments and omissions regarding the Monat Products were material, in that a reasonable consumer could consider them important in purchasing Monat Products;

l.   Whether Monat Products were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

m.  Whether Plaintiffs and the Classes are entitled to a declaratory judgment stating that Monat Products are defective and/or not merchantable;

n.   Whether Defendants' unlawful, unfair, and/or deceptive practices harmed Plaintiffs and the Classes;

o.   What aggregate amounts of statutory penalties are sufficient to punish and deter Defendants and to vindicate statutory and public policy;

p. Whether, as a result of Defendants' omissions and/or negligent misrepresentations of material facts, Plaintiffs and Class members have suffered an ascertainable loss of monies and/or property and/or value; and

q. Whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

## V.   **Typicality**

185.   This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiffs' claims are typical of the claims of the Class members, and arise from the same course of conduct by Defendants.  The relief Plaintiffs seek is typical of the relief sought for the absent Class members.

## VI.   **Adequate Representation**

186.   Plaintiffs will fairly and adequately represent and protect the interests of the Classes.  Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective products.

187.   Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes, and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Classes.

## VII.   **Superiority**

188.   This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants have acted and refused to act on grounds generally applicable to each Class, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to each Class as a whole.

189.   This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class

action is superior to other available methods for the fair and efficient adjudication of this controversy. The common questions of law and of fact regarding Defendants' conduct and responsibility predominate over any questions affecting only individual Class members.

190. Because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, such that most or all Class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

191. The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

192. Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing

common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

## REALLEGATION AND INCORPORATION BY REFERENCE

193.     Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs and allegations of this Complaint as though fully set forth in each of the following Claims for Relief asserted on behalf of the Nationwide Class and the Statewide Classes.

## CLAIMS FOR RELIEF

I.    **Nationwide Claims**

## COUNT I
## VIOLATION OF THE FLORIDA DECEPTIVE
## AND UNFAIR TRADE PRACTICES ACT
## Fla. Stat. § 501.201

194.     Plaintiffs bring this claim on behalf of the Nationwide Class against all Defendants under Florida law because Florida has the most significant relationship to the issues and facts relevant to this claim, Defendants expressly and unambiguously chose this forum and law, and Monat's website has elected Florida law as the applicable law.  In the alternative, Plaintiff Whitmire brings this claim on behalf of the Florida Class.

195.     Plaintiffs are "consumers" within the meaning of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.203(7).

196.     Defendants are engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

197.     FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . "

Fla. Stat. § 501.204(1).  Defendants participated in unfair and deceptive trade practices that violated the FDUTPA as described herein.

198.    Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by concealing from Plaintiffs and Class members the material fact that Monat Products can cause substantial hair loss, hair breakage, scalp sores, infection, rashes and scalp irritation. Defendants should have disclosed this information because they were in a superior position to know the true facts related to this defect, and Plaintiffs and Class members could not reasonably be expected to learn or discover the true facts related to the defect prior to their purchases.

199.    Separate and apart from the product dangers, Defendants also engaged in deceptive and unlawful trade practices by making claims in its marketing that establish that the Products are drugs under section 201(g)(1)(B) and/or 201(g)(1)(C) of the Federal Food, Drug, and Cosmetic Act [21 U.S.C. § § 321(g)(1)(B) and/or 321(g)(1)(C)] because they are intended for use in the cure, mitigation, treatment, or prevention of disease and/or are intended to affect the structure or function of the human body.  Specifically, Defendants marketed Monat Products stating that the Products "regrow" hair and contain chemicals that impact hormonal levels for people including pregnant women to help prevent hair loss.  Further, Defendants affirmatively made false statements concerning FDA approval, and regarding the qualities and characteristics of Monat Products as being curative or appropriate for the treatment of health conditions, all natural, naturally based, safe and non-toxic, employing deception, deceptive acts or practices, fraud, or misrepresentations or concealment, suppression, or omission of  material facts, likely to deceive a consumer acting reasonably under the circumstance in connection with their purchase of Monat Products.  Through this course of conduct, these actions are also unconscionable.

200.     By 2016, Defendants were made aware of the product defect when they began to be inundated, directly and/or indirectly, with consumer reports of injuries caused by Monat Products.  Defendants failed to disclose and warn consumers about the dangers and risks posed by Monat Products.  Additionally, Defendants misled consumers by making affirmative statements without any scientific basis that adverse reactions were natural, normal and to be expected as part of a "detox" process in order to induce them to continue using the Products while suffering adverse reactions.

201.     By failing to disclose the product defect, by marketing Monat Products as safe, reliable, and of high quality, as well as by presenting themselves as reputable manufacturers and distributors that value safety, Defendants engaged in unfair, deceptive and unconscionable business practices in violation of the FDUTPA.  Defendants' deceptive and unconscionable conduct is compounded by their continued representation that Monat Products are safe as well as their failure to take remedial action.

202.     Defendants' unfair, deceptive and unconscionable acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Nationwide Class, about the true safety and reliability of Monat Products, the quality of the Monat's brand, and the true value of Monat Products.

203.     Defendants made these uniform misrepresentations and omissions in written advertising materials presented to Plaintiffs and other members of the Nationwide Class at the time of purchase, in print, including advertisements on Defendants' website and related web pages, directly on the packaging of Defendants' hair care Products, and through their Market Partners

who advertise as directed by Defendants.

204.     Defendants owed Plaintiffs and the Nationwide Class a duty to disclose the health and safety risk of their Products and falsely touted their curative health claims. Defendants possessed exclusive knowledge of the health and safety dangers and risks posed by Monat Products and, yet, made incomplete representations about them and touted false curative health claims about their Products generally, while purposefully withholding material facts from Plaintiffs and the Nationwide Class that contradicted these representations.

205.     Plaintiffs and the Nationwide Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the defect that existed in Monat Products, and Defendants' complete disregard for safety, Plaintiffs and the Nationwide Class would not have purchased Monat Products.  Plaintiffs and the Nationwide Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

206.     Plaintiffs and the Nationwide Class risk irreparable injury as a result of Defendants' acts and omissions in violation of the FDUTPA, and these violations present a continuing risk to Plaintiffs, the Nationwide Class, and the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

207.     As a direct and proximate result of Defendants' violations of the FDUTPA, Plaintiffs and the Nationwide Class have suffered injury-in-fact and/or actual damage.

208.     Plaintiffs and the Nationwide Class are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

209.     Plaintiffs and the Nationwide Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, and awarding declaratory relief, attorneys' fees, costs and expenses and any other just and proper relief available under the FDUTPA.

## COUNT II

## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301

210.     Plaintiffs bring this Count against Defendants on behalf of members of the Nationwide Class.  In the alternative, Plaintiffs reserve the right to bring these claims on behalf of their respective State Classes.

211.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

212.     Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3) and are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

213.     Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

214.     Monat Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

215.     The Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1), provides a cause of action for any consumer, who is damaged by the failure of a warrantor to comply with a written or implied warranty.

216.     Defendants made promises and representations in an express warranty provided to all consumers, which became the basis of the bargain between Plaintiffs, Class members and Defendants.

217.     Defendants' written affirmations of fact, promises and/or descriptions as alleged—including promises that Monat Products provided curative health benefits for health conditions that were "safe," "naturally based" and that "guaranteed" hair growth and prevent

59

aging—are each a "written warranty."  The affirmations of fact, promises and/or descriptions constitute a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(6).

218.    Further, Defendants provided Plaintiffs and the other Nationwide Class members with an implied warranty of merchantability in connection with the purchase of Monat Products that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

219.    As a part of the implied warranty of merchantability, Defendants warranted to Plaintiffs and Class members that Monat Products were of merchantable quality (i.e., a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

220.    Defendants breached all applicable warranties, as described in more detail above, and is therefore liable to Plaintiffs and the Nationwide Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, Monat Products suffer from latent and/or inherent defects that cause substantial hair loss, hair breakage, head sores, and scalp irritation, rendering Monat Products unfit for their intended use and purpose.  This defect substantially impairs the use, value and safety of Monat Products.

221.    Any effort to limit the implied warranties in a manner that would exclude coverage of Monat Products is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the defective Products is null and void.  Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendants, on the

one hand, and Plaintiffs and the other Nationwide Class members, on the other.  Moreover, any limitations on the warranties are substantively unconscionable.  Following early reports of injuries caused by Monat Products, Defendants knew that Monat Products were defective and would continue to pose safety risks.  Defendants failed to disclose the product defect to Plaintiffs and the Nationwide Class members.  Thus, Defendants enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

222.    Plaintiffs and each of the other Nationwide Class members have had sufficient direct dealings with Defendants and their agents (Market Partners) to establish privity of contract.

223.    Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and their Market Partners, and specifically, of the implied warranties.  Market Partners were not intended to be the ultimate consumers of Monat Products and have no rights under the warranty agreements provided with Monat Products; the warranty agreements were designed for and intended to benefit consumers.

224.    All conditions precedent to seeking liability under this claim for breach of express and implied warranty have been performed by or on behalf of Plaintiffs and others in terms of paying for the goods at issue.

225.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs and the Nationwide Class are entitled to bring this class action and are not required to give Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs and the Nationwide Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

226.    Furthermore, affording Defendants an opportunity to cure its breach of written warranties would be unnecessary and futile here.  Defendants were placed on reasonable notice of

the defect in Monat Products and breach of the warranties based on numerous complaints received directly and indirectly from Plaintiffs and the Nationwide Class, and have had ample opportunity to cure the defect for Plaintiffs and the Nationwide Class, but have failed to do so, instead denying the claims and suing anyone attempting to bring them to light.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs and the Nationwide Class resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure the breach of warranty is excused and thereby deemed satisfied.

227.    Defendants' breaches of warranty have caused Plaintiffs and the other Nationwide Class members to suffer injuries, paying for defective Products, and entering into transactions they would not have entered into for the consideration paid.  As a direct and proximate result of Defendants' breaches of warranty, Plaintiffs and the Nationwide Class have suffered damages and continue to suffer damages, including economic damages in terms of the cost of Monat Products and the cost of efforts to mitigate the damages caused by same.

228.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.  Plaintiffs, individually and on behalf of the other Nationwide Class members, seek all damages permitted by law and equity in an amount to be proven at trial.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Nationwide Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Nationwide Class members in connection with the commencement and prosecution of this action.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Fla. Stat. § 672.314, *et seq.*

229.     Plaintiffs bring this claim on behalf of the Nationwide Class under Florida law, because Florida has the most significant relationship to the issues and facts relevant to this claim, Defendants chose this forum and law, and Monat's website has elected Florida law as the applicable law.  In the alternative, Plaintiffs reserve the right to bring this claim, on behalf of themselves and their respective State Classes, under the laws of the states where Plaintiffs and Class Members reside and/or purchased their Monat Products.

230.     Defendants are and were at all relevant times merchants with respect to Monat Products within the meaning of Fla. Stat. § 672.104(1).

231.     A warranty that the Monat Products were in merchantable condition was implied by law in purchase transactions, pursuant to Fla. Stat. § 672.314.

232.     The Monat Products when sold and at all times thereafter, were not merchantable or reasonably fit for either the use they were intended or the uses reasonably foreseeable by Defendants.  Specifically, they were misrepresented as providing curative health benefits when they are inherently defective and dangerous in that they cause hair loss and other severe adverse reactions to users.

233.     Plaintiffs and the Class, at all relevant times, were intended third-party beneficiaries of Defendants and their agents (Market Partners) distribution and sale of the Monat Products.

234.     Defendants were provided notice of these issues by their knowledge of the issues and complaints they received from consumers, directly or indirectly.

235.     As a direct and proximate result of Defendants' breach of the warranties of

merchantability and fitness for a particular purpose, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT IV

### VIOLATION OF EXPRESS WARRANTY

236.     Plaintiffs bring this claim on behalf of the Nationwide Class under Florida law, because Florida has the most significant relationship to the issues and facts relevant to this claim, Defendants chose this forum and law, and Monat's website has elected Florida law as the applicable law. In the alternative, Plaintiffs reserve the right to bring this claim, on behalf of themselves and their respective State Classes, under the laws of the states where Plaintiffs and Class Members reside and/or purchased their Monat Products.

237.     As described herein, Defendants represented Monat Products with the intention that consumers would rely on those misrepresentations and purchase the Product from Defendants.

238.     At all times relevant herein, Defendants were aware of the misrepresentations of and defect in Monat Products. Specifically, Defendants were on notice of the problems and provided an opportunity to cure due to the plethora of complaints received, without such concerns being resolved.

239.     Defendants' false and misleading statements related to curative health claims of "safe," "FDA approved," "natural," Monat Products clinically tested and proven to grown hair and prevent aging became a basis of the bargain, and Plaintiffs and members of the Class expected that the Monat Products that they purchased would conform to Defendants' affirmations.

240.     Plaintiffs and members of the Class were in direct privity with Defendants and/or its agents, or were intended third-party beneficiaries of the warranties breached herein to the extent required by law.

241.     Plaintiffs and the Class were harmed by Defendants' omissions and misrepresentations when they purchased Monat Products.

242.     Had Defendants disclosed the true nature of Monat Products and their defects, Plaintiffs and members of the Class would not have purchased them.

243.     Plaintiffs and members of the Class have suffered a loss by paying more than they would have otherwise paid for Monat Products and by receiving Products of inferior value than what they were promised by Defendants.

244.     As a direct and proximate result of Defendants' breaches, Plaintiffs and members of the Class have suffered, and will continue to suffer, significant damages, loss, and injury in an amount to be determined at trial.

245.     Plaintiffs and members of the Class are entitled to legal and equitable relief against Monat, including actual and consequential damages, rescission, attorneys' fees, costs of suit, and other relief as deemed appropriate.

## COUNT V

## NEGLIGENCE - FAILURE TO WARN

246.     Plaintiffs bring this claim on behalf of the Nationwide Class under Florida law, because Florida has the most significant relationship to the issues and facts relevant to this claim, Defendants chose this forum and law, and Monat's website has elected Florida law as the applicable law.  In the alternative, Plaintiffs reserve the right to bring this claim, on behalf of themselves and their respective State Classes, under the laws of the states where Plaintiffs and Class Members reside and/or purchased their Monat Products.

247.     Defendants owed a duty of care to the Plaintiffs and Class Members to give appropriate warnings about all dangers associated with the intended use of Monat Products.

248.     By 2016, Defendants were aware or should have been aware of risks of hair loss, scalp irritation, head sores related to the use of Monat Products.  Certainly, after receiving, directly or indirectly, hundreds of complaints of hair loss and unusual adverse reaction from customers, a duty arose to provide a warning to consumers that use of the Product could result in hair loss and/or scalp irritation.

249.     Defendants were under a continuing duty to warn and instruct the intended and foreseeable users of Monat Products, including Plaintiffs and Class Members, of the defective condition of the Products and the risks associated with using the Monat Products.  Plaintiffs were entitled to know that Monat Products, in their ordinary use, were not reasonably safe for their intended and ordinary purposes and uses.

250.     Defendants were negligent and breached their duty of care by negligently failing to give adequate warnings to purchasers and users of Monat Products, including Plaintiffs and the Class members, about the risks, potential dangers and defective condition of Monat Products, after Defendants knew, or by the exercise of reasonable care, should have known of the inherent design defects and resulting dangers associated with Monat Products.

251.     As described herein, Defendants knew that Plaintiffs and Class members could not reasonably be aware of those risks.

252.     As a direct and proximate result of Defendants' failure to adequately warn consumers about risks associated with use of Monat Products, Plaintiffs and the Class have suffered damages as set forth herein.

## COUNT VI

## STRICT LIABILITY – DESIGN DEFECT

253.     Plaintiffs bring this claim on behalf of the Nationwide Class under Florida law,

because Florida has the most significant relationship to the issues and facts relevant to this claim, Defendants chose this forum and law, and Monat's website has elected Florida law as the applicable law.  In the alternative, Plaintiffs reserve the right to bring this claim, on behalf of themselves and their respective State Classes, under the laws of the states where Plaintiffs and Class Members reside and/or purchased their Monat Products.

254.     Defendants are designers, developers, manufacturers, sellers, and/or distributors of Monat Products.

255.     As alleged herein, Monat Products have a design defect which results in hair loss, hair breakage, head sores, and severe skin reaction.

256.     These unreasonably dangerous defects were present in Monat Products when they were placed into the stream of commerce by Defendants.

257.     Monat Products did not undergo material change or alteration up to and including the time of use by Plaintiffs and Class members.  Further, the Monat Products were used as intended or in a reasonably foreseeable manner by Plaintiffs and Class members.

258.     Defendants' defective Monat Products caused harm to Plaintiffs and Class members, as described herein, for which Plaintiffs and Class members are entitled to recover damages to be determined at trial.

**COUNT VII**

**STRICT LIABILITY – FAILURE TO WARN**

259.     Plaintiffs bring this claim on behalf of the Nationwide Class under Florida law, because Florida has the most significant relationship to the issues and facts relevant to this claim, Defendants chose this forum and law, and Monat's website has elected Florida law as the applicable law.  In the alternative, Plaintiffs reserve the right to bring this claim, on behalf of

themselves and their respective State Classes, under the laws of the states where Plaintiffs and Class Members reside and/or purchased their Monat Products.

260.     Defendants are designers, developers, manufacturers, sellers, and/or distributors of Monat Products.

261.     As alleged herein, Monat Products have a design defect which results in hair loss, head sores, and severe skin reaction.

262.     These unreasonably dangerous defects were present in Monat Products when they were placed into the stream of commerce by Defendants.

263.     Monat Products did not undergo material change or alteration up to and including the time of use by Plaintiffs and Class members.  Further, Monat Products were used as intended or in a reasonably foreseeable manner by Plaintiffs and Class members.

264.     The foreseeable risks of harm from Monat Products could have been reduced or avoided if Defendants had provided reasonable instructions or warnings, at least as of 2016 when they knew or should have known that the Products are defective and unreasonably dangerous.

265.     The failure of Defendants to provide reasonable instructions or warnings made the Monat Products defective and unreasonably dangerous.

266.     Defendants' defective Monat Products and their failure to warn caused harm to Plaintiffs and Class members, as described herein, for which Plaintiffs and Class members are entitled to recover damages to be determined at trial.

## COUNT VIII

## UNJUST ENRICHMENT

267.     Plaintiffs bring this claim on behalf of the Nationwide Class under Florida law, because Florida has the most significant relationship to the issues and facts relevant to this claim,

Defendants chose this forum and law, and Monat's website has elected Florida law as the applicable law.  In the alternative, Plaintiffs bring this claim, on behalf of themselves and their respective State Classes, under the laws of the states where Plaintiffs and Class Members reside and/or purchased their Monat Products.

268.     Defendants' unlawful, unfair, deceptive, and wrongful acts and omissions, unjust enriched Defendant at the expense of Plaintiffs and the Class.

269.     Plaintiffs and the Class paid a premium for Monat Products which were unfit for their ordinary use.

270.     Plaintiffs and Class members conferred a benefit on Defendants through payment for the misrepresented and defective Monat Products.

271.     Defendants' retention of the benefit conferred as a result of its unlawful acts was inequitable and unjust.

272.     Plaintiffs and members of the Class have no adequate remedy at law.

273.     Plaintiffs and members of the Class are entitled to seek restitution and other relief from Defendants, including an order requiring Defendants to disgorge all profits, benefits, and other compensation obtained by Defendants through and for its wrongful conduct.

## II.   State Claims

274.     Each state claim described below is pled only in the alternative to a nationwide claim under Florida law.

### A.     Alaska

### COUNT IX
### ALASKA CONSUMER PROTECTION ACT,
### Alaska Stat. §§ 45.50.471, et seq.

275.     Plaintiff Winter ("Plaintiff," for purposes of this Count), individually and on

behalf of the Alaska Class, brings this claim.

276.    Defendants advertised, offered, or sold goods or services in Alaska and engaged in trade or commerce directly or indirectly affecting the people of Alaska.

277.    Alaska Class members are "consumers" as defined by Alaska Stat. § 45.50.561(4).

278.    Defendants received notice pursuant to Alaska Stat. § 45.50.535 concerning its wrongful conduct as alleged herein by Plaintiff and Alaska Subclass members.  However, sending pre-suit notice pursuant to Alaska Stat. § 45.50.535 is an exercise in futility for Plaintiff, as Defendants have already been informed of the allegedly unfair and unlawful conduct as described herein as of the date of the first-filed lawsuit, and have yet to offer Alaska class members remedy in accordance with similar consumer protection statutes.

279.    Defendants engaged in unfair or deceptive acts and practices in the conduct of trade or commerce, in violation Alaska Stat. § 45.50.471, including:

a.    Knowingly designing, developing, manufacturing, advertising, and selling Monat Products with significant misrepresentations and defects that result in health and safety risks, including but not limited to hair loss when they are represented to do the opposite by causing hair growth and strengthening so that consumers did not receive the benefit of their bargain;

b.    Marketing and selling Monat Products that relied upon misleading curative health claims including that the Products were safe, FDA approved, naturally based way to grow hair and prevent aging that was clinically tested, proven and guaranteed solely to increase profits;

c.    When consumers complained about experiencing adverse reactions to Monat

Products, Defendants either denied that the Products could do this or explained that it was part of the "detox" period for hair to achieve the desired results of hair growth, strengthening and anti-aging from the Products and, accordingly, putting profits over the health and safety of consumers;

d.   Failing to disclose the potential health and safety risks from using Monat Products and further concealing material information from consumers regarding the true nature of the defects in Monat Products in order to impact consumer purchasing behavior.

280.   Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

281.   Defendants recklessly disregarded Plaintiff and Alaska Class members' rights. Defendants' knowledge of consumer complaints regarding Monat Products put it on notice that Monat Products were not as they advertised and defective.

282.   As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and Alaska Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain, and suffering and treating physical damages related to the use of Monat Products.

283.   Plaintiff and the Alaska Class seek all monetary and non-monetary relief allowed by law, including the greater of (a) three times their actual damages or (b) statutory damages in the amount of $500, punitive damages, reasonable attorneys' fees and costs and expenses, injunctive relief, and any other relief that is necessary and proper.

B.        **Arizona**

**COUNT X**

**ARIZONA CONSUMER FRAUD ACT**
**A.R.S. §§ 44-1521, et seq.**

284.     Plaintiff Clovin identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Arizona Class, brings this claim.

285.     Defendants are a "person" as defined by A.R.S. § 44-1521(6).

286.     Defendants advertised, offered, or sold goods or services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

287.     Defendants engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts affecting the people of Arizona in connection with the sale and advertisement of "merchandise" (as defined in Arizona Consumer Fraud Act, A.R.S. § 44-1521(5)) in violation of A.R.S. § 44-1522(A).

288.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

289.     Defendants intended to mislead Plaintiff and Arizona Class members and induce them to rely on its misrepresentations and omissions.

290.     Had Defendants disclosed to Plaintiff and Arizona Class members that it misrepresented Monat Products, omitted material information regarding defects including potential health and safety risks (as alleged herein), and was otherwise engaged in deceptive, common business practices, Defendants would have been unable to continue in business and they would have been forced to disclose the misrepresentations and defects.  Instead, Defendants represented that Monat Products provided curative health benefits that were FDA approved and clinically tested, proven and guaranteed to grow hair and prevent aging.  Plaintiff and Class

members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

291.     Defendants acted intentionally, knowingly, and maliciously to violate Arizona's Consumer Fraud Act, and recklessly disregarded Plaintiff and Arizona Class members' rights. Defendants' knowledge of Monat Products' abilities and potential health and safety risks including numerous consumer complaints put it on notice that Monat Products were not as it advertised.

292.     As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Monat Products, and increased time and expense in treating damages caused by Monat Products.

293.     Plaintiff and Arizona Class members seek all monetary and non-monetary relief allowed by law, including compensatory damages; disgorgement; punitive damages; injunctive relief; and reasonable attorneys' fees and costs.

### C.     California

### COUNT XI

### VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT,
#### Cal. Civ. Code §§ 1750, et seq.

294.     Plaintiffs Sohovich, Botallico and Flores ("Plaintiffs" for purposes of this count) each bring this claim individually and on behalf of the California Class.

295.     The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. ("CLRA"), is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

296.     Defendants is a "person" as defined by Civil Code §§ 1761(c) and 1770, and has provided "services" as defined by Civil Code §§ 1761(b) and 1770.

297.     Plaintiffs and California Class members are "consumers" as defined by Civil Code §§ 1761(d) and 1770, and have engaged in a "transaction" as defined by Civil Code §§ 1761(e) and 1770.

298.     Defendants' unlawful conduct resulted in the sales of products and services to Plaintiffs and the California Class members in violation of Civil Code § 1770, including:

a.   Representing that goods or services have characteristics that they do not have;

b.   Representing that goods or services are of a particular standard, quality, or grade when they were not;

c.   Advertising goods or services with intent not to sell them as advertised; and

d.   Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

299.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

300.     Had Defendants disclosed to Plaintiffs and California Class members that they misrepresented Monat Products, omitted material information regarding the potential health and safety risk with use of the Products and true abilities of those Monat Products, and were otherwise engaged in common business practices that ultimately hurt consumers, Defendants would have been unable to continue selling defective Monat Products and would have been forced to disclose the truth and defects of Monat Products.  Instead, Defendants represented that Monat Products were safe and FDA approved to provide curative health benefits including guaranteed growth of hair and age prevention to all hair and skin types, without disclosing their potential health and

safety risks.   Plaintiffs and the Class members acted reasonably in relying on Defendants'
misrepresentations and omissions, the truth of which they could not have discovered with
reasonable diligence.

301.    As a direct and proximate result of Defendants' violations of California Civil
Code § 1770, Plaintiffs and California Class members have suffered and will continue to suffer
injury, ascertainable losses of money or property, and monetary and non-monetary damages,
including from not receiving the benefit of their bargain in purchasing the Monat Products, and
increased time and expense in treating the damage caused by the use of Monat Products.

302.    Defendants has already received notice of the Class members' intent to seek
damages in compliance with California Civil Code § 1782(a).   Defendants also received a
supplemental notice pursuant to California Civil Code § 1782 concerning its wrongful conduct as
alleged herein by Plaintiffs and the other California Class members.[65]   Any further notice would
be futile because Defendants have yet to offer relief to the California Class, despite being on notice
of their unfair, deceptive, and fraudulent conduct.

303.    Plaintiffs, individually and on behalf of the other California Class members, seek
all monetary and non-monetary relief allowed by law, including damages and punitive damages,
an order enjoining the acts and practices described above, attorneys' fees, and costs under the
CLRA.

---

[65] Plaintiff Botallico previously provided Defendants with notice under California law and
Plaintiffs Sohovich and Flores provided Defendants with notice through the filing of their initial
lawsuits that were brought under Florida law. Defendants have not responded.

## COUNT XII

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW,
### Cal. Bus. & Prof. Code §§ 17200, et seq.

304.     Plaintiffs Sohovich, Botallico and Flores ("Plaintiffs" for purposes of this count) each bring this claim individually and on behalf of the California Class.

305.     Defendants constitute a "person" as defined by Cal. Bus. & Prof. Code § 17201.

306.     Defendants violated Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

307.     Defendants' "unfair" acts and practices include:

   a.  Knowingly designing, developing, manufacturing, advertising, and selling Monat Products with false curative health claims and significant defects that result in health and safety risks when used so that consumers did not receive the benefit of their bargain;

   b.  Marketing and selling Monat Products that relied upon false curative health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

   c.  Making affirmative public representations about curative benefits of Monat Products while, at the same time, not ensuring that consumer health and safety; and

   d.  Concealing material information from consumers regarding the true nature of the defects in Monat Products in order to impact consumer purchasing behavior.

308.     Defendants have engaged in "unlawful" business practices by violating multiple laws, including the CLRA, Cal. Civ. Code §§ 1780, et seq., and California common law.

309.     Defendants' deceptive acts and practices include:

   a.  Knowingly designing, developing, manufacturing, advertising, and selling Monat

Products with false curative health claims and significant defects that result in health and safety risks when used so that consumers did not receive the benefit of their bargain;

b.  Marketing and selling Monat Products that relied upon false curative health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

c.  Making affirmative public representations about curative benefits of Monat Products while, at the same time, not ensuring that consumer health and safety; and

d.  Concealing material information from consumers regarding the true nature of the defects in Monat Products in order to impact consumer purchasing behavior.

310.    Defendants violated § 17200's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of Monat Products.  As alleged more fully herein, Defendants' marketing and sale of Monat Products, and more specifically their failure to inform customers of the health and safety risks inherent in Monat Products, violated Cal. Civ. Code §§ 1750, et seq., common law, and other statutory violations as alleged herein.  Plaintiffs reserve the right to allege other violations of the law, which constitute other unlawful business acts and practices.  As alleged herein, Defendants Monat Products continue to misrepresent their Products' abilities and pose health and safety risks, Defendants have not recalled their Products nor provided any remedial efforts including a warning disclosing their possible risk, and Defendants' conduct is ongoing and continues to this date.

311.    Defendants violated § 17200's prohibition against unfair conduct by failing to inform their customers about Monat Products' abilities and their potential health and safety risks; engaging in a pattern or practice of concealing those facts and continuing to sell those Monat

Products despite its knowledge that they are misrepresented and carry health and safety - thereby depriving customers of the value of Monat Products as represented.  This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefit.  Specifically, the health and safety risks was outweighed by Defendants' profit motive.  Defendants engaged in this conduct at the expense of its customers' rights when other, lawful alternatives were available (such as providing customers with full information about Monat Products prior to purchase).

312.    Defendants engaged in this conduct to gain an unfair commercial advantage over their competitors, seeking to avoid public knowledge of the abilities of Monat Products and their defects to avoid damage to their sales or reputation.  They withheld critical and material information from Plaintiffs and California Class members, competitors, and the marketplace, all to Defendants' unfair competitive advantage.

313.    Defendants' business practices, as alleged herein, constitute fraudulent conduct because they were likely to deceive, and did deceive, California Class members into purchasing Monat Products when those Monat Products were misrepresented and defective with health and safety risks.

314.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

315.    As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent acts and practices, Plaintiffs and California Class members were injured and lost money or property, including from not receiving the benefit of their bargain in purchasing Monat Products, and increased time and expense in dealing with treating damages from the use of Monat Products.

316.    Defendants recklessly disregarded Plaintiffs and California Class members'

rights.  Defendants' knowledge of the Monat Products' false claims and health and safety risks put it on notice that the Monat Products were not as it advertised.

317.     Plaintiffs and California Class members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

## COUNT XIII

### VIOLATIONS OF CALIFORNIA'S FALSE AND MISLEADING ADVERTISING LAW
### Cal. Bus. & Prof. Code §§ 17500, et seq.

318.     Plaintiffs Sohovich, Botallico and Flores ("Plaintiffs" for purposes of this count) each bring this claim individually and on behalf of the California Class.

319.     Defendants' acts and practices, as described herein, have deceived and/or are likely to continue to deceive Class members and the public.  As described, Defendants misrepresented Monat Products, concealed Monat Products' defects, concealed the health and safety risk with use of Monat Products, and also concealed and misrepresented the true nature of Monat Products.

320.     By their actions, Defendants disseminated uniform advertising regarding the Monat Products throughout the country including in California.  The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code §§ 17500, et seq.  Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

321.     The above-described false, misleading, and deceptive advertising Defendants disseminated continues to have a likelihood to deceive in that Defendants failed to disclose the

true nature of Monat Products.  Defendants failed to instigate a public information campaign to alert consumers of the defects and, instead, continued to misrepresent the true nature of Monat Products, continuing to deceive consumers.

322.    Defendants continued to misrepresent to consumers that Monat Products were capable of certain curative health benefits without disclosing health and safety risks.  Had Defendants disclosed those issues, rather than falsely advertising Monat Products' abilities, consumers would have not purchased or paid significantly less for Monat Products.

323.    In making and disseminating the statements alleged herein, Defendants knew, or should have known, their representations, advertisements, and statements were untrue and misleading in violation of California law.  Plaintiffs and other California Class members based their purchasing decisions on Defendants' omitted material facts.  The revenues to Defendants attributable to Products sold in those false and misleading advertisements amount to hundreds of millions of dollars.  Plaintiffs and California Class members were injured in fact and lost money and property as a result.

324.    The misrepresentations and non-disclosures by Defendants of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute violations of Cal. Bus. & Prof Code §§ 17500, et seq.

325.    As a result of Defendants' wrongful conduct, Plaintiffs and the California Class members lost money.  Plaintiffs and the California Class members are therefore entitled to restitution as appropriate for this cause of action.

326.    Plaintiffs and California Class members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs

under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

     **D.**      **Illinois**

## COUNT XIV

### ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### 815 ILCS §§ 505, et seq.

327.     Plaintiff Shaw ("Plaintiff" for purposes of this count) brings this claim individually and on behalf of the Illinois Class.

328.     Defendants constitute a "person" as defined by 815 ILCS §§ 505/1(c).

329.     Plaintiff and Illinois Class members are "consumers" as defined by 815 ILCS §§ 505/1(e).

330.     Defendants' conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 ILCS § 505/1(f).  Defendants' conduct is described in full detail above.

331.     Defendants' deceptive, unfair, and unlawful trade acts or practices, in violation of 815 ILCS § 505/2.

332.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

333.     Defendants intended to mislead Plaintiff and Illinois Class members and induce them to rely on their misrepresentations and omissions.

334.     The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid; this substantial injury outweighed any benefit to consumers or to competition.

335.    Defendants acted intentionally, knowingly, and maliciously to violate Illinois' Consumer Fraud Act, and recklessly disregarded Plaintiff and Illinois Class members' rights. Defendants' knowledge of Monat Products' abilities and health and safety risks from their use put them on notice that Monat Products were not as they advertised.

336.    As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Illinois Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Monat Products, and increased time and expense in treating the damage they caused.

337.    Plaintiff and Illinois Class members seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT XV

### ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### 815 ILCS §§ 510/2, et seq.

338.    Plaintiff Shaw ("Plaintiff," for purposes of this Count) brings this claim individually and on behalf of the Illinois Class.

339.    Defendants constitute a "person" as defined by 815 ILCS §§ 510/1(5).

340.    Defendants engaged in deceptive trade practices in the conduct of its business, in violation of 815 ILCS §§ 510/2(a), including:

   a.   Knowingly designing, developing, manufacturing, advertising, and selling Monat Products with false curative health claims and significant defects that result in health and safety risks when used so that consumers did not receive the benefit of their bargain;

b.   Marketing and selling Monat Products that relied upon false curative health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

c.   Making affirmative public representations about curative benefits of Monat Products while, at the same time, not ensuring that consumer health and safety; and

d.   Concealing material information from consumers regarding the true nature of the defects in Monat Products in order to impact consumer purchasing behavior.

341.   Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

342.   The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and Illinois Class members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

343.   As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Illinois Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Monat Products, and increased time and expense in treating damages caused by the Products.

344.   Plaintiff and Illinois Class members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees.

E.   **Iowa**

## COUNT XVI

**IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT**
**Iowa Code § 714H**

83

345.     Plaintiffs McWhorters ("Plaintiffs," for purposes of this Count) bring this claim individually and on behalf of the Iowa Class.

346.     Defendants constitute a "person" as defined by Iowa Code § 714H.2(7).

347.     Plaintiffs and Iowa Class members are "consumers" as defined by Iowa Code § 714H.2(3).

348.     Defendants' conduct described herein related to the "sale" or "advertisement" of "merchandise" as defined by Iowa Code §§ 714H.2(2), (6), & (8).

349.      Defendants engaged in unfair, deceptive, and unconscionable trade practices, in violation of the Iowa Private Right of Action for Consumer Frauds Act, as described throughout and herein.

350.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

351.     Defendants intended to mislead Plaintiff and Iowa Class members and induce them to rely on its misrepresentations and omissions.

352.     Defendants acted intentionally, knowingly, and maliciously to violate Iowa's Private Right of Action for Consumer Frauds Act, and recklessly disregarded Plaintiff and Iowa Class members' rights.  Defendants' knowledge of Monat Products' true abilities and health and safety risks put them on notice that the Monat Products were not as it advertised.

353.     As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Iowa class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Monat Products, and increased time and expense in treating damage from the use of Monat Products.

84

354.     Plaintiff is contemporaneously providing the requisite notice to the Iowa Attorney General, the office of which approved the filing of this class action lawsuit pursuant to Iowa Code § 714H.7.

355.     Plaintiff and Iowa Class members seek all monetary and non-monetary relief allowed by law, including injunctive relief, damages, punitive damages, and reasonable attorneys' fees and costs.

F.     **Louisiana**

**COUNT XVII**

**LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW,**
**La. Rev. Stat. Ann. §§ 51:1401, et seq.**

356.     Plaintiff Hoffpauir ("Plaintiff," for purposes of this Count) brings this claim individually and on behalf of the Louisiana Class.

357.     Defendants, Plaintiff, and the Louisiana Class members are "persons" within the meaning of the La. Rev. Stat. Ann. § 51:1402(8).

358.     Plaintiff and Louisiana Class members are "consumers" within the meaning of La. Rev. Stat. Ann. § 51:1402(1).

359.     Defendants engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. Ann. § 51:1402(10).

360.     The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann. § 51:1405(A).  Unfair acts are those that offend established public policy, while deceptive acts are practices that amount to fraud, deceit, or misrepresentation.

361.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

362.     Defendants misled Plaintiff and Louisiana Class members and induced them to rely on its misrepresentations and omissions.

363.     Defendants' unfair and deceptive acts and practices were immoral, unethical, oppressive, and unscrupulous.  These acts caused substantial injury to Plaintiff and Louisiana Class members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

364.     Defendants violated the Unfair Trade Practices and Consumer Protection Law, and recklessly disregarded Plaintiff and Louisiana Class members' rights.  Defendants' knowledge of the Monat Products' abilities and health and safety risks put them on notice that the Monat Products were not as they advertised.

365.     Had Defendants disclosed to Plaintiff and Louisiana Class members that it misrepresented the Monat Products, omitted material information regarding the defects (including health and safety risk as alleged herein), and was otherwise engaged in deceptive, common business practices, Defendants would have been unable to continue in business and it would have been forced to disclose the truth and health and safety risks from the use of Monat Products. Instead, Defendants represented that Monat Products were FDA approved to grow and strengthen hair and prevent aging while failing to health and safety risks from their use.  Plaintiff and Louisiana Class members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

366.     As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Louisiana Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Monat Products, and increased time

and expense in treating the damage caused by them.

367.     Plaintiff and Louisiana Class members seek all monetary and non-monetary relief allowed by law, including actual damages; treble damages for Defendants' knowing violations of the Louisiana CPL; declaratory relief; attorneys' fees; and any other relief that is just and proper.

**G**.     **Maryland**

## COUNT XIII

### MARYLAND CONSUMER PROTECTION ACT
### Md. Comm. Code §§ 13-301, et seq.

368.     Plaintiff Klinger-Luht ("Plaintiff," for purposes of this Count) brings this claim individually and on behalf of the Maryland Class.

369.     Defendants constitute a person as defined by Md. Comm. Code § 13-101(h).

370.     Defendants' conduct as alleged herein related to "sales," "offers for sale," or "bailment" as defined by Md. Comm. Code § 13-101(i) and § 13-303.

371.     Maryland class members are "consumers" as defined by Md. Comm. Code § 13-101(c).

372.     Defendants advertises, offers, or sell "consumer goods" or "consumer services" as defined by Md. Comm. Code § 13-101(d).

373.     Defendants advertised, offered, or sold goods or services in Maryland and engaged in trade or commerce directly or indirectly affecting the people of Maryland.

374.     Defendants engaged in unfair and deceptive trade practices, in violation of Md. Comm. Code § 13-301, including: (a) false or misleading oral or written representations that have the capacity, tendency, or effect of deceiving or misleading consumers; (b) representing that consumer goods or services have a characteristic that they do not have; (c) representing that

consumer goods or services are of a particular standard, quality, or grade that they are not; (d) failing to state a material fact where the failure deceives or tends to deceive; (e) advertising or offering consumer goods or services without intent to sell, lease, or rent them as advertised or offered; (f) deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of consumer goods or services or the subsequent performance with respect to an agreement, sale lease or rental.

375.    Defendants engaged in these unfair and deceptive trade practices in connection with offering for sale or selling consumer goods or services or with respect to the extension of consumer credit, in violation of Md. Comm. Code § 13-303.

376.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

377.    Had Defendants disclosed to Plaintiff and Class members that they misrepresented Monat Products, omitted material information regarding the defects (including health and safety risks as alleged herein), and was otherwise engaged in deceptive, common business practices, Defendants would have been unable to continue in business and they would have been forced to disclose the truth and uniform defects in Monat Products. Instead, Defendants represented that Monat Products were FDA approved to grow and strengthen hair and prevent aging. Plaintiff and Maryland Class members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

378.    Defendants recklessly disregarded Plaintiff and Maryland Class members' rights. Defendants' knowledge of the Monat Products' abilities and health and safety risks put them on notice that Monat Products were not as they advertised.

379.     As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Maryland Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Monat Products, and increased time and expense in treating the damage they caused.

380.     Plaintiff and Maryland Class members seek all monetary and non-monetary relief allowed by law, including damages, disgorgement, injunctive relief, and attorneys' fees and costs.

**H**.     **Michigan**

### COUNT XIX

**MICHIGAN CONSUMER PROTECTION ACT**
**Mich. Comp. Laws Ann. §§ 445.903, et seq.**

381.     Plaintiff Stefforia ("Plaintiff," for purposes of this Count) brings this claim individually and on behalf of the Michigan Class.

382.     Defendants and Michigan Class members are "persons" as defined by Mich. Comp. Laws Ann. § 445.903(d).

383.     Defendants advertised, offered, or sold goods or services in Michigan and engaged in trade or commerce directly or indirectly affecting the people of Michigan, as defined by Mich. Comp. Laws Ann. § 445.903(g).

384.     Defendants engaged in unfair, unconscionable, and deceptive practices in the conduct of trade and commerce, in violation of Mich. Comp. Laws Ann. § 445.903(1), including: (a) representing that its goods and services have characteristics, uses, and benefits that they do not have, in violation of Mich. Comp. Laws Ann. § 445.903(1)(c); (b) representing that its goods and services are of a particular standard or quality if they are of another in violation of Mich. Comp. Laws Ann. § 445.903(1)(e); (c) making a representation or statement of fact material to the

transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, in violation of Mich. Comp. Laws Ann. § 445.903(1)(bb); and (d) failing to reveal facts that are material to the transaction in light of representations of fact made in a positive matter, in violation of Mich. Comp. Laws Ann. § 445.903(1)(cc).

385.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

386.    Defendants induced the Plaintiff and Michigan Class members to rely on its misrepresentations and omissions.

387.    Defendants recklessly disregarded Plaintiff and Michigan Class members' rights. Defendants' knowledge of Monat Products' abilities and health and safety risks put them on notice that Monat Products were not as they advertised.

388.    As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Michigan Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Monat Products, and increased time and expense in treating the damage caused by them.

389.    Plaintiff and Michigan Class members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $250, injunctive relief, and any other relief that is just and proper.

I.      **Minnesota**

**COUNT XX**

**MINNESOTA CONSUMER FRAUD ACT**
**Minn. Stat. §§ 325F.68, et seq. and Minn. Stat. §§ 8.31, et seq.**

390.    Plaintiff Row ("Plaintiff," for purposes of this Count) brings this claim

individually and on behalf of the Minnesota Class.

391.    Defendants, Plaintiff, and members of the Minnesota class are each a "person" as defined by Minn. Stat. § 325F.68(3).

392.    Defendants goods, services, commodities, and intangibles (specifically, its Monat Products) are "merchandise" as defined by Minn. Stat. § 325F.68(2).

393.    Defendants engaged in "sales" as defined by Minn. Stat. § 325F.68(4).

394.    Defendants engaged in fraud, false pretense, false promise, misrepresentation, misleading statements, and deceptive practices in connection with the sale of merchandise, in violation of Minn. Stat. § 325F.69(1), as described herein.

395.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

396.    Defendants' fraudulent, misleading, and deceptive practices affected the public interest, including millions of Minnesotans who purchased and/or used Monat Products.

397.    As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Monat Products, and increased time and expense in treating the damages caused by the Products.

398.    Plaintiff and Minnesota Class members seek all monetary and non-monetary relief allowed by law, including damages, injunctive or other equitable relief, and attorneys' fees, disbursements, and costs.

## COUNT XXI

**MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**Minn. Stat. §§ 325D.43, et seq.**

399.     Plaintiff Row ("Plaintiff," for purposes of this Count) brings this claim individually and on behalf of the Minnesota Class.

400.     By engaging in deceptive trade practices in the course of its business and vocation, directly or indirectly affecting the people of Minnesota, Defendants violated Minn. Stat. § 325D.44, including the following provisions: representing that its goods and services had characteristics, uses, and benefits that they did not have, in violation of Minn. Stat. § 325D.44(1)(5); representing that goods and services are of a particular standard or quality when they are of another, in violation of Minn. Stat. § 325D.44(1)(7); advertising goods and services with intent not to sell them as advertised, in violation of Minn. Stat. § 325D.44(1)(9); and engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of Minn. Stat. § 325D.44(1)(13).

401.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

402.     Had Defendants disclosed to Plaintiff and Minnesota Class members that it misrepresented the Monat Products, omitted material information regarding defects (including health and safety risk as alleged herein), and was otherwise engaged in deceptive, common business practices, Defendants would have been unable to continue in business and it would have been forced to disclose the uniform defects in Monat Products.  Instead, Defendants represented that Monat Products were FDA approved and guaranteed to grow and strengthen hair and prevent aging.  Plaintiff and Minnesota Class members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

403.      Defendants' knowledge of Monat Products' abilities and health and safety risks put them on notice that Monat Products were not as they advertised.

404.      As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Minnesota Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Monat Products, and increased time and expense in treating the damages they caused.

405.      Plaintiff and Minnesota Class members seek all monetary and non-monetary relief allowed by law, including injunctive relief and attorneys' fees and costs.

**J**.              **Missouri**

**COUNT XXII**

**MISSOURI MERCHANDISE PRACTICES ACT**
**Mo. Rev. Stat. §§ 407.010, et seq.**

406.      Plaintiff Slover-Dorsey ("Plaintiff," for purposes of this Count) brings this claim individually and on behalf of the Missouri Class.

407.      Defendants are each a "person" as defined by Mo. Rev. Stat. § 407.010(5).

408.      Defendants advertised, offered, or sold goods or services in Missouri and engaged in trade or commerce directly or indirectly affecting the people of Missouri, as defined by Mo. Rev. Stat. § 407.010(4), (6) and (7).

409.      Plaintiff and Missouri Class members purchased or leased goods or services primarily for personal, family, or household purposes.

410.      Defendants engaged in unlawful, unfair, and deceptive acts and practices, in connection with the sale or advertisement of merchandise in trade or commerce, in violation of Mo. Rev. Stat. § 407.020(1), as described herein.

93

411.     Defendants representations and omissions were material because they were likely to deceive reasonable consumers.

412.     Defendants recklessly disregarded Plaintiff and Missouri class members' rights. Defendants' knowledge of the Monat Products' abilities and safety and health risk put them on notice that Monat Products were not as they advertised.

413.     As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Monat Products, and increased time and expense in treating the damages caused by the Products.

414.     Plaintiff and Missouri Class members seek all monetary and non-monetary relief allowed by law, including actual damages, punitive damages, attorneys' fees and costs, injunctive relief, and any other appropriate relief.

**K**.          **New York**

**COUNT XXIII**

**NEW YORK GENERAL BUSINESS LAW**
**N.Y. Gen. Bus. Law §§ 349, et seq.**

415.     Plaintiff D'Alessandro ("Plaintiff," for purposes of this Count) brings this claim individually and on behalf of the New York Class.

416.     Defendants engaged in deceptive acts or practices in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, as described herein.

417.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

94

418.     Defendants recklessly disregarded Plaintiff and New York Class members' rights.  Defendants' knowledge of Monat Products' abilities and health and safety risks put them on notice that Monat Products were not as they advertised.

419.     As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Monat Products, and increased time and expense in treating the damage that the Products caused.

420.     Defendants' deceptive and unlawful acts and practices complained of herein affected the public interest and consumers at large, including the millions of New Yorkers who purchased and/or used Monat Products.

421.     The above deceptive and unlawful practices and acts by Defendants caused substantial injury to Plaintiff and New York Class members that they could not reasonably avoid.

422.     Plaintiff and New York Class members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $50 (whichever is greater), treble damages, injunctive relief, and attorney's fees and costs.

**L.     Ohio**

### COUNT XXIV

**OHIO CONSUMER SALES PRACTICES ACT,**
**Ohio Rev. Code §§ 1345.01, et seq.**

423.     Plaintiff Maur ("Plaintiff," for purposes of this Count) brings this claim individually and on behalf of the Ohio Class.

424.     Plaintiff and Ohio Class members are "persons," as defined by Ohio Rev. Code § 1345.01(B).

425.     Defendants were each a "supplier" engaged in "consumer transactions," as defined by Ohio Rev. Code §§ 1345.01(A) & (C).

426.     Defendants advertised, offered, or sold goods or services in Ohio and engaged in trade or commerce directly or indirectly affecting the people of Ohio.

427.     Defendants engaged in unfair and deceptive acts and practices in connection with a consumer transaction, in violation of Ohio Rev. Code §§ 1345.02, including: representing that their goods, services, and intangibles had performance characteristics, uses, and benefits that they did not have, in violation of Ohio Rev. Code § 1345.02(B)(1); and representing that their goods, services, and intangibles were of a particular standard or quality when they were not, in violation of Ohio Rev. Code § 1345(B)(2).

428.     Defendants engaged in unconscionable acts and practices in connection with a consumer transaction, in violation of Ohio Rev. Code Ann. § 1345.03, including: knowingly taking advantage of the inability of Plaintiff and the Ohio Class to reasonably protect their interest because of their ignorance of the issues discussed herein (Ohio Rev. Code Ann. § 1345.03(B)(1)); and requiring Plaintiff and the Ohio Class to enter into a consumer transaction on terms that Defendants knew were substantially one-sided in favor of Defendants (Ohio Rev. Code Ann. § 1345.03(B)(5)).

429.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

430.     Defendants recklessly disregarded Plaintiff and Ohio Class members' rights. Defendants' knowledge of Monat Products' abilities and health and safety risks put them on notice that Monat Products were not as they advertised.

431.     Defendants' unfair, deceptive, and unconscionable acts and practices complained

of herein affected the public interest, including the millions of Ohioans who purchased and/or used Monat Products.

432.    As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Ohio Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Monat Products, and increased time and expense in treating the damages caused by the Products.

433.    Plaintiff and the Ohio Class members seek all monetary and non-monetary relief allowed by law, including declaratory and injunctive relief, the greater of actual and treble damages or statutory damages, attorneys' fees and costs, and any other appropriate relief.

## COUNT XXV

### OHIO DECEPTIVE TRADE PRACTICES ACT
### Ohio Rev. Code §§ 4165.01, et seq.

434.    Plaintiff Maur ("Plaintiff," for purposes of this Count) brings this claim individually and on behalf of the Ohio Class.

435.    Defendants, Plaintiff, and Ohio Class members are a "person," as defined by Ohio Rev. Code § 4165.01(D).

436.    Defendants advertised, offered, or sold goods or services in Ohio and engaged in trade or commerce directly or indirectly affecting the people of Ohio.

437.    Defendants engaged in deceptive trade practices in the course of its business and vocation, in violation of Ohio Rev. Code § 4165.02, including: representing that their goods and services have characteristics, uses, benefits, or qualities that they do not have, in violation of Ohio Rev. Code § 4165.02(A)(7); representing that their goods and services are of a particular standard or quality when they are of another, in violation of Ohio Rev. Code § 4165.02(A)(9); and

advertising their goods and services with intent not to sell them as advertise, in violation of Ohio Rev. Code § 4165.02(A)(11).

438.   Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

439.   Defendants recklessly disregarded Plaintiff and Ohio Class members' rights. Defendants' knowledge of the Monat Products' abilities and health and safety risks put them on notice that Monat Products were not as they advertised.

440.   As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Ohio Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Monat Products, and increased time and expense in treating the damages they caused.

441.   Plaintiff and Ohio Class members seek all monetary and non-monetary relief allowed by law, including injunctive relief, actual damages, attorneys' fees, and any other relief that is just and proper.

M.   **Oklahoma**

**COUNT XXVI**

**OKLAHOMA CONSUMER PROTECTION ACT**
**Okla. Stat. Tit. 15, §§ 751, et seq.**

442.   Plaintiff Alabaster ("Plaintiff," for purposes of this Count) brings this claim individually and on behalf of the Oklahoma Class.

443.   Defendants are each a "person," as meant by Okla. Stat. tit. 15, § 752(1).

444.   Defendants' advertisements, offers of sales, sales, and distribution of goods, services, and other things of value constituted "consumer transactions" as meant by Okla. Stat. tit.

15, § 752(2).

445.     Defendants, in the course of its business, engaged in unlawful practices in violation of Okla. Stat. tit. 15, § 753, including the following: making false representations, knowingly or with reason to know, as to the characteristics, uses, and benefits of the subjects of its consumer transactions, in violation of Okla. Stat. tit. 15, § 753(5); representing, knowingly or with reason to know, that the subjects of their consumer transactions were of a particular standard when they were of another, in violation of Okla. Stat. tit 15, § 753(7); advertising, knowingly or with reason to know, the subjects of their consumer transactions with intent not to sell as advertised, in violation of Okla. Stat. tit 15, § 753 (8); committing unfair trade practices that offend established public policy and was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers as defined by section 752(14), in violation of Okla. Stat. tit. 15, § 753(20); and committing deceptive trade practices that deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person as defined by section 752(13), in violation of Okla. Stat. tit. 15, § 753(20).

446.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

447.     Defendants intended to mislead Plaintiff and Oklahoma class members and induce them to rely on their misrepresentations and omissions.

448.     Had Defendants disclosed to Plaintiff and Oklahoma Class members that they misrepresented Monat Products, omitted material information regarding the defects (including health and safety risks as alleged herein), and was otherwise engaged in deceptive, common business practices, Defendants would have been unable to continue in business and they would have been forced to disclose the truth and uniform defects in Monat Products.  Instead, Defendants

represented that Monat Products were FDA approved, clinically tested, proven and guaranteed to grow and strengthen hair and prevent aging. Plaintiff and the Oklahoma class members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

449. The above unlawful practices and acts by Defendants were immoral, unethical, oppressive, unscrupulous, and substantially injurious. These acts caused substantial injury to Plaintiff and Oklahoma class members.

450. Defendants acted intentionally, knowingly, and maliciously to violate Oklahoma's Consumer Protection Act, and recklessly disregarded Plaintiff and Oklahoma class members' rights. Defendants' knowledge of Monat Products' abilities and health and safety risks put them on notice that Monat Products were not as they advertised.

451. As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Oklahoma Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Monat Products, and increased time and expense in treating the damages they caused.

452. Plaintiff and Oklahoma Class members seek all monetary and non-monetary relief allowed by law, including actual damages, civil penalties, and attorneys' fees and costs.

**N.** **Texas**

## COUNT XXVII

**TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT**
**Texas Bus. & Com. Code §§ 17.41, et seq.**

453. Plaintiff Johnston ("Plaintiff," for purposes of this Count) brings this claim individually and on behalf of the Texas Class.

454.     Defendants are each a "person," as defined by Tex. Bus. & Com. Code § 17.45(3).

455.     Plaintiffs and the Texas Class members are "consumers," as defined by Tex. Bus. & Com. Code § 17.45(4).

456.     Defendants advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code § 17.45(6).

457.     Defendants engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code § 17.46(b), including: representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have; representing that goods or services are of a particular standard, quality or grade, if they are of another; and advertising goods or services with intent not to sell them as advertised.

458.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

459.     Had Defendants disclosed to Plaintiff and Texas Class members that they misrepresented Monat Products, omitted material information regarding defects (including health and safety risks as alleged herein), and was otherwise engaged in deceptive, common business practices, Defendants would have been unable to continue in business and they would have been forced to disclose the truth and uniform defects in Monat Products.   Instead, Defendants represented that Monat Products were FDA approve, clinically tested, proven and guaranteed to grow and strengthen hair and prevent aging.   Plaintiff and Texas Class members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

460.     Defendants had a duty to disclose the above facts due to the circumstances of this case.  Defendants' duty to disclose arose from its: possession of exclusive knowledge regarding the defects in Monat Products; and incomplete representations about Monat Products.

461.     Defendants engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3).  Defendants engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

462.     Consumers, including Plaintiffs and Texas Class members, lacked knowledge about the above business practices, omissions, and misrepresentations because this information was known exclusively by Defendants.

463.     Defendants took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree, with reckless disregard of the unfairness that would result. The unfairness resulting from Defendants' conduct is glaringly noticeable, flagrant, complete, and unmitigated.

464.     Defendants recklessly disregarded Plaintiff and Texas Class members' rights. Defendants' knowledge of Monat Products' abilities and health and safety risks put them on notice that Monat Products were not as they advertised.

465.     As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Texas Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Monat Products, and increased time and expense in treating damages they caused.

466.     Defendants' violations present a continuing risk to Plaintiffs and Texas Class

102

members as well as to the general public.

467.     Defendants received or are contemporaneously receiving notice pursuant to Tex. Bus. & Com. Code Ann. § 17.505 concerning its wrongful conduct as alleged herein by Plaintiff and Texas Class members.

468.     However, sending pre-suit notice pursuant to Tex. Bus. & Com. Code Ann. § 17.505 is an exercise in futility for Plaintiff, as Defendants have already been informed of the allegedly unfair and unlawful conduct as described herein as of the date of the first-filed lawsuit, and have yet to offer Class members remedy in accordance with similar consumer protection statute.

469.     Defendants' actions constitute uniform business practices across the Class, so that all actions Defendants took with respect to Class members satisfy the "commonality" prong of Fed. R. Civ. P. 23.   No individualized issues concerning Defendants' business practices predominate so as to render class treatment inappropriate.

470.     Plaintiff and the Texas Class seek all monetary and non-monetary relief allowed by law, including economic damages, damages for mental anguish, treble damages for each act committed intentionally or knowingly, court costs, reasonably and necessary attorneys' fees, injunctive relief, and any other relief which the court deems proper.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all other Class members, both Nationwide and Statewide, respectfully request that the Court enter an Order:

A.     Declaring that this action is a proper class action, certifying the Nationwide Classes as requested herein, designating Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as Class Counsel;

B.      In the alternative, declaring that this action is a proper class action, certifying the individual state Classes as requested herein, designating Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as Class Counsel;

C.      Enjoining Defendants from continuing the unfair business practices alleged in this Complaint;

D.      Ordering Defendants to pay actual and statutory damages (including punitive damages) and restitution to Plaintiffs and the other Class members, as allowable by law;

E.      Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

F.      Ordering Defendants to pay attorneys' fees and costs and expenses; and

G.      Ordering such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: October 1, 2018

Respectfully submitted,

/s/ *Julie Braman Kane*
Julie Braman Kane
Florida Bar No.: 980277
julie@colson.com
Latoya C. Brown
Florida Bar No.: 105768
latoya@colson.com
**COLSON HICKS EIDSON**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444

*Plaintiffs' Lead and Liaison Counsel*

| | |
|---|---|
| **ANDERSEN SLEATER SIANNI LLC**<br>Jessica J. Sleater<br>1250 Broadway, 27th FL<br>New York, NY 100001<br>Tel.: (646) 599-9848<br>Fax: (302) 595-9321<br>Email: jessica@andersensleater.com<br><br>*Plaintiffs' Steering Committee* | **VARNELL & WARWICK, P.A.**<br>Janet R. Varnell<br>P.O. Box 1870<br>Lady Lake, FL 32158<br>Tel.: (352) 753-8600<br>Fax: (352) 504-3301<br>jvarnell@varnellandwarwick.com<br><br>*Plaintiffs' Steering Committee* |
| **MORGAN & MORGAN, P.A.**<br>John A. Yanchunis,<br>201 N. Franklin Street, 7th Fl.<br>Tampa, FL 33602<br>Tel: (813) 223-5505<br>Fax: (813) 223-5402<br>Email: jyanchunis@forthepeople.com<br><br>*Plaintiffs' Steering Committee* | |

## <u>CERTIFICATE OF ELECTRONIC FILING AND SERVICE</u>

I HEREBY CERTIFY, that on October 1, 2018, I caused the foregoing document to be electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ <em>Julie Braman Kane</em>
Julie Braman Kane
