# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

MDL No. 2841
Master File No. 18-MD-02841-GAYLES

IN RE:

MONAT HAIR CARE PRODUCTS MARKETING,
SALES PRACTICES, AND PRODUCTS LIABILITY
LITIGATION
_____

THIS DOCUMENT RELATES TO ALL CASES
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendants' Motion to Dismiss Plaintiffs' First Amended Master Consolidated Class Action Complaint [ECF No. 114] ("Motion"). The Court has reviewed the Motion and the applicable law and is otherwise fully advised. For the reasons that follow, the Motion is granted in part and denied in part.

**I.  BACKGROUND**[1]

This action is about hair care products that did not perform as promised. Rather than promoting healthy hair growth, Plaintiffs contend that the products at issue cause hair loss and scalp irritation.

    **A.  Defendants and The Products**

Defendants Monat Global Corp. ("Monat"), Alcora Corporation ("Acora"), and B&R Products ("B&R") (collectively "Defendants") comprise a family-controlled beauty conglomerate that designs, manufactures, markets, and distributes the eight hair-treatment systems at issue in this action (the "Products"). Compl. ¶ 1, [ECF No. 99]. Alcora—the

---

[1] Because the Court is proceeding on a Motion to Dismiss, it accepts Plaintiffs' allegations as true for purposes of this Order. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

umbrella organization for Monat and B&R—is owned, controlled, and operated by the Urdaneta family. *Id.* ¶¶ 24, 26. Monat, a multinational company that markets and sells the Products, is a wholly owned subsidiary of Alcora. *Id.* ¶ 23. B&R is also a subsidiary of Alcora and is the sole manufacturer of the Products. *Id.* ¶ 25. The Urdaneta family controls the operations of each of the Defendants.[2] *Id.*

The Products contain the same four key ingredients: Proctine™, Rejuvenique™, Cipixyl™, and Crodasorb™ (the "Key Ingredients"). *Id.* ¶¶ 60, 62. The Key Ingredients are a proprietary mix of several ingredients not listed on the Products' labels. *Id.* ¶ 61.

### B. Defendants' Marketing and Representations

Defendants sell the Products via Monat's website or through sales agents called Market Partners.[3] *Id.* ¶ 99. Defendants require their Market Partners to use approved marketing material when selling the Products. *Id.* ¶ 103.

In their marketing material, Defendants represent that the Products are clinically tested and proven to promote hair growth, prevent aging, and reduce hair loss. *Id.* ¶ 73. Defendants claim, among other things, that the Key Ingredients reduce the production of hormones contributing to thinning hair and increase follicle strength. In addition, Defendants' marketing material states that the Products are approved by the Food and Drug Administration ("FDA") and do not contain any "toxic" ingredients such as parabens, sulfates, cyclic silicones, BHT, DEA/MEA, polyethylene glycol, phthalates, phenoxyethanol, petrolatum, mineral oil, paraffin wax, triclosan, plastic microbeads, formaldehyde releasers, gluten, harmful colors, or harmful

---

[2] Alcora co-founder and director, Luis Urdaneta, serves as the chairman of B&R and Monat. Compl. ¶ 27. Alcora co-founder, Rayner Urdaneta, serves as Chief Executive Officer for Monat, B&R, and Alcora. *Id.* Francisco Urdaneta is Chief of Staff for Monat and Alcora. *Id.*

[3] Defendants use a sales structure sometimes referred to as "multi-level marketers." Compl. ¶ 101. According to the Federal Trade Commission, "a multi-level marketer (MLM) distributes products or services through a network of salespeople who are not employees of the company and do not receive a salary or wage . . . [an MLM] does not directly recruit its salesforce, but relies upon existing salespeople to recruit additional salespeople, which creates multiple levels of 'distributors' or 'participants' organized in 'downlines.'" *Id.*

fragrances. *Id.* ¶¶ 64, 81, 82. Despite Defendants' representations to the contrary, the Products contain several harsh chemicals, including Cocomidopropyl Betaine, Benzyl Alcohol, Red Clover Leaf Extract, Butylene Glycol, ethanol, and sulfates. *Id.* ¶¶ 176–178. Defendants' marketing material includes "before" and "after" photos depicting "customers" with unruly hair before use of the Products and long shiny hair after use. But these photos are stock images purchased by Defendants—not real customers. *Id.* ¶ 69.

### C. Customer Complaints

By 2016, the Better Business Bureau ("BBB") had received over 825 complaints by customers about Defendants, over 630 of which related to the Products. *Id.* ¶ 123. In the complaints, customers stated that the Products caused their hair to fall out and caused sores and lesions on their scalps. *Id.* ¶ 124. In addition, between August 29, 2017, and March 27, 2019, the FDA received 237 adverse incident reports from customers related to the Products. *Id.* ¶ 146. Like the BBB complaints, the FDA adverse incident reports indicate that the Products caused the customers' hair loss, head sores, and severe skin reactions. *Id.*

When customers complained directly to Defendants about the Products, Defendants told them that the various adverse reactions were part of an intended "detox process." *Id.* ¶ 149. Defendants encouraged the upset customers to continue using the Products for at least 90 days, while the scalp "detoxed." *Id.* Monat's President later acknowledged that the purported detoxification process was not scientifically supported. *Id.* ¶ 157.

### D. The FDA Inspection

In March of 2018, the FDA inspected Defendants' manufacturing facilities. *Id.* ¶ 168. Following the inspection, the FDA issued a report (the "FDA Report") noting, in part, that the Products "may have become contaminated with filth" during manufacture. *Id.* at ¶ 170. In

addition, the FDA Report stated that Defendants failed "to sample and test raw materials for conformance with specifications to ensure the absence of filth, microorganisms, and or other adulterants prior to processing or usage." *Id.* at ¶ 171.

**E.     Plaintiffs**

Plaintiffs are eighteen former users of the Products who claim that the Products did not perform as promised and caused them to suffer hair loss, scalp irritation, and severe skin reactions. Plaintiffs allege that (1) inclusion of the Key Ingredients and lack of biocides in the Products constitutes a design defect, (2) contamination of the Products in Defendants' facilities resulted in a manufacturing defect, and (3) the Products are more dangerous than a reasonable consumer would expect based on their packaging and advertising. Plaintiffs also contend that Defendants misrepresented the efficacy of the Products. Plaintiffs seek to represent a nationwide class of all consumers who have suffered economic damages and bodily injury resulting from their use of the Products.

**F.     Procedural Background[4]**

On December 20, 2018, Plaintiffs filed their First Amended Consolidated Master Class Action Complaint asserting claims for (1) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), (2) violation of the Magnuson–Moss Warranty Act, (3) breach of implied warranty of merchantability, (4) violation of express warranty, (5) negligence, (6) negligence–failure to warn, (7) strict liability–design defect, (8) strict liability–failure to warn, (9) strict liability–manufacturing defect, (10) unjust enrichment, and, in the alternative, (11–26)

---

[4] On June 6, 2018, the Judicial Panel on Multidistrict Litigation transferred a number of related actions brought by Defendants' customers to the Southern District of Florida pursuant to 28 U.S.C. § 1407 for consolidated pretrial proceedings. Plaintiffs' First Amended Consolidated Master Class Action Complaint aggregated the individual complaints.

violations of various state consumer protection laws.[5] Defendants have moved to dismiss arguing Plaintiffs (1) fail to allege a product defect or causation, (2) have no standing to bring a claim for injunctive relief under FDUTPA, (3) cannot allege a claim for unjust enrichment, (4) fail to allege claims against B&R, and (5) are time-barred from bringing many of their state consumer protection claims.

## II.  LEGAL STANDARDS

To survive a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

---

[5] The alternate state consumer protection claims fall under Alaska's Consumer Protection Act, Arizona's Consumer Fraud Act, California's Consumer Legal Remedies Act, California's Unfair Competition Law, California's False and Misleading Advertising Law, Illinois's Consumer Fraud and Deceptive Practices Act, Illinois's Uniform Deceptive Trade Practices Act, Iowa's Private Right of Action for Consumer Frauds Act, Maryland's Consumer Protection Act, Michigan's Consumer Protection Act, Minnesota's Consumer Fraud Act, Minnesota's Uniform Deceptive Trade Practices Act, Missouri's Merchandise Practices Act, New York's General Business Law, Oklahoma's Consumer Protection Act, and Texas's Deceptive Trade Practices—Consumer Protection Act .

For Plaintiffs' claims sounding in fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires that Plaintiffs "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b); *see, e.g.*, *Inman v. Am. Paramount Fin.*, 517 F. App'x 744, 748 (11th Cir. 2013). The particularity rule alerts "defendants to the 'precise misconduct with which they are charged' and protect[s] defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). "The application of the rule, however, must not abrogate the concept of notice pleading." *Id*. Rule 9(b) is satisfied if the complaint states:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotation marks omitted).

## III. DISCUSSION

### A. Alleged Defects

Plaintiffs contend that the Products were defective in their design, manufacture, and warnings. These alleged defects form the basis of Plaintiffs' claims for strict liability, negligence, unjust enrichment, and breach of express and implied warranty. In their Motion, Defendants argue that Plaintiffs fail to adequately allege the existence of a defect in the Products. The Court disagrees.[6]

---

[6] Plaintiffs argue that, in addition to properly alleging their FDUTPA, warranty, and negligent failure to warn claims based on a product defect, they also properly allege these claims based on the Products' failures to conform to the Defendants' statements, affirmations, and promises. Defendants do not address this argument in their Reply.

6

At the complaint stage, plaintiffs bringing products liability claims are only required to allege the existence of a defect. "The very nature of a products liability action—where the cause or source of the defect is not obvious to the consumer—would make it difficult for [a plaintiff] to pinpoint a specific source of a defect . . ." *Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 605 (11th Cir. 2008). Indeed, at this stage of the litigation, a plaintiff is not required to plead whether the "defect was due to a product's design or manufacture . . ." *Id*; *see also L&R Structural Corp. v. Maxim Crane Works*, No. 18-21527, 2018 WL 4208316, at *2 (S.D. Fla. July 24, 2018) (holding that at the motion to dismiss stage, "[p]laintiff need only allege the existence of a defect that led to an unreasonably dangerous condition"); *Krywokulski v. Ethicon, Inc.*, No. 8:09-cv-980-T-30MAP, 2010 WL 326166, at *3 (M.D. Fla. Jan. 21, 2010) ("Plaintiff's allegation of a defect alone is sufficient, as mere knowledge of a defect gives defendant enough notice to produce a proper response . . ."). Rather, courts allow plaintiffs to fully ascertain the nature of the alleged defect through discovery. *See Godelia v. Doe 1*, 881 F.3d 1309, 1318 (11th Cir. 2018) ("Contrary to [defendant's] argument, [plaintiff] need not state in his complaint the precise defect that caused [the product] to malfunction."); *L&R Structural*, 2018 WL 4208316, at * 2 (holding that specific defects "are more properly contested at the summary judgment stage after discovery takes place").

Here, Plaintiffs allege that the Products are defective in their design, manufacture, and warnings.[7] Plaintiffs assert that the Products are defective in design because they contain

---

The Court finds that Plaintiffs have adequately alleged their FDUTPA, warranty, and negligent failure to warn claims based on Defendants' purported representations.

[7] Plaintiffs argue that they are entitled to a *Cassisi* inference. Under *Cassisi*, a Plaintiff is entitled to an inference of a defect if a product "malfunctions during normal operation." *Cassisi v. Maytag Co.*, 396 So. 2d 1140, 1148 (Fla. 1st DCA 1981). However, the *Cassisi* inference is only applicable to certain types of products and is generally applied at summary judgment or trial when a plaintiff only has "circumstantial evidence that a malfunction occurred during normal use." *Elias v. Evenflo Co.*, No. 5:04CV36OC10GRJ, 2005 WL 1668427, at *2 (M.D. Fla. July 8, 2005); *see also Gardner v. Ford Motor Co.*, 166 F. Supp. 3d 1261, 1267 (M.D. Fla. 2015) (discussing applicability of *Cassisi* doctrine). Because the Court finds that Plaintiffs have adequately alleged a defect, it does not address, at

7

ingredients—Cocamidopropyl Betaine, Benzyl Alcohol, Red Clover Leaf Extract, Butylene Glycol, and sulfates—which are known to cause allergic reactions and dermatitis. This is sufficient to allege a design defect. *See Hosler v. Alcon*, No. 12-60025, 2012 WL 4792983, at * 6 (S.D. Fla. Oct. 9, 2012) (finding allegation that prescribed eye drops caused corneal scarring sufficient to plead a design defect); *Dimieri v. Medicis Pharm. Corp.*, No. 2:14–cv–176–FtM–38DNF, 2015 WL 1523909, at *3 (M.D. Fla. Apr. 3, 2015) (finding claim adequately alleged where "[p]laintiff state[d] the defect which caused [the product] to be unreasonably dangerous was its active ingredient, Minocycline, which causes hair loss"). While Defendants argue that the Products' ingredients are safe, at this stage of the litigation, the Court must accept as true Plaintiffs' allegations that they are not.

Plaintiffs also allege that the Products suffer a manufacturing defect due to unsanitary conditions at Defendants' facilities and because Defendants failed to inspect source ingredients for contamination.[8] These allegations are sufficient to plead a manufacturing defect. *See Rhodes v. Novartis Pharm Corp.*, No. 5:11–cv–00471–TJC–TBS, 2011 WL 5358554, at *3 (M.D. Fla. Nov. 1, 2011) (holding plaintiff stated a claim for manufacturing defect based on allegation that product was not made in accordance with defendant's specifications or performance standards).

Finally, Plaintiffs allege that the Products' warnings were defective because Defendants knew the Products were causing hair loss and skin lesions but failed to disclose those risks to consumers. Indeed, Plaintiffs contend that Defendants obscured the risk of harm by falsely

---

this time, whether Plaintiffs are entitled to a *Cassisi* inference.
[8] Defendants ask the Court to take judicial notice of the FDA Report and to rely on the Report to find that Plaintiffs mischaracterize its findings. The Court declines to take judicial notice of the Report at this time. To the extent Defendants seek to challenge Plaintiffs' characterization of the Report or the conditions at B&R's facilities, they may do so at summary judgment following discovery.

stating that the Products' negative side effects were due to the body detoxing. These allegations are sufficient to state a claim for failure to warn. *See Dimieri*, 2015 WL 1523909, at *2–3.

### B. Causation

Defendants also argue that Plaintiffs fail to adequately allege that the Products caused them bodily harm. The Court disagrees. Plaintiffs have alleged, in detail, that the Products caused them to lose hair and caused skin lesions and allergic reactions.[9] Plaintiffs might have a difficult time proving that the Products, and not a pre-existing medical condition or simple aging, caused their injuries. But, at this stage of the litigation, Plaintiffs' allegations are sufficient to establish causation. *See Hosler*, 2012 WL 4792983, at *8 (finding allegation that defectively designed product directly caused plaintiff's injuries sufficient to withstand a motion to dismiss).

### C. FDUTPA – Injunctive Relief

In their FDUTPA and alternate state consumer protection claims, Plaintiffs ask the Court to enjoin Defendants' unlawful practices. Defendants argue that Plaintiffs have no constitutional standing to seek injunctive relief. The Court agrees. Plaintiffs clearly alleged in the Complaint that they would not have purchased the Products had they known of the harm. Therefore, Plaintiffs do not intend to purchase the Products in the future. "Although the FDUTPA allows a plaintiff to pursue injunctive relief even where the individual plaintiff will not benefit from an injunction . . . it cannot supplant constitutional requirements. Article III of the Constitution requires that a plaintiff seeking injunctive relief allege a threat of future harm." *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015). Because Plaintiffs fail to allege the threat of future harm, they have no constitutional standing to seek injunctive relief under

---

[9] For their misrepresentation, FDUTPA, warranty, and unjust enrichment claims, Plaintiffs also allege that Defendants' misrepresentations, omissions, and deceptive trade practices caused Plaintiffs economic harm since they paid inflated prices for products that did not perform as promised.

9

FDUTPA or the alternate state consumer protection claims. *Id; see also Ohio State Troopers Assoc., Inc. v. Point Blank Enterprises, Inc.*, 347 F. Supp. 3d 1207, 1227 (S.D. Fla. 2018) (holding that plaintiffs had no Article III standing to pursue a claim for injunctive relief under FDUTPA where the complaint was "devoid of any allegations that the individual [p]laintiffs *continue to wear* the defective [products]") (emphasis in original).

### D. Unjust Enrichment

Defendants argue that Plaintiffs' unjust enrichment claim should be dismissed because (1) Plaintiffs have an adequate remedy at law, (2) it is coextensive with the misconduct asserted in other claims, and (3) it is barred by Plaintiffs' allegation of an express agreement between the parties. The Court disagrees.

The general rule that "equitable remedies are not available under Florida law when adequate legal remedies exist . . . does not apply to unjust enrichment claims." *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714, 722 (11th Cir. 2011), *abrogated on other grounds by State Farm Mut. Auto Ins. Co. v. Williams*, 563 F. App'x 665 (11th Cir. 2014). "Rather, it is only upon a showing that an express contract exists between the parties that the unjust enrichment . . . count fails." *Harris v. Nordyne, LLC,* No. 14-CIV-21884, 2014 WL 12516076, at * 7 (S.D. Fla. Nov. 14, 2014) (quoting *State Farm Mut. Auto Ins. Co. v. Alamonte Springs Diagnostic Imaging, Inc.*, 2011 WL 6450769, at *5 (M.D. Fla Dec. 21, 2001)). "[T]o the extent that a plaintiff has adequate legal remedies under theories of liability other than a claim for breach of an express contract, those remedies do not bar an unjust enrichment claim." *Id.* (quoting *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1337 (S.D. Fla. 2013)). As a result, Plaintiffs may allege, in the alternative, a claim for unjust enrichment even though their FDUTPA claim might provide an adequate legal

remedy. *Id.* ("Thus, the availability of Plaintiffs' FDUTPA claim does not require dismissal of its unjust enrichment claim."). *See also Reilly v. Amy's Kitchen, Inc.*, 13–21525–CIV, 2013 WL 9638985, at *7 & n.3 (S.D. Fla. Dec. 9, 2013) ("Because the Eleventh Circuit has rejected the very argument Defendant makes in support of dismissal of the unjust enrichment claim, and there is no allegation that an express contract exists between the parties, the Court will deny the Motion as to the unjust enrichment claim.").[10]

Defendants also argue that Plaintiffs' unjust enrichment claim is barred because Plaintiffs allege the elements of an express contract: Plaintiffs' promised to pay for, and Defendants promised to provide, the Products. "The party seeking dismissal bears the burden of showing an express contract governs the issue in dispute." *Greenway Nutrients, Inc. v. Selakovic*, No. 18-cv-81104, 2019 WL 1338588, *12 (S.D. Fla. Feb. 14, 2019). And, "[u]ntil an express contract is proven, a motion to dismiss a claim for unjust enrichment on these grounds is premature." *Id.* (quoting *Martorella v. Deutsche Bank Nat'l Trust Co.*, 931 F. Supp. 2d 1218, 1228 (S.D. Fla. 2013)). Defendants do not concede that there is an express contract between the parties. Rather, Defendants merely point to Plaintiffs' allegations of a contract. This is insufficient to support dismissal. *See Martorella*, 931 F. Supp. 2d at 1228 ("[I]t is not upon the allegation of the existence of a contract, but upon a showing that an express contract exists that the unjust enrichment count fails.").

### E.     Claims Against B&R

Defendants argue that Plaintiffs fail to state their FDUTPA and other state consumer

---

[10] Defendants cite to *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348 (S.D. Fla. 2012); *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228 (S.D. Fla. 2007); *Martinez v. Wyerehauser Mortg. Corp.*, 959 F. Supp. 1511 (S.D. Fla. 1996); and *State of Fla. v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288 (S.D. Fla. 2005) for the proposition that unjust enrichment claims must be dismissed where the claim is based on the same wrongful conduct as a legal claim. These cases conflict with other cases in the district and, more importantly, either do not discuss or were decided before the Eleventh Circuit's holding in *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714, 722 (11th Cir. 2011).

protection claims against B&R with particularity as required by Federal Rule of Civil Procedure 9(b).[11] The Court disagrees.

FDUTPA forbids "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204. "The elements comprising a consumer claim for damages under FDUTPA are: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016) (citing *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)).

As described above, the Complaint sets forth specific misrepresentations by B&R's chairman, Luis Urdaneta, its CEO, Raynor Urdaneta, and its vice president of research and development, Jamie Ross, about the safety and efficacy of the Products. *See* Compl. ¶¶ 83–88, 94. Plaintiffs detail the precise interviews, videos, and marketing materials in which those representations were contained and the manner in which the representations misled Plaintiffs. Through their Complaint, Plaintiffs have offered Defendants, including B&R, sufficiently detailed notice of the nature of the unfair practices, when and where they occurred, and how those practices harmed Plaintiffs. This is all that Rule 9(b) requires.

Plaintiffs also argue, alternatively, that B&R is properly named as a defendant in their unfair trade practices claims because B&R was engaged in a joint venture with Monat and Alcora. "A joint venture . . . may be created by express or implied contract, and the contractual relationship must consist of the following elements: (1) a common purpose; (2) a joint

---

[11] While there is disagreement in this district as to whether Rule 9 applies to FDUTPA claims, this Court finds that FDUTPA claims must satisfy Rule 9(b) where such claims sound in fraud. *See Vazquez v. Gen. Motors, LLC*, 17-22209-CIV, 2018 WL 447644, at *6 (S.D. Fla. 2017); *State Farm Mutual Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1328 (S.D. Fla. 2017) ("Federal district courts have split as to whether FDUTPA claims are subject to Rule 9(b) . . . However, where the gravamen of the claim sounds in fraud, as here, the heightened pleading standard of Rule 9(b) applies.").

proprietary interest in the subject matter; (3) the right to share profits and duty to share losses, and (4) joint control or right of control." *Williams v. Obstfeld*, 314 F.3d 1270, 1275–76 (11th Cir. 2002). Here, Plaintiffs allege that Monat, Alcora, and B&R are owned, operated, and controlled by the Urdaneta family and that there is common leadership across the three organizations. In addition, Plaintiffs allege that Defendants share a common purpose and share profits and losses. *Id.* ¶ 30–31. Based on these allegations, the Court finds that Plaintiffs have adequately alleged a joint venture and their unfair trade practices claims may proceed against all Defendants.

F. **Alternate Claims – Statue of Limitations**

Defendants argue that the applicable statutes of limitations bar some of Plaintiffs' state consumer protection claims. Defendants concede that none of the named Plaintiffs' claims are time-barred but argue that some of the state consumer protection claims alleged on behalf of some of the potential class members might be barred by the relevant state statutes of limitations.

The Court finds that it would be premature, at this juncture, to resolve whether the claims of some potential class members are time-barred. These issues are best addressed at the class-certification phase or at summary judgment.

IV. **CONCLUSION**

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Plaintiffs' First Amended Master Consolidated Class Action Complaint [ECF No. 114] is granted in part and denied in part as follows:

1. Plaintiffs' requests for injunctive relief in their FDUTPA and alternate state consumer protection claims are dismissed.

2. The remainder of Plaintiffs' claims may proceed as pled.

3. Defendants shall answer the First Amended Master Consolidated Class Action Complaint within twenty (20) days of the date of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida this 23rd day of October, 2019.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE