UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MDL No. 2841
Master File No. 18-MD-02841-GAYLES
S.D. Fla. Case No. 1:18-cv-20624-DPG

| |
|---|
| IN RE: <br><br> MONAT HAIR CARE PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION |
| THIS DOCUMENT RELATES TO ALL CLASS ACTION CASES |

**PLAINTIFF/COUNTER-DEFENDANT DANA SOHOVICH'S
MOTION TO DISMISS DEFENDANT/COUNTER-PLAINTIFF
MONAT GLOBAL CORP.'S AMENDED COUNTERCLAIM**

Monat's amended counterclaim against Ms. Sohovich for breach of contract repeats the same fatal errors as its first: it fails to allege both a contract and a *prima facie* claim of breach. This time, Defendant's counterclaim should be dismissed with prejudice, as it is evident Monat lacks plausible facts upon which a valid claim against Ms. Sohovich could prevail.

**I.   Introduction**

Monat's single count counterclaim is for alleged breach of a "VIP Agreement." At most, it seeks less than $75.00 in alleged damages. The claim rests on a putative contract requiring Monat to deliver periodic "Flexship" orders to Ms. Sohovich every 30 to 90 days, for a total of at least three orders. Though Monat sent Ms. Sohovich only two Flexship orders, it contends that Ms. Sohovich breached the contract by not paying for the unsent third.

Monat's counterclaim fails because the putative contract on which it rests does not require Ms. Sohovich to pay for a Flexship order that Monat fails to send, nor does it require Ms. Sohovich

to proactively place an order, or pay a cancellation fee, as the counterclaim contends. On the contract's plain, unambiguous terms, it is Monat, not Ms. Sohovich, that failed to perform.

The contract's terms aside, Monat's counterclaim also fails for lack of mutual assent, as Ms. Sohovich never agreed to the putative contract proffered as the basis of the claim.

Both deficiencies warrant dismissal. And as Monat has now had two opportunities to set a valid breach of contract claim, only to repeat the same errors, the dismissal should be with prejudice. *See Anderson v. Vanguard Car Rental USA, Inc.*, 304 F. App'x 830, 832 (11th Cir. 2008) (affirming dismissal with prejudice where plaintiff repeated same error in multiple amended pleadings and where it appeared that further attempts at correcting the error would be futile); *Laurent v. U.S. Trustee*, 196 F. App'x 740, 744 (11th Cir. 2006) (holding that a trial court is not required to give a party more than one opportunity to correct a pleading deficiency).

## II.     Legal Standards

Rule 12(b)(6) requires a plaintiff to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts" are insufficient. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

A court considering a Rule 12(b) motion to dismiss is "generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim." *Schultz v. Am. Airlines, Inc.*, 18-80633-CIV, 2018 WL 7287194, at *2 (S.D. Fla. Sept. 25, 2018) (citing *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th

Cir. 2009)). "[W]here the facts pleaded are insufficient to determine which of the provisions may have been breached, the claim cannot survive a motion to dismiss." *Cavalieri v. Avior Airlines C.A.*, 17-CV-22010, 2018 WL 4194080, at *5-6 (S.D. Fla. Aug. 10, 2018). Moreover, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007).

### III. The Amended Counterclaim fails to allege a material breach of the contract it attaches.

Monat's amended counterclaim is premised on the notion that Ms. Sohovich was required to make three "Flexship" purchases as part of her purported contractual obligation. (D.E. 208, Am. Counterclaim ¶¶ 2, 5, 15.) In pertinent part, the VIP Agreement attached to the amended counterclaim reads as follows:

> **PAYMENT AUTHORIZATION:** I authorize Monat Global to withdraw payment for my VIP Customer order(s) from my credit card … Monat Global is authorized to withdraw payment equal only to the amount of the products, applicable sales tax, and shipping and handling of products that I order, or [of] the VIP Customer Orders I have selected….
>
> **VIP CUSTOMER COMMITMENT:** To qualify for 15% off retail pricing and free shipping on orders of $84 USD/$110 CAD, you commit to placing two or more Flexship orders of $84 USD/$110CAD following your enrollment order. You schedule your first Flexship during enrollment. *By default your next order will ship approximately 30 days later, however this order can be pushed out up to 60 days at a time*. You are not required to receive an order before you push it out. In the VIP Lounge, you can push your order out up to 60 days from "today" whenever you like. This is true of your second Flexship (third order) and subsequent recurring orders as well. Your orders process on the day(s) you designate, at the same great VIP price. You can customize and schedule your shipments online at any time or by contacting Market Partner and Customer Care.

(D.E. 208-1 at 2.) (emphasis added.)

Although Monat asserts that Ms. Sohovich failed to make three qualifying purchases under the VIP Agreement, the allegations are insufficient to state a breach of contract under the actual terms of that agreement. Ms. Sohovich must only pay for Flexship orders Monat actually

completes. Furthermore, where Monat fails to complete a default Flexship order, authorized by the attached VIP Agreement, the contract sets forth no timeframe by which three qualifying Flexship purchases must otherwise be made. Thus, Monat's allegation that Ms. Sohovich has paid for only the two Flexship orders Monat actually completed, and not for the unsent third, does not amount to a breach of the VIP Agreement.

Monat does not allege that it performed all requirements of its contract. It does not allege that it shipped a "default" order to Ms. Sohovich for which it did not receive payment. It also does not allege that Ms. Sohovich was required to make three purchases in a certain timeframe but failed to do so. The amended counterclaim merely states that Ms. Sohovich did not make three purchases as of the date of Monat's pleading. Based on the plain language of the exhibit VIP Agreement, this allegation is insufficient to show a breach.

### IV. The VIP Agreement does not require payment of a "Termination Fee."

In addition to alleging that Ms. Sohovich failed to pay for three Flexship orders, Monat also alleges that Ms. Sohovich breached the VIP Agreement by "failing to pay an Early Termination Fee ..." (Am. Counterclaim ¶ 20)—a remarkable claim given that the referenced VIP Agreement ***does not contain a provision for an early termination fee***. (*See* D.E. 208-1).

The closest the VIP Agreement comes to anything resembling a "fee" of this kind is the fourth bullet point under "Cancellation," which states: "If the VIP cancels their participation in the VIP Customer Program prior to receiving three such shipments, the 15% discount and free shipping previously given to the VIP *may* be recaptured through an automatic and pre-authorized charge to the VIP's credit card. The VIP membership fee in [sic] non-refundable." (*Id.* at 2.) (emphasis added). But because there is no allegation that Ms. Sohovich "cancelled" the VIP Agreement, the applicability of this provision is questionable at best. If the provision applies, the

plain language of the alleged VIP Agreement makes clear that **Monat** had the *option* to "recapture" the 15% discount and free shipping through a charge to Ms. Sohovich's credit card, which in this case it failed to exercise. There is no allegation in the amended counterclaim that Monat has attempted to recover these monies, and its failure to do so in no way supports a plausible breach of contract claim against Ms. Sohovich.

In short, the amended counterclaim does not plead a prima facie breach of any fee provision by Ms. Sohovich, let alone a so-called "Early Termination Fee." On the facts alleged, this claim fails as a matter of law.

### V. Monat's Amended Counterclaim fails to allege a contract or state a claim for breach of contract.

Finally, as discussed below, Monat's Amended Counterclaim fails to state the required elements for the existence of a valid contract. "The creation of a contract requires there to be a mutual or reciprocal assent to a certain and definite proposition, which is commonly referred to as a 'meeting of the minds.'" *CCCS Int'l v. Fontainebleau Resorts, LLC*, 09-21881-CIV, 2010 WL 11505501, at *3 (S.D. Fla. Apr. 13, 2010) (emphasis added). Here, Monat claims that Ms. Sohovich assented to the terms of the VIP Agreement because she provided credit card information to Monat's "Market Partner," Andrea Alexander, by telephone. There is no allegation that Ms. Sohovich ever saw the VIP Agreement, ever signed any VIP agreement, ever "clicked through" a VIP agreement, or ever knew the terms of the alleged VIP Agreement.[1]

---

[1] The week before filing the instant Amended Counterclaim, Monat entered into a settlement with the Florida Attorney General related in part to the conspicuity of the VIP Agreement following the Attorney General's investigation into allegations (many mirroring the Plaintiffs' claims in this case) that Monat offered consumers a percentage discount off normal retail prices and free shipping without conspicuously disclosing that consumers were required to make two additional purchases over a certain dollar threshold. (Office of the Attorney General, State of Florida Department of Legal Affairs, In the Matter of: Monat Global Corp., AG Case No. 1:18-3-1232; Assurance of Voluntary Compliance, August 17, 2020)

Lacking any basis to claim that Ms. Sohovich was aware of the terms of the VIP Agreement, Monat asserts that the VIP Agreement existed in a "hyperlink" that was next to a "checkbox" related to the VIP Agreement on the web and that Ms. Sohovich reviewed parts of Monat's website. (Am. Counterclaim ¶¶ 4, 6.) Yet, Monat is only able to allege that *Ms. Alexander* was the one who actually clicked the "checkbox," not Ms. Sohovich. There can hardly be mutual assent to the terms of the alleged VIP Agreement when Monat's own representative was the individual who actually took the steps to enter into the alleged VIP Agreement. Attributing Ms. Alexander's click to Ms. Sohovich is simply an unwarranted deduction of fact insufficient to create a contract or prevent dismissal. *Oxford Asset Mgmt.*, 297 F.3d at 1188.

Giving credit card information to a Monat representative is a far cry from a claim that Ms. Sohovich assented to the terms of an alleged VIP Agreement. Indeed, courts will only find the mutual assent necessary for a contract in the context of the kind of "browsewrap" agreement alleged by Monat if there is "actual or constructive knowledge" on the part of the "user." *Herman v. Seaworld Parks & Entertainment, Inc.*, No. 8:14-CV-3028-T-35JSS, 2016 WL 7447555, at *4–5 (M.D. Fla., Aug. 26, 2016) ("Because no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website, the determination of the validity of the browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions.") (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014)). The allegations in the Amended Counterclaim fail to meet this basic threshold.

## VI. Conclusion

This is now Monat's second bite at the apple to plead a breach of contract counterclaim against Ms. Sohovich. In both iterations, Monat failed to allege a contract and Monat's arguments

have been inconsistent with the alleged contract on which the counterclaim is based. It is clear that any potential amendment would be futile and that further litigation of the failed counterclaim will only serve to delay the proceedings. Thus, dismissal of the Amended Counterclaim should be with prejudice. *Cf. See Anderson*, 304 F. App'x at 832.

Dated: September 10, 2020.

                                                  Respectfully submitted,

/s/ *Julie Braman Kane*
Julie Braman Kane
Florida Bar No.: 980277
julie@colson.com
**COLSON HICKS EIDSON**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
*Plaintiffs' Lead and Liaison Counsel*

                *and*

/s/ *Brian Neach*
Brian Neach
PACHECO & NEACH, PC
Three Park Plaza, Suite 120
Irvine, CA 92614
Tel: (714) 462-1700
Fax: (714) 462-1785
Email:  bneach@pncounsel.com
*Counsel for Plaintiff Dana Sohovich*

| | |
|---|---|
| **ANDERSEN SLEATER SIANNI LLC**<br>Jessica J. Sleater<br>1250 Broadway, 27th FL<br>New York, NY 100001<br>Tel.: (646) 599-9848<br>Fax: (302) 595-9321<br>Email: jessica@andersensleater.com<br><br>*Plaintiffs' Steering Committee* | **VARNELL & WARWICK, P.A.**<br>Janet R. Varnell<br>P.O. Box 1870<br>Lady Lake, FL 32158<br>Tel.: (352) 753-8600<br>Fax: (352) 504-3301<br>jvarnell@varnellandwarwick.com<br><br>*Plaintiffs' Steering Committee* |
| **MORGAN & MORGAN, P.A.**<br>John A. Yanchunis,<br>201 N. Franklin Street, 7th Fl.<br>Tampa, FL 33602<br>Tel: (813) 223-5505<br>Fax: (813) 223-5402<br>Email: jyanchunis@forthepeople.com<br>*Plaintiffs' Steering Committee* | |

- 9 -

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 10, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served today on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF.

      /s/Julie Braman Kane  
      Julie Braman Kane